1   Phil Telfeyan (CA Bar No. 258270)
2   Katherine Hubbard (CA Bar No. 302729)
3   Attorneys, Equal Justice Under Law
4   601 Pennsylvania Avenue NW
5   South Building — Suite 900
6   Washington, D.C. 20004
7   (202) 505-2058
8   ptelfeyan@equaljusticeunderlaw.org
9   khubbard@equaljusticeunderlaw.org
10  *Attorneys for Plaintiff Gary Welchen*

11

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| GARY WAYNE WELCHEN, on behalf of himself and others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 2:16-at-90 ) (Class Action) |
| THE COUNTY OF SACRAMENTO and KAMALA HARRIS in her Official Capacity as the California Attorney General, | ) ) ) ) |
| Defendants. | ) ) |

**CLASS ACTION COMPLAINT**

**Introduction**

1.      This case is about Sacramento County's wealth-based detention scheme, which operates to jail some of the County's poorest residents solely because they cannot make a monetary payment.   Named Plaintiff Gary Welchen is an impoverished arrestee currently imprisoned in the county jail because he is too poor to pay the money the County demands for his release.  If he were rich enough to pay $10,000 — like many wealthier people accused of the same offense — he could walk out of his jail cell immediately under Sacramento County's pay-for-freedom pretrial justice system.

1    2.    Sacramento County currently runs two systems of pretrial justice: one for the rich

2  and another for the poor.  Wealthy arrestees purchase their immediate freedom by paying their

3  bail amount.  Poor arrestees must languish behind bars for days, weeks, or months, simply

4  because they cannot afford to pay their bail amount.  In Defendants' wealth-based detention

5  scheme, the ultimate criterion that determines whether an arrestee immediately walks free or sits

6  in jail is the amount of money she has.

7    3.    On behalf of the many other arrestees subjected to Defendants' unlawful and

8  ongoing wealth-based detention scheme, the named Plaintiff in this action challenges the use of

9  money bail to detain poor arrestees while letting rich arrestees free.  Defendants' wealth-based

10  detention scheme has no place in a system that promises equal justice under law, and it violates

11  the Equal Protection and Due Process Clauses of the Constitution.

12    4.    By and through his attorneys and on behalf of himself and all others similarly

13  situated, the named Plaintiff seeks in this civil action the vindication of his fundamental rights,

14  injunctive relief preventing future wealth-based detention of all Class Members, and a

15  declaration that Defendants cannot use money bail to detain any person solely because she is

16  unable to make a monetary payment.

17                **Nature of the Action**

18    5.    It is the policy and practice of the County of Sacramento to refuse to release

19  arrestees from jail unless they pay their money bail amount.  Plaintiffs seek declaratory and

20  injunctive relief prohibiting Defendants' wealth-based detention scheme and requiring that

21  pretrial release or detention decisions be based on factors other than wealth-status.

22                **Jurisdiction and Venue**

23    6.    This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201,

1   *et seq.*, and the Fourteenth Amendment to the United States Constitution.   This Court has

2   jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3       7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

4                                          **Parties**[1]

5       8.      Named Plaintiff Gary Welchen is a 50-year-old resident of Sacramento.   He is

6   currently experiencing homelessness, and his sole source of income is social security disability

7   payments.   He represents himself as an individual and represents a Class of similarly situated

8   people subjected to Defendants' wealth-based detention scheme.

9       9.      Defendant County of Sacramento is a local government entity organized under the

10   laws of the State of California.   The Sacramento County Sheriff's Department is a division of the

11   County and operates the Sacramento County Jail.   The Sheriff's Department detains inmates at

12   the county jail and is authorized to issue and sign orders of release.

13       10.      The Sheriff's Department is headed by the Sacramento County Sheriff, who is an

14   officer of Sacramento County.   The officers and employees of the Sheriff's Department are

15   authorized to accept money bail, order the release of an arrestee, and set a time for an arrestee's

16   appearance in state court.   The Sheriff's Department, by policy and practice, detains arrestees too

17   poor to afford their bail amount.

18       11.      Under the Supremacy Clause of the United States Constitution, all officials must

19   uphold the Equal Protection and Due Process Clauses of the Fourteenth Amendment, regardless

20   of contrary instructions from state officials, local officials, or state judges.   Additionally, upon

21   taking office, the Sacramento County Sheriff swears an oath to support and defend the

22   Constitution of the United States.

---

[1] Plaintiffs make the allegations in this Complaint based on personal knowledge as to matters in which they have had personal involvement and on information and belief as to all other matters.

