UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GARY WAYNE WELCHEN, et al.,

           Plaintiff,

      v.

THE COUNTY OF SACRAMENTO and
KAMALA HARRIS in her Official
Capacity as the California Attorney
General,

           Defendants.

No.  2:16-cv-00185-TLN-KJN

**ORDER**

     This matter is before the Court pursuant to Defendants County of Sacramento ("County")
and Kamala Harris's, in her Official Capacity as the California Attorney General, ("AG")
(collectively "Defendants") Motion to Dismiss.[1]  (ECF No. 14.)  Plaintiff Gary Wayne Welchen,
et al. ("Plaintiff") filed an opposition to Defendants' motion.  (ECF No. 20.)  The Court has
carefully considered the arguments raised in Defendants' motion and reply, as well as Plaintiff's
opposition.  For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED IN
PART.

---

[1]    County joined in the AG's Motion to Dismiss, but also in the alternative moved the Court for a more
definite statement of the law pursuant to Federal Rule of Civil Procedure 12(e).  (*See* Joinder in Mot. to Dismiss and
Not. of Mot. in the Alt. for More Def. Statement, ECF No. 17.)

1

## I.  FACTUAL ALLEGATIONS

2          Plaintiff, a 50-year-old indigent and homeless resident of Sacramento, was arrested by

3   Sacramento police on January 29, 2016, for suspicion of second-degree burglary of an

4   uninhabited dwelling.  (Compl., ECF No. 1, ¶¶ 14–15, 17.)  After being taken to jail, Plaintiff was

5   informed he would be kept in jail unless he paid $10,000 for bail.  (ECF No. 1, ¶ 16.)  Because

6   Plaintiff could not afford to pay $10,000, he was to remain in jail until his initial court

7   appearance.  (ECF No.1, ¶ 18.)  That same day, Plaintiff filed this class action against the County

8   and the AG alleging that enforcement of California Penal Code section 1269b ("Bail Law") and

9   the County's bail schedule adopted pursuant to that law ("Bail Schedule") violate his

10  Constitutional rights under the Due Process Clause and Equal Protection Clause  of the

11  Fourteenth Amendment.  (ECF No. 1, ¶¶ 65–68.)

12         Plaintiff alleges the County operates a "wealth–based detention scheme" that results in

13  "two systems of pretrial justice: one for the rich and another for the poor."  (ECF No. 1, ¶¶ 1–2.)

14  According to Plaintiff, it is the "policy and practice" of the County's Sheriff's Department "to

15  detain individuals who do not pay their money bail amount."  (ECF No. 1, ¶ 27.)  Plaintiff

16  describes the County's unconstitutional "policy and practice" as follows: When a new arrestee is

17  booked, the arrestee is told they will be released immediately if they pay their bail amount.

18  However, if the arrestee cannot pay their bail amount, they are told they will remain in jail.  The

19  County's Sheriff's Department sets the bail amount pursuant to the Bail Schedule, which is

20  prepared and adopted each year by the County's judges in their administrative capacity.  (ECF

21  No. 1, ¶¶ 22–23.)  Consequently, by "tying [an arrestee's] pretrial freedom to their wealth-status,"

22  Defendants have allegedly created a "pay-for-freedom system condition[ing] [an arrestee's]

23  release on their ability to afford money bail."  (ECF No. 1, ¶ 20.)  Plaintiff maintains that this

24  system implicates the AG, in her official capacity, because she "requires the County of

25  Sacramento to enact [the] bail schedule," which creates the alleged "wealth–based detention

26  scheme."  (ECF No. 1, ¶ 13.)

27         Plaintiff requests declaratory judgment that Defendants violated and continue to violate

28

Plaintiff's and proposed class members' rights under the Fourteenth Amendment.  (ECF No. 1, 13–14.)  Plaintiff and proposed class members also seek preliminary and permanent injunctive relief enjoining Defendants and all involved employees of the County from enforcing the bail policy and practices against all proposed class members and request money damages and attorneys' fees and costs.[2]  (ECF No. 1, 13–14.)

## II.  PROCEDURAL HISTORY

The Complaint was filed on January 29, 2016, with accompanying motions for a temporary restraining order, preliminary injunction, and class certification.  (ECF Nos. 1 & 2.)  On February 4, 2016, this Court denied Plaintiff's ex parte motion for a temporary restraining order.  (ECF No. 12.)  On February 18, 2016, Defendants filed the instant Motion to Dismiss. (ECF No. 14.)