1        12.      Defendant County of Sacramento is liable for its unconstitutional policies and

2    practices — including the policies and practices of its officers and divisions — even if they are

3    consistent with state law and even if they are consistent with orders of state judges.

4        13.      Defendant Kamala Harris is the California Attorney General and the chief law

5    enforcement officer in California.  She is charged with the enforcement of California's laws,

6    including provisions of the Penal Code.  In her official capacity as the California Attorney

7    General, she requires the County of Sacramento to enact a bail schedule, thereby creating a

8    wealth-based detention scheme.  *See* Cal. Pen. Code § 1269b.

9                              **Factual Background**

10   **A.      The Named Plaintiff's Arrest**

11       14.      Gary Welchen is a 50-year-old resident of Sacramento.

12       15.      Mr. Welchen was arrested for the first time in his life by Sacramento police on

13   January 29, 2016.  He was accused of second-degree burglary of an uninhabited dwelling.

14       16.      Mr. Welchen was taken to jail and told that he would be released if he paid

15   $10,000.  He was told that he would be kept in jail unless he paid $10,000.  *See* Exhibit 1,

16   Declaration of Gary Welchen.

17       17.      Mr. Welchen is indigent.  He worked as a contractor and a roofer until 1976,

18   when he injured his back, and his disability has prevented him from working since then.  He is

19   currently experiencing homelessness, without a stable address or place to stay.  His sole source

20   of income is Social Security disability payments.

21       18.      Mr. Welchen was not told when he would be brought to court and has not been

22   brought to court for an initial appearance.  Pursuant to Defendants' policy, Mr. Welchen will not

23   be brought to court until February 2 (at the earliest), and he will not be considered for release

1    without bail until two additional days after his first appearance.

2    **B.    Defendants' Wealth-Based Detention Scheme**

3          19.    The named Plaintiff would be released from jail immediately if he paid the

4    amount of money required by the County.

5          20.    Arrestees are given a right to release pending trial, but Defendants' pay-for-

6    freedom system conditions their release on their ability to afford money bail, thus tying their

7    pretrial freedom to their wealth-status.

8          21.    The treatment of the named Plaintiff and other Class Members is caused by and is

9    representative of Defendants' wealth-based detention policies and practices.

10         22.    As a matter of policy and practice, when the Sheriff's Department books a new

11   arrestee at the county jail, county employees inform the arrestee that she will be released from

12   jail immediately if she pays her money bail amount.  The arrestee is told that she will remain in

13   jail if she is not able to make that payment.

14         23.    For arrestees booked at the county jail, the Sheriff's Department determines the

15   money bail amount by reference to the Sacramento County Bail Schedule based on each

16   arrestee's booking charges.  An arrestee's booking charges are determined by the Sheriff's

17   Department (or other arresting agency, such as a police department).  The Superior Court judges

18   of Sacramento County prepare, adopt, and annually revise Sacramento's county bail schedule in

19   their administrative capacity.

20         24.    Before an arrestee's first appearance in court, it is the policy and practice of the

21   Sheriff's department to set bail based on the bail schedule.

22         25.    An arrestee's first appearance in court occurs at least two to five days after arrest.

23   At each arrestee's first appearance in court, the arrestee receives formal charges from the district

1    attorney's office.  If the formal charges differ from the booking charges, the Superior Court

2    judge will reset the bail according to the bail schedule based on the formal charges.  Superior

3    Court judges do not entertain a reduction or increase in bail until at least two days after an

4    arrestee's first appearance in court.

5           26.    It is the policy and practice of the Sheriff's Department to immediately release

6    those arrestees who pay their money bail amount.

7           27.    It is the policy and practice of the Sheriff's Department to detain individuals who

8    do not pay their money bail amount.  Before a Superior Court bail hearing, it is the policy and

9    practice of the Sheriff's Department to detain individuals who do not pay the amount listed on

10   the bail schedule.   After a Superior Court bail hearing, it is the policy and practice of the

11   Sheriff's Department to detain individuals who do not pay the bail amount set by the Superior

12   Court.

13          28.    Under Defendants' pay-for-freedom system, those wealthy enough to pay their

14   bail amount are immediately released from the county jail.  Some poorer arrestees eventually

15   make arrangements with private bail bond companies — arrangements that require significant

16   time spent in jail not suffered by wealthier arrestees.  And many others who are poorer still are

17   left to languish in jail until the resolution of their case.