## III.  STATUTORY BACKGROUND

Under the challenged Bail Law, Cal. Penal Code section 1269b, a person arrested for a crime may be released on bail while awaiting trial or some alternative resolution of the charges.  Cal. Penal Code § 1269b(a).  The bail amount is determined by a judge if the arrestee appears before a judge; if not, then the bail amount is determined by "the uniform countywide schedule of bail" (i.e. the Bail Schedule).  Cal. Penal Code § 1269b(b).  This Bail Schedule is "prepare[d], adopt[ed], and annually revise[d]" by the county's superior court judges who consider the "seriousness of the offense charged."  Cal. Penal Code § 1269b(c) & (e).  The Bail Law also allows detained individuals to petition for release on their own recognizance or for a lower bail. Cal. Penal Code § 1269c.  While individuals charged with serious felonies may seek lower bail than the Bail Schedule, those charged with misdemeanors are presumptively entitled to release unless the court foresees a public safety or court appearance issue.  Cal. Penal Code §§ 1270 – 1270.1(a).[3]

---

[2]    Because a class has not been certified in this case, the Court's inquiry focuses on the legal allegations as they pertain to Plaintiff's rights in this Order.
[3]    Defendants maintain the County meets these statutory requirements.  (ECF No. 14 at 9.)  Plaintiff does not question whether the County is meeting the statutory requirements, but instead alleges that the Bail Law is unconstitutional.  (*See* ECF No.1.)

1

### IV.   STANDARD OF LAW

2

   A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

3

sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of

4

Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim

5

showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

6

(2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice

7

of what the claim . . . is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S.

8

544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on

9

liberal discovery rules and summary judgment motions to define disputed facts and issues and to

10

dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

11

   On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

12

*Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

13

reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

14

*Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

15

"'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

16

relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads

17

factual content that allows the court to draw the reasonable inference that the defendant is liable

18

for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

19

   Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

20

factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

21

1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

22

unadorned, the defendant–unlawfully–harmed–me accusation."  *Iqbal*, 556 U.S. at 678.  A

23

pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

24

elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

25

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

26

statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

27

facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

28

1  been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
2  459 U.S. 519, 526 (1983).

3       Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough
4  facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting
5  *Twombly*, 550 U.S. at 570).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . .
6  across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.
7  While the plausibility requirement is not akin to a probability requirement, it demands more than
8  "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is
9  "a context–specific task that requires the reviewing court to draw on its judicial experience and
10  common sense." *Id.* at 679.

11      If a complaint fails to state a plausible claim, "'[a] district court should grant leave to
12  amend even if no request to amend the pleading was made, unless it determines that the pleading
13  could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,
14  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995));
15  *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in
16  denying leave to amend when amendment would be futile).  Although a district court should
17  freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to
18  deny such leave is 'particularly broad' where the plaintiff has previously amended its
19  complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.
20  2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

21      **V.   ANALYSIS**

22      In response to Plaintiff's Complaint, the AG filed a Motion to Dismiss arguing three
23  points.  First, the AG contends that claims against her should be dismissed because she is immune
24  from suit in federal court under the Eleventh Amendment.  Second, the AG argues that the
25  *Younger* Abstention Doctrine bars a federal challenge to ongoing state criminal proceedings.
26  Third, the AG argues in the alternative that Plaintiff fails to state a claim under the Equal
27  Protection Clause and Due Process Clause of the Fourteenth Amendment.  (ECF No. 14 at 1.)

28

The Court will address each argument in turn below.

A. <u>California's Attorney General Is Not Protected By Eleventh Amendment Sovereign Immunity Because the *Ex parte Young* Exception Applies.</u>

The Court is required to address the Eleventh Amendment Sovereign Immunity issue before it reaches the merits of the Complaint. *See Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012) ("[O]ur precedent dictates that we resolve an Eleventh Amendment Immunity claim before reaching the merits."). Defendants argue that this Court should dismiss the claims against the AG because she is immune from suit in federal court under the Eleventh Amendment. (ECF No. 14 at 10.) Plaintiff responds that his suit falls within the *Ex parte Young* exception, which allows suits seeking injunctive or declaratory relief against individual state officials in their official capacity. (ECF No. 20 at 18.) For the reasons stated below, the Court finds that Eleventh Amendment Sovereign Immunity does not shield the AG because the *Ex parte Young* exception applies in this case.

i. *The Eleventh Amendment, Ex parte Young, and the Parties' Arguments*

The Eleventh Amendment has been interpreted as a grant of sovereign immunity to the states against suit in federal court. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) ("[E]ach State is a sovereign entity in our federal system; and … it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.") (internal quotes omitted). This means that "an *unconsenting* State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (internal quotes omitted) (emphasis added). State agencies or departments are protected by Eleventh Amendment Sovereign immunity when named as a defendant. *Id.* However, sovereign immunity does not extend to local governmental bodies, such as counties and cities. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979).

Here, while neither party contests this point, the Court states the obvious: the County Defendant is not protected by Eleventh Amendment Sovereign Immunity because it is a local

1    governmental body.