18          29.    In Sacramento, approximately 45,000 individuals are booked in county jail every

19   year.  On a typical day, approximately 120 new arrestees are locked in the county jail.

20          30.    At any given time, there are approximately 4,400 inmates in the county jail,

21   roughly 57% of whom are being detained pretrial.  Although they are presumed innocent of the

22   crime for which they have been arrested, there are more than 2,500 individuals at any given time

23   who are being detained pretrial.

1    31.    Approximately 60% of pretrial detainees are held due to probation revocation

2    proceedings, violation of terms of release, immigration detainers, or other holds.   Even

3    discounting this percentage, more than 8,000 individuals are detained annually solely due to their

4    wealth-status.

5    32.    Those arrestees too poor to pay for their freedom are not appointed counsel until

6    their first appearance in court.   Such arrestees could theoretically ask a magistrate to be released

7    without money bail, but this process is functionally non-existent while arrestees remain

8    unrepresented by counsel.

9    33.    At their first appearance, arrestees too poor to afford their money bail are told that

10   they cannot seek release until at least two days later, meaning that they have to wait a minimum

11   of four to seven days before having the chance for a judge to release them without money bail.

12   34.    Wealthy arrestees do not have to wait in jail for any of these processes, because

13   the County grants them immediate release if they pay their money bail amount.

14   35.    By offering bail to all arrestees, Defendants allow pretrial release to everyone, but

15   condition that release on an arrestee's wealth-status.   Only those who can afford their money bail

16   amount are permitted pretrial release.

17   36.    While tying pretrial freedom to wealth-status is the norm Sacramento, many other

18   jurisdictions throughout the country do not hold people in jail because of their poverty.   Instead,

19   many other places release arrestees with pretrial supervision practices that can help increase

20   court attendance and public safety without requiring detention.   Pretrial services agencies in

21   other counties employ numerous methods of maximizing public safety and court appearances,

22   including reporting obligations, phone and text message reminders of court dates, rides to court

23   for those without transportation or a stable address, counseling, drug and alcohol treatment,

1   batterer intervention programs, anger management courses, reporting obligations, SCRAM

2   bracelets (for alcohol testing), or electronic monitoring, among other services, when necessary to

3   guard against a particular risk.

4        37.    Other counties also employ non-monetary conditions of release, including

5   unsecured or "signature" bonds (which do not require payment up front), stay-away orders,

6   curfews, or even home detention, further contributing to high public safety and court appearance

7   rates.

8        38.    Jurisdictions with robust pretrial services and non-monetary conditions of release

9   often achieve court-appearance rates over 90%, with more than 85% of those released pretrial

10  remaining arrest-free (and 98–99% remaining arrest-free for violent crimes).

11       39.    Unnecessary pretrial detention causes instability in employment, housing, and

12  care for dependent relatives.  Studies show that those detained pretrial face worse outcomes at

13  trial and sentencing than those released pretrial, even when charged with the same offenses.

14  Detained defendants are more likely to plead guilty just to shorten their jail time, even if they are

15  innocent.  They have a harder time preparing for their defense, gathering evidence and witnesses,

16  and meeting with their lawyers.  Studies also show that just two days of pretrial detention

17  increases the likelihood of future arrests.

18       40.    Pretrial detention is more than ten times more expensive than effective pretrial

19  supervision programs.  Through non-monetary tools, pretrial supervision programs can save

20  taxpayer expense while maintaining high public safety and court appearance rates.

21       41.    The County of Sacramento does not supervise any pretrial arrestees.  Instead, its

22  wealth-based detention scheme is the central component of its pretrial justice system, making

23  wealth-status the ultimate criterion for an arrestee's detention or release.

1          **Class Action Allegations**

2          42.    The named Plaintiff brings this action, on behalf of himself and all others

3    similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common

4    basis.

5          43.    A class action is a superior means, and the only practicable means, by which the

6    named Plaintiff and unknown Class Members can challenge the Defendants' unlawful wealth-

7    based detention scheme.

8          44.    This action is brought and may properly be maintained as a Class action pursuant

9    to Rule 23(a)(1)–(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

10          45.    This action satisfies the numerosity, commonality, typicality, and adequacy

11    requirements of those provisions.

12          46.    Plaintiff proposes one Class seeking declaratory and injunctive relief.   The

13    Declaratory and Injunctive Class is defined as: all arrestees who are or will be in the custody of

14    the County of Sacramento and are or will be detained for any amount of time because they are

15    unable to pay money bail.