2          While "[t]he Eleventh Amendment erects a general bar against federal lawsuits brought

3    against a state," *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), "it does not [] bar actions for

4    prospective declaratory or injunctive relief against state officers in their official capacities for

5    their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d

6    1128, 1133–34 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 155–56).  This is known as

7    the *Ex parte Young* exception, and it requires that the individual state official sued "must have

8    some connection with the enforcement of the act." *Id.* at 1134 (quoting *Ex parte Young*, 209 U.S.

9    at 157).  Moreover, that connection "must be fairly direct; a generalized duty to enforce state law

10   or general supervisory power over the persons responsible for enforcing the challenged provision

11   will not subject an official to suit." *Id.* (internal citations omitted).  Otherwise, suing a state

12   official would be just an indirect way of suing the State. *Ex parte Young*, 209 U.S. at 157.  "In

13   determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a

14   court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing

15   violation of federal law and seeks relief properly characterized as prospective." *Verizon*

16   *Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotes

17   omitted).

18         Plaintiff alleges that the connection between the AG and the challenged Bail Law (Cal.

19   Penal Code § 1269b) is through a combination of the state statutory provisions.  (ECF No. 20 at

20   19–20.)  First, Plaintiff notes that the AG is "the chief law enforcement officer in California and

21   is charged with the enforcement of California's laws, including provisions of the Penal Code."

22   (ECF No. 20 at 18.)  Second, Plaintiff asserts that under California Government Code sections

23   12560–61, the AG "enforces the Penal Code's bail provisions as supervisor of the state's sheriffs"

24   and by "requir[ing] the County of Sacramento to enact a bail schedule." (ECF No. 20 at 18–19.)

25   Third, Plaintiff demonstrates through California Government Code section 12550 the AG has

26   direct supervision over district attorneys and may assist them or take full charge of any

27   investigation or prosecution.  (ECF No. 20 at 19.); s*ee* Cal. Gov't Code § 12550.  The Court notes

28

                                                    7

1   in passing that this last statutory section will prove dispositive on the sovereign immunity issue.

2   Finally, Plaintiff demonstrates the significance of the aforementioned connections: specifically,

3   violations of the challenged Bail Law are punishable crimes, which can be prosecuted by district

4   attorney's, or via section 12550, by the AG herself.  Thus, Plaintiff contends the requisite

5   connection for the *Ex parte Young* exception is established.  (ECF No. 20 at 20.)

6        In response, Defendants argue that Plaintiff merely speculates that the AG may be sued

7   "because she theoretically could stand in the shoes of a local prosecutor to enforce state laws, that

8   state laws permit her 'to prosecute crimes,' which in turn could potentially include violations of

9   the bail provisions since 'certain violations of the Penal Code's bail provisions are punishable as

10  crimes.'"  (ECF No. 25 at 14) (quoting ECF No. 20 at 20.)  Defendants opine that because

11  Plaintiff "does not contend that the Attorney General is actually enforcing the Bail Law" at this

12  time, the AG is immune from suit.  (ECF No. 25 at 14.)  In essence, Defendants are making a

13  "ripeness" argument as being a component of the *Ex parte Young* Doctrine.

14              *ii.   Application of the Relevant Case Law*

15       Generally, the *Ex parte Young* doctrine applies to "ongoing and continuous" violations of

16  federal law.  *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986).  A plaintiff may not use the

17  doctrine to adjudicate the legality of *past* conduct.  *Id.*  However, the Ninth Circuit has declined

18  "to read additional 'ripeness' or 'imminence' requirements into the *Ex Parte Young* exception to

19  Eleventh Amendment immunity in actions for declaratory relief beyond those already imposed by

20  a general Article III and prudential ripeness analysis."  *Nat'l Audubon Soc'y, Inc. v. Davis*, 307

21  F.3d 835, 847 (9th Cir.), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002).

22       Here, Defendants argument is misplaced since the threat of future enforcement of an

23  unconstitutional law is still grounds for suit under *Ex parte Young* and can be remedied by

24  injunctive relief.  Moreover, if Defendants are arguing that Plaintiff's claim is unripe because

25  Plaintiff has not shown that the AG is currently enforcing the Bail Law this argument is still

26  irrelevant.  As long as the AG's connection to the enforcement "remain[s] plausible…, [it] does

27  not fail simply because it has several links [in the causal chain]."  *Maya v. Centex Corp.*, 658 F.3d

28

1060, 1070 (9th Cir. 2011).  Therefore, Defendants' argument about timing of the AG's

enforcement is not persuasive.

   As to Defendants' argument that the AG does not have a sufficient connection to the

challenged Bail Law through a combination of state statutory provisions, the Court finds this

assertion disingenuous considering the role of the AG:

> The Attorney General has direct supervision over the district attorneys of the several counties of the State.  When [s]he deems it advisable or necessary in the public interest, or when directed to do so by the Governor, [s]he shall assist any district attorney in the discharge of his [or her] duties, and may, where [s]he deems it necessary, take full charge of any investigation or prosecution of violations of law of which the superior court has jurisdiction.  In this respect [s]he has all the powers of a district attorney, including the power to issue or cause to be issued subpoenas or other process.