16    **A.     Numerosity — Fed. R. Civ. P. 23(a)(1)**

17          47.    The Sacramento County Jail detains approximately 45,000 individuals annually.

18    Of those, approximately 57% are detained pretrial.   Arrestees are presented with the County's

19    standard money bail choice of pay or jail.

20          48.    Some arrestees are able to pay for release immediately.  Those not able to pay are

21    held in the county jail pursuant to Defendants' wealth-based detention scheme.

22          49.    The number of current and future arrestees detained pursuant to Defendants'

23    wealth-based detention scheme — if it is not enjoined — is well into the hundreds.

**B.      Commonality — Fed. R. Civ. P. 23(a)(2)**

50.      The relief sought is common to all Class Members, and common questions of law and fact exist as to all Class Members.  The named Plaintiff seeks relief concerning whether Defendants' policies, practices, and procedures violate the rights of the Class Members and relief mandating Defendants to change their policies, practices, and procedures so that the constitutional rights of the Class Members will be protected in the future.

51.      These common legal and factual questions arise from one set of policies and practices: Defendants' wealth-based detention scheme.  Defendants operate this scheme in materially the same manner every day.   The material components of the scheme do not vary from Class Member to Class Member, and the resolution of these legal and factual issues will determine whether all Class Members are entitled to the relief they seek.

Among the most important, but not the only, common questions of fact are:

- Does the County have a policy and practice of requiring money bail as a prerequisite for post-arrest release?
- Does the County immediately release those arrestees wealthy enough to pay their money bail amount?
- Does the County detain, for any amount of time, those arrestees too poor to pay their money bail amount solely because they cannot make that monetary payment?

52.      Among the most important common question of law are:

- Do the Equal Protection and Due Process Clauses prohibit the government from jailing an individual solely due to her inability to make a monetary payment?
- Does jailing an individual due solely to her inability to afford money bail constitute jailing her due to her inability to make a monetary payment?

**C.      Typicality — Fed. R. Civ. P. 23(a)(3)**

53.      The named Plaintiff's claims are typical of the other Class Members' claims, and he has the same interests in this case as all other Class Members.  Each Class Member is confined in jail because she cannot afford to pay Defendants' money bail amount.  The answer to

1   whether Defendants' wealth-based detention scheme is unconstitutional will determine the

2   claims of the named Plaintiff and every other Class Member.

3       54.    If the named Plaintiff succeeds in the claim that Defendants' wealth-based

4   detention scheme violates his constitutional rights, that ruling will likewise benefit every other

5   Class Member.

6   **D.      Adequacy — Fed. R. Civ. P. 23(a)(4)**

7       55.    The named Plaintiff is an adequate representative of the Class because his interest

8   in the vindication of the legal claims that he raises is entirely aligned with the interests of the

9   other Class Members, who each have the same constitutional claims.  He is a Member of the

10  Class, and his interests do not conflict with those of the other Class Members.

11      56.    There are no known conflicts of interest among Class Members, all of whom have

12  a similar interest in vindicating their constitutional rights in the face of Defendants' pay-for-

13  freedom system.

14      57.    Plaintiffs are represented by attorneys from Equal Justice Under Law, who have

15  experience in litigating complex civil rights matters in federal court and extensive knowledge of

16  both the details of Defendants' scheme and the relevant constitutional and statutory law.

17  Counsels' relevant qualifications are more fully set forth in the contemporaneously filed Motion

18  for Class Certification.

19      58.    The combined efforts of Class counsel have so far included extensive

20  investigation into money bail schemes over a period of years, including numerous interviews

21  with witnesses, court employees, jail inmates, families, attorneys throughout the region,

22  community members, statewide experts in the functioning of state and local courts, and national

23  experts in constitutional law, post-arrest procedure, law enforcement, judicial procedures,

1    criminal law, pretrial services, and jails.

2        59.    Class counsel have a detailed understanding of state law and practices as they

3    relate to federal constitutional requirements.  Counsel have studied the way that these systems

4    function in other counties in order to investigate the wide array of lawful alternatives.

5        60.    As a result, counsel have devoted enormous time and resources becoming

6    intimately familiar with Defendants' scheme and with the relevant state and federal laws.

7    Counsel has also developed relationships with many of the individuals and families most

8    victimized by Defendants' practices.  The interests of the Class Members will be fairly and

9    adequately protected by the Plaintiffs and their attorneys.