Cal. Gov't Code § 12550; *see also Pitts v. County of Kern*, 17 Cal. 4th 340, 357 (1998)

(California Constitution, Art. V, sec. 13, "confers broad discretion upon the Attorney General to

determine when to step in and prosecute a criminal case") (internal quotation marks omitted).

Moreover, "[t]he Ninth Circuit has found that where a state Attorney General may assume the

role of district attorney, the Attorney General has a sufficient connection to the enforcement of

the state's criminal laws to be a proper defendant in suits challenging their constitutionality."

*Nichols v. Brown*, 945 F. Supp. 2d 1079, 1106 (C.D. Cal. 2013) (citing *Planned Parenthood of*

*Idaho v. Wasden,* 376 F.3d 908, 919–20 (9th Cir. 2004)).

   In *Ass'n des Eleveurs de Canards et d'Oies du Quebec*, the California Attorney General

was not granted Eleventh Amendment Sovereign Immunity when her combined powers,

including her enforcement power from the challenged state statute, her general duty to prosecute

violations of law and her ability to assume the role of district attorney in such prosecutions,

established a sufficient connection under *Ex parte Young*.  *Ass'n des Eleveurs de Canards et*

*d'Oies du Quebec v. Harris*, 729 F.3d 937, 943–44 (9th Cir. 2013) (hereinafter "*Quebec*").  In

*Quebec*, plaintiffs sued to enjoin the Governor and AG from enforcing a statute banning products

resulting from the force feeding of birds for the purpose of enlarging their livers to an abnormal

size (i.e., the statute banned foie gras).  *Id.* at 943.  Because the AG had the authority to prosecute

1    violations of the challenged provision and the duty to prosecute violations of law as a district

2    attorney under the state Constitution, the court found "sufficient enforcement power for *Ex parte*

3    *Young*" to apply.  *Id.* at 943–44.

4         In *Wasden*, the Ninth Circuit considered an Idaho law directly analogous to Cal. Gov't

5    Code § 12550.  *Wasden*, 376 F.3d 908.  There, the court found that sovereign immunity did not

6    apply to the Idaho AG because the AG's power to step into the role of the county prosecutor

7    established the requisite connection for the *Ex parte Young* exception to apply.  *Wasden*, 376 F.3d

8    908, 920 (9th Cir. 2004) ("[T]he attorney general may in effect deputize himself (or be deputized

9    by the governor) to stand in the role of a county prosecutor, and in that role exercise the same

10   power to enforce the statute the prosecutor would have.  That power demonstrates the requisite

11   causal connection for standing purposes.").  Similarly, the California AG may stand in for a

12   district attorney and "take full charge" of any prosecution.  For example, under the Bail Law, if

13   an officer releases a defendant without bail they are guilty of a misdemeanor and the AG could

14   assume the role of the district attorney and prosecute that crime.  Cal. Penal Code § 1269a.

15   Consequently, because the AG can prosecute these bail laws the Court finds she has the requisite

16   connection to the Bail Law and Bail Schedule to be sued in federal court.

17        The situation in the instant case is analogous to both *Quebec* and *Wasden*.  Here, the AG,

18   in her official capacity as the State's chief law enforcement officer, is charged with the

19   enforcement of California's laws, as well as enforcing the Penal Code's bail provisions as

20   supervisor of the state's sheriffs.  Additionally, the AG has direct supervision over district

21   attorneys and may assist them or take full charge of any investigation or prosecution.  *See* Cal.

22   Penal Code § 1269b; Cal. Gov't Code §§ 12550, 12560–61.  The Court finds that these duties

23   create a sufficient connection to the challenged Bail Law for the *Ex parte Young* Doctrine to

24   apply.

25   ///

26   ///

27   ///

28
                                               10

1

2

      B.  The *Younger* Abstention Doctrine Does Not Apply Because There Was No On–

            Going State Judicial Proceeding When This Suit Was Filed.

3

4

5

6

7

8

9

      Defendants next argue this Court should refrain from hearing this case because there is an

on–going state criminal proceeding that implicates important state interests and provides Plaintiff

with an appropriate forum to raise his constitutional rights claims.  (ECF No. 14 at 5.)  In support,

Defendants cite non–binding and dated precedent in support of their position.  (ECF No. 14 at 5–

6.)  In contrast, Plaintiffs argue persuasively that the *Younger* Abstention Doctrine does not apply

because none of its three requirements are met.  (ECF No. 20 at 2.)  For the following reasons, the

Court finds *Younger* does not apply.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

      The Supreme Court has held there is a "national policy forbidding federal courts to stay or

enjoin pending state court proceedings except under special circumstances."  *Younger v. Harris*,

401 U.S. 37, 41 (1971).  Under the *Younger* abstention doctrine, "[w]hen there is a parallel

pending state criminal proceeding, federal courts must refrain from enjoining the state

prosecution."  *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013).  However, *Younger*

abstention is not justified simply because there happens to be parallel state and federal

proceedings; a federal court's obligation to hear and decide a case is still "virtually unflagging."