10   **E.    Rule 23(b)(2)**

11       61.    Class action status is appropriate because Defendants — through the policies and

12   practices that make up their wealth-based detention scheme — have acted in the same

13   unconstitutional manner with respect to all Class Members.  Defendants enforce a wealth-based

14   system of pretrial justice: wealthy arrestees can purchase their immediate release, while poorer

15   arrestees must remain in jail.

16       62.    The Class therefore seeks declaratory and injunctive relief to enjoin Defendants

17   from detaining arrestees who cannot afford their money bail amounts.  Because the putative

18   Class challenges Defendants' scheme as unconstitutional through declaratory and injunctive

19   relief that would apply the same relief to every Class Member, Rule 23(b)(2) certification is

20   appropriate and necessary.

21       63.    Injunctive relief compelling Defendants to comply with these constitutional rights

22   will similarly protect each Class Member from being subjected to Defendants' unlawful policies

23   and practices.  A declaration and injunction stating that Defendants cannot detain arrestees due to

1    their inability to make a monetary payment would provide relief to every Class Member.

2    Therefore, declaratory and injunctive relief with respect to the Class as a whole is appropriate.

3         64.    Plaintiffs seek the following relief and hereby demand a jury in this cause for all

4    matters so appropriate.

5                        **Claims for Relief**

6    **Count One: Defendant County of Sacramento Violates Plaintiffs' Rights by Jailing Them**
7    **Because They Cannot Afford a Monetary Payment**
8
9         65.    Plaintiffs incorporate by reference the allegations in paragraphs 1–64.

10         66.    The Fourteenth Amendment's Equal Protection and Due Process Clauses prohibit

11    jailing a person because of her inability to make a monetary payment.  Defendant County of

12    Sacramento violates Plaintiffs' fundamental rights by keeping them in jail solely because they

13    cannot afford to pay money bail.

14    **Count Two: Defendant Kamala Harris, in Her Official Capacity, Violates Plaintiffs' Rights**
15    **by Requiring Defendant County of Sacramento to Adopt a Money Bail Schedule**
16
17         67.    Plaintiffs incorporate by reference the allegations in paragraphs 1–66.

18         68.    The Fourteenth Amendment's Equal Protection and Due Process Clauses prohibit

19    jailing a person because of her inability to make a monetary payment.  Defendant Kamala Harris,

20    in her official capacity as California Attorney General, violates Plaintiffs' rights by requiring

21    Defendant County of Sacramento to adopt a bail schedule that results in detaining them solely

22    because they cannot afford to pay money bail.

23                        **Request for Relief**

24        WHEREFORE, Plaintiffs and the other Class Members request that this Court issue the

25    following relief:

26        a.    A declaratory judgment that Defendants violate the named Plaintiff's and Class
27                  Members' constitutional rights by keeping them in jail solely because they cannot

1    make a monetary payment;

2

3    b.    An order and judgment preliminarily and permanently enjoining Defendants from
4          enforcing their unconstitutional wealth-based detention policies and practices
5          against the named Plaintiff and the Class of similarly situated people that he
6          represents;

7

8    c.    An order and judgment preliminarily and permanently enjoining the County of
9          Sacramento — including the Sheriff and all officers and employees of the
10         Sheriff's Department at the county jail — from using money bail to detain any
11         person due to her inability to make a monetary payment and requiring that all
12         release/detention decisions be based on factors other than wealth-status or ability
13         to make a monetary payment;

14

15   d.    A judgment individually compensating the named Plaintiff for the damages that
16         he suffered as a result of Defendants' unconstitutional and unlawful conduct,
17         including damages resulting from his confinement in jail;

18

19   e.    An order and judgment granting reasonable attorneys' fees and costs pursuant to
20         42 U.S.C. § 1988, and any other relief this Court deems just and proper.

21

22                           Respectfully submitted,

23

24                           */s/ Phil Telfeyan*
25                           Phil Telfeyan (California Bar No. 258270)
26                           Katherine Hubbard (California Bar No. 302729)
27                           Attorneys, Equal Justice Under Law
28                           601 Pennsylvania Avenue NW
29                           South Building — Suite 900
30                           Washington, D.C. 20004
31                           (202) 505-2058
32                           ptelfeyan@equaljusticeunderlaw.org
33                           khubbard@equaljusticeunderlaw.org
34                           *Attorneys for Plaintiffs*