*Id.* at 590–91.  It is only proper for a federal court to abstain from that "unflagging" obligation

when three elements are met: (1) there must be ongoing state proceedings; (2) the proceedings

must implicate important state interests; and (3) the federal plaintiff must be able to litigate its

federal claims in the state proceedings.  *Middlesex County Ethics Committee v. Garden State Bar

Ass'n*, 457 U.S. 423, 433 (1982).  Each of these elements must be satisfied to justify abstention;

that is, abstention cannot be based on "weighing" or "balancing" these elements.

*AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148 (9th Cir. 2007).  It is also vital that the

policies behind the *Younger* doctrine be implicated by the actions requested of the federal court.

*Id.* at 1149.  Thus:

26

27

            *[i]f* a state–initiated proceeding is ongoing, and *if* it implicates
            important state interests, and *if* the federal litigant is not barred
            from litigating federal constitutional issues in that proceeding, *then*

28

1
2

a federal court action that would enjoin the proceeding, or have the
practical effect of doing so, would interfere in a way that *Younger*
disapproves.

3   *Id.* (quoting *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004)) (emphasis in original).  Put

4   another way, if the three *Younger* elements set out in *Middlesex* are satisfied, "the court does not

5   automatically abstain, but abstains only if there is a *Younger*–based reason to abstain—i.e., if the

6   court's action would enjoin, or have the practical effect of enjoining, ongoing state court

7   proceedings." *Id.*

8            i.       *On–Going State Proceedings*

9        The first requirement for *Younger* abstention is that state proceedings were ongoing when

10  the federal action was filed.  It is immaterial that they were concluded before the federal court

11  ruled on the matter. *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992); *Wiener v. County of San

12  Diego*, 23 F.3d 263, 266 (9th Cir. 1994) ("The critical question is not whether the state

13  proceedings are still 'ongoing' but whether the state proceedings were underway before initiation

14  of the federal proceedings.") (emphasis added; internal quotes omitted).  Plaintiff argues that

15  *Agriesti v. MGM Grand Hotels, Inc.* is directly on point.  (ECF No. 20 at 4 (citing 53 F.3d 1000,

16  1001 (9th Cir. 1995).)  Defendants unpersuasively try to distinguish the case.  (ECF No. 25 at 10.)

17       In *Agriesti*, the Ninth Circuit found that a *Younger* Abstention was improper when a

18  district court dismissed plaintiffs' section 1983 civil rights lawsuit despite no ongoing state

19  judicial proceeding when the federal action was filed.  *Id.*  There, the federal plaintiffs were

20  "arrested, handcuffed, taken to jail, and booked" after leafletting in front of a Casino in violation

21  of Nevada's trespass statute.  *Id.*  "They were released the same day and never brought before a

22  magistrate." *Id.*  However, five days prior to the arrest, and before the district attorney filed any

23  charges, the federal plaintiffs filed their section 1983 lawsuit in federal court.  *Id.*  In finding that

24  *Younger* abstention did not apply, the court determined that a prosecution did not begin until

25  charges were filed.  *Id.* at 1002.  Importantly, "the arrests and the issuance of the citations were

26  executive, not judicial, acts" and thus did not initiate state *judicial* proceedings.  *Id.*  Therefore,

27  since no charges had been field when the lawsuit commenced, there was only the *potential* for

28

12

1    state judicial proceedings which did not trigger the *Younger* Doctrine.

2          Here, similar to the plaintiffs in *Agriesti*, Plaintiff was arrested, booked, jailed and had

3    bail set by the County's sheriffs.  (ECF No. 20 at 3.)  Like the *Agriesti* court found, such actions

4    are executive acts by law enforcement officers that are not judicial in nature.  Furthermore, in

5    California, a prosecution begins with the first pleading, which is an indictment, information or

6    complaint for a felony or merely a complaint for misdemeanors and infractions.  Cal. Penal Code

7    § 949 (West 2016); *see also Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (finding that the initiation

8    of an adversarial judicial criminal proceeding is by "formal charge, preliminary hearing,

9    indictment, information or arraignment").  However, in the instant case Plaintiff filed this lawsuit

10   on the day of his arrest, before he was formally charged or made any initial court appearance.

11   (ECF No. 20 at 3.)  Thus, because Plaintiff was not subject to any judicial acts or formal charges

12   he was not involved in any on–going state criminal judicial proceedings at the time this case was

13   filed.

14          ii.   *The State Proceedings Must Implicate Important State Interests*

15         Defendants assert in their Motion to Dismiss that "the state proceedings implicate

16   important state interests (namely criminal law enforcement)."  (ECF No. 14 at 11.)  In support,

17   Defendants cite an unpublished Ninth Circuit case affirming a district court that abstained from a

18   habeas corpus petition because the claims "involve[d] the State of California's important interest

19   in the order and integrity of its criminal proceedings."  (ECF No. 14 at 11 (quoting *Lazarus v.*

20   *Baca*, 2010 WL 1006572, at **1–2 (C.D. Cal. 2010).)  Plaintiff responds that this suit "would do

21   nothing to undermine California's ability to prosecute."  (ECF No. 20 at 10.)

22         When assessing the importance of a state's asserted interest, courts are to consider "its

23   significance broadly, rather than by focusing on the state's interest in the resolution of an

24   individual case."  *AmerisourceBergen*, 495 F.3d at 1150.  "The key to determining whether

25   comity concerns are implicated in an ongoing state proceeding—and thus whether the second

26   *Younger* requirement is met—is to ask whether federal court adjudication would interfere with the

27   state's ability to carry out its basic executive, judicial, or legislative functions.  Unless interests

28

13

1    'vital to the operation of state government' are at stake, federal district courts must fulfill their

2    'unflagging obligation' to exercise the jurisdiction given them." *Potrero Hills Landfill, Inc. v.*

3    *Cty. of Solano*, 657 F.3d 876, 883 (9th Cir. 2011).

4         Here, Defendants have not communicated clearly and precisely how vital their asserted

5    "criminal law enforcement" interest is in this case.  Although the Court recognizes the importance

6    in protecting the public from criminal activity, characterizing the state interest as "the general

7    welfare" or "public safety" is meaningless.  *See Harper v. Pub. Serv. Comm'n of W.VA.*, 396 F.3d

8    348, 353 (4th Cir. 2005) ("Were we to permit a lofty level of generality as to how we identify the

9    interests at stake, we would find that nearly anything could at least touch on something like the

10   'general welfare,' 'the public good,' or 'public safety.'").  The Supreme Court has repeatedly

11   "rejected the argument that a constitutional attack on state procedures themselves 'automatically

12   vitiates the adequacy of those procedures for purposes of the *Younger-Huffman* line of cases.'"

13   *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 628, 106 S. Ct. 2718,

14   2723, 91 L. Ed. 2d 512 (1986) (quoting *Moore v. Sims*, 442 U.S. 415, 427, n.10 (1979)).

15   Moreover, were the Court to abstain from hearing any matter concerning the constitutionality of a

16   state law or policy, federal court jurisdiction would be restricted in a profound way.  Thus, the

17   fact that the instant action involves a state policy does not by itself usher this case under the

18   umbrella of *Younger* abstention.

19              *iii.*    *The Federal Claims Can Be Litigated In The State Proceedings*

20         *Younger* requires that the federal plaintiff have a full and fair opportunity to litigate his or

21   her federal claims during the ongoing state proceeding.  *Benavidez v. Eu*, 34 F.3d 825, 831 (9th

22   Cir. 1994) (citing *Ohio Civil Rights Comm'n, Inc.*, 477 U.S. at 627).   Typically, "when a litigant

23   has not attempted to present his federal claims in related state-court proceedings, a federal court

24   should assume that state procedures will afford an adequate remedy, in the absence of

25   unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

26   However, in the current case, Plaintiff's state court proceeding is a criminal case, and the claims

27   before this Court are civil.  The challenged Bail Law is not a defense to the crimes which Plaintiff

28

1   is charged with, nor does it have any connection to those criminal charges other than the fact that

2   those charges are the reason for the Bail Law's impact on Plaintiff.

3          The Court is not aware of any precedent, nor have Defendants presented any in support of

4   the argument that a criminal defendant can counter-claim with a § 1983 civil rights claim during a

5   criminal prosecution.  Thus, Defendants have not met their burden of showing that the federal

6   claims in this action can be litigated in Plaintiff's state court proceedings.

7              *iv.*    *Conclusion*

8          Based on the foregoing reasons, the Court finds that Defendants have not met their

9   burden of showing that: (1) there is an ongoing state proceeding; (2) the proceedings implicate

10   important state interests; and (3) the Plaintiff is able to litigate its federal claims in the criminal

11   state proceedings against him.  *See Middlesex*, 457 U.S. at 433.   Therefore, the Court finds that

12   the *Younger* Doctrine does not apply to the instant case and abstention would be inappropriate.

13             C.   Defendants' 12(b)(6) Motion

14          Plaintiff brings claims under 42 U.S.C. section 1983 for violation of his Fourteenth

15   Amendment equal protection and due process rights.  Plaintiff asserts claims against the County

16   for jailing him because he cannot afford monetary bail prior to a first court appearance and

17   against the AG for requiring the County to condition pretrial release on monetary payment prior

18   to a first court appearance.  (ECF No. 1 ¶¶ 65–68.)

19          A plaintiff has no direct cause of action under the United States Constitution.  Instead, a

20   plaintiff complaining of a violation of a constitutional right must use the federal civil rights

21   statute, 42 U.S.C. § 1983.  *Azul–Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.

22   1992).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

23   the Constitution and laws of the United States, and must show that the alleged deprivation was

24   committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

25   Thus, a plaintiff must establish four elements to bring a § 1983 claim: (1) conduct by a "person";

26   (2) who acted "under color of state law"; (3) proximately causing; (4) a deprivation of a federally

27   protected right.  *Id.*  In addition, a plaintiff seeking to establish municipal liability must show that

28

1  the deprivation of their federal right was attributable to the enforcement of a municipal custom or

2  policy. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

3       It is well settled in the Ninth Circuit that a "person" subject to § 1983 liability can be an

4  individual sued in an official capacity or a local governing body. *Devereaux v. Abbey*, 263 F.3d

5  1070, 1074 (9th Cir. 2001) (en banc).  Here, Defendants include the AG, a person sued in her

6  official capacity, and the County of Sacramento, a local governing body.  Thus, both Defendants

7  meet the first requirement.  As to the second requirement, their actions fall "under the color of

8  state law" because the challenged law is California Penal Code §1269b, the state statute

9  addressing bail and pre-trial detention. The parties don't necessarily disagree over causation, but

10 Defendants take issue with whether or not a constitutional violation occurred. Therefore, the

11 Court addresses both the alleged Due Process and Equal Protection Clause violations below.

12                          i.      *Due Process Clause Violation*

13       Plaintiff alleges that pretrial liberty is a fundamental right and thus his confinement for

14 monetary reasons constitutes a constitutional violation.  (ECF No. 20 at 14.)  Thus, according to

15 Plaintiff, detention conditioned upon posting of bail—is subject to strict scrutiny review.  (ECF

16 No. 20 at 14.)  Plaintiff argues that California's Bail Law fails strict scrutiny because it fails to

17 further any compelling state interest and is not narrowly tailor to protect the government's

18 purported state interest.  (ECF No. 20 at 14–15.)  Specifically, Plaintiff contends that the

19 government's public safety interest is insufficient because Class Members do not include

20 individuals who are dangerous enough to be denied release altogether, but rather includes those

21 too poor to afford bail.  (ECF No. 20 at 15.)  Plaintiff further maintains that the Bail Law is too

22 over– and under–inclusive to meet any interest, because the "sole factor determining pretrial

23 freedom is an arrestee's ability to make a monetary payment."  (ECF No. 20 at 16.)  Defendants

24 note the Supreme Court is reluctant to expand fundamental rights in general and argues they are

25 limited to "matters of marriage, family, procreation" and the like. (ECF No. 14 at 14.)

26 Essentially, Defendants assert that there is not a fundamental right at issue.  This Court disagrees.

27       In general, the Due Process Clause provides heightened protection against government

28

                                                        16

interference with certain fundamental rights and liberty interests. *Arpaio*, 770 F.3d at 780 (citing *Washington v. Glucksberg,* 521 U.S. 702, 719–20 (1997)); *Reno v. Flores,* 507 U.S. 292, 302 (1993)).  The Supreme Court has long recognized constitutional limits on pretrial detention, including but not limited to: prohibiting excessive bail, *see Stack v. Boyle*, 342 U.S. 1, 4–5, (1951); barring punitive conditions of pretrial confinement, *see Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); prohibiting pretrial detention as punishment, *see United States v. Salerno*, 481 U.S. 739, 746–48 (1987); and holding that restrictions on pretrial release of adult arrestees must be carefully limited to serving a compelling governmental interest, *see Salerno*, 481 U.S. at 748– 51.  *See also Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 777 (9th Cir. 2014) (discussing the above cases).  Specific to the pretrial detention context, the Supreme Court held in *Salerno* that when the government institutionalizes an adult it triggers heightened scrutiny under the Due Process Clause.  481 U.S. 739 (1987).  Thus, Plaintiff is correct that heightened scrutiny applies in determining whether the Bail Law infringes upon his pretrial liberty interest.  Accordingly, Plaintiff has met the threshold showing that pretrial detention is a fundamental right subject to heightened scrutiny.  *Arpaio*, 770 F.3d at 780.  Because Defendants' motion is based on the assumption that no fundamental right is at issue, their Motion to Dismiss on this basis is hereby denied.  (ECF No. 14 at 14.)

Next, the Court turns to whether or not the pretrial detention amounts to a punishment. "In evaluating constitutionality of conditions or restrictions of pretrial detention that implicate protection against deprivation of liberty without due process, the proper inquiry is whether those conditions or restrictions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  "The [Supreme] Court outlined a two–pronged test for determining when conditions and restrictions of pretrial detention amount to punishment, focusing first on whether the restrictions were imposed for a punitive purpose and, if not, on whether the restrictions are excessive in relation to a legitimate regulatory purpose." *Lopez–Valenzuela v. Arpaio*, 770 F.3d 772, 778 (9th Cir. 2014) (citing *Bell*, 441 U.S. at 538–39).

In trying to assess Plaintiff's claims under this test, it becomes apparent that the parties

1    have not provided this Court with adequate information to assess whether the restrictions imposed

2    upon individuals charged with crimes under the Bail Law were imposed for a punitive purpose

3    and whether the restrictions are in fact excessive.  Thus, since it is Defendants' burden at the

4    motion to dismiss juncture, the Court cannot find that Defendants' motion is meritorious.

5    However, County, in joining the AG's motion to dismiss, moved this Court in the alternative for a

6    more definite statement under Federal Rule of Civil Procedure 12(e).

7         Rule 12(e) provides that "a party may move for a more definite statement of a pleading to

8    which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot

9    reasonably prepare a response."  Fed. R. Civ P. 12(e).  County argues that Plaintiff's Complaint is

10   deficient because it does not identify whether the above statutory framework is allegedly

11   unconstitutional, or whether Plaintiff objects to the particular manner in which County follows

12   state law. (ECF No. 17 at 5–6.)  County also asserts that the Complaint fails to accurately depict

13   the bail system and Defendant County's role in the system.  (ECF No. 17 at 5–6.)  The AG also

14   raised concerns in her motion to dismiss about the lack of specificity within the Complaint:

15   "Plaintiff's complaint does not specify whether he brings a procedural or substantive due process

16   claim, but he cannot state a claim for substantive due process."  (ECF No. 14 at 8.)

17        This Court agrees.  Without clarity as to the Bail System, the legal claims being made by

18   Plaintiff, and the factual assertions that Plaintiff is relying on in making his claim, it is impossible

19   for this Court to determine whether Plaintiff has adequately pleaded that the Bail Law has a

20   punitive purpose or imposes restrictions that are excessive in relation to the legitimate regulatory

21   purpose.  Thus, the Court grants Defendant County's motion for a more definite statement under

22   Federal Rule of Civil Procedure 12(e).   Plaintiff is given leave to file an amended complaint as to

23   this claim.

24              *ii.      Equal Protection Clause Violation*

25        Plaintiff argues that the pre-trial detention scheme violates the Equal Protection Clause

26   because it discriminates based on wealth status.  (ECF No. 20 at 9.)  Defendants counter that

27   wealth status is not a suspect class and therefore no heightened scrutiny is triggered. (ECF No. 14

28

at 7.)  Thus, Defendants maintain that only rational basis review applies which the Bail Law easily satisfies.  (ECF No. 14 at 7.)  As Defendants point out, the Plaintiff relies heavily on out-of-circuit case law and plucked platitudes from the Supreme Court's criminal justice canon. (ECF No. 14 at 7.)

"When analyzing an Equal Protection claim, heightened scrutiny is applied only when a restriction burdens a suspect class."  *N.A.A.C.P., Los Angeles Branch v. Jones*, 131 F.3d 1317, 1321 (9th Cir. 1997) (citing *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973)).  "Wealth is not a suspect category in Equal Protection jurisprudence." *Id.*  (citing *Harris v. McRae*, 448 U.S. 297, 322–23 (1980); *United States v. Barajas–Guillen*, 632 F.2d 749, 753 (9th Cir. 1980)).  Thus, a distinction based on wealth only needs to meet a rational basis review. *Id.*

Here, rational basis review is proper for assessing the Bail Law at issue because wealth status is not a suspect class.  "Where a statutory classification does not itself impinge on a right or liberty protected by the Constitution, the validity of classification must be sustained unless the classification rests on grounds wholly irrelevant to the achievement of [any legitimate governmental] objective."  *Harris v. McRae*, 448 U.S. 297, 322 (1980) (citations omitted).  The state's interest in ensuring criminal defendants appear for trial dates is a legitimate one, and detaining individuals before their arraignment is rationally related to that legitimate interest. Therefore, the Bail Law meets rational basis review and Plaintiff fails to state a claim upon which relief can be granted under the Equal Protection Clause.

**VI.   CONCLUSION**

For the above reasons, the Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.  Defendants' motion to dismiss pursuant to Eleventh Amendment immunity and the *Younger* doctrine is **DENIED**.  Defendants' Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e) is **GRANTED** as to Plaintiff's due process claim, and Defendants' Motion to Dismiss Plaintiff's equal protection claim is **GRANTED**. Because the operative Complaint is being dismissed, Plaintiffs' pending motion for class

19

certification (ECF No. 3) is **DENIED AS MOOT**.  Plaintiff is granted thirty (30) days leave to amend from the entry of this Order to file an amended complaint as to his due process claim.

IT IS SO ORDERED.

Dated: October 10, 2016

Troy L. Nunley
United States District Judge