UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY WAYNE WELCHEN, | No. 2:16-cv-00185-TLN-DB |
| Plaintiff, | |
| v. | **ORDER** |
| THE COUNTY OF SACRAMENTO, KAMALA HARRIS, in her official capacity as the California Attorney General, and SCOTT JONES, in his official capacity as the Sacramento County Sheriff, | |
| Defendants. | |

This matter is before the Court pursuant to Defendant County of Sacramento, ("County") Defendant Scott Jones, in his official capacity as Sacramento County Sheriff, ("Sheriff") and Defendant Kamala Harris's, in her official capacity as the California Attorney General, ("AG") (collectively "Defendants") Motions to Dismiss. (ECF No. 35; ECF No. 36.) Plaintiff Gary Wayne Welchen, et al. ("Plaintiff") filed oppositions to Defendants' motions. (ECF No. 37; ECF No. 38.) Defendants filed replies. (ECF No. 39; ECF No. 40.) The Court has carefully considered the parties' arguments. For the reasons set forth below, Defendants' Motions to Dismiss are GRANTED IN PART and DENIED IN PART.

///

///

1

## I. FACTUAL ALLEGATIONS

Plaintiff, a 50-year-old indigent and homeless resident of Sacramento, was arrested by Sacramento police on January 29, 2016, for suspicion of second-degree burglary of an uninhabited dwelling. (Pl.'s First Am. Compl. ("FAC"), ECF No. 31, ¶¶ 27–28, 30.) Plaintiff alleges that after he was taken to jail, he was informed he would be kept in jail unless he paid $10,000 for bail. (ECF No. 31, ¶ 29.) Plaintiff alleges that because he could not afford to pay $10,000, he was detained for six days before he was released by the Sheriff's Department. (ECF No. 31, ¶ 33.) That same day, Plaintiff filed this class action against the County and AG alleging that enforcement of California Penal Code section 1269b ("Bail Law") and the County's bail schedule adopted pursuant to that law ("Bail Schedule") violate his Constitutional rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment. (Compl., ECF No. 1, ¶¶ 13, 65–68.) Plaintiff later named the Sheriff as an additional defendant in the FAC for the same claims. (ECF No. 31.)

Plaintiff alleges the County and Sheriff's "policy of implementing the money bail system [pursuant to Cal. Pen. Code § 1269(b)] . . . amounts to unconstitutional wealth-based detention." (ECF No. 31, ¶ 16.) Plaintiff alleges that at the end of the booking process, arrestees are given a booking sheet, which includes their booking charge and their bail amount. (ECF No. 31, ¶ 37.) Plaintiff further alleges bail is determined by referring to the Felony and Misdemeanor Bail Schedule as established by the Superior Court of California, County of Sacramento. (ECF No. 31, ¶ 37.) Plaintiff states deputy sheriffs use this bail schedule, referring to an arrestee's booking charge(s), when determining an arrestee's bail amount. (ECF No. 31, ¶ 37.) Plaintiff alleges arrestees are told that if they pay their bail amount, they will be released immediately. (ECF No. 31, ¶ 38.) Plaintiff alleges arrestees are then told that if they cannot pay bail, they will remain in jail until arraignment or discharge. (ECF No. 31, ¶ 38.) Plaintiff states that arrestees who are not able to pay their money bail amount are shown a poster listing the phone numbers of bail bond agents and told that they may call one of these numbers to attempt to secure their release. (ECF No. 31, ¶ 39.) Plaintiff alleges arrestees who obtain release through bail bond agents remain in

jail while arranging cosigners and finalizing the bail bond contract. (ECF No. 31, ¶ 39.) According to Plaintiff, this process can take hours or days. (ECF No. 31, ¶ 39.)

Plaintiff alleges that if an arrestee can afford to pay her bail amount, the Sheriff's Department accepts the bail payment and orders the release of the arrestee. (ECF No. 31, ¶ 40.) Plaintiff further states that if an arrestee cannot afford to pay her bail amount, the Sheriff's Department keeps her in jail until either she can make other arrangements to obtain her release, she is discharged, or she is taken to court two to five days later for arraignment. (ECF No. 31, ¶ 41.) Consequently, Plaintiff alleges that "[a]rrestees are given a right to release pending trial, but Defendants' pay-for-freedom system conditions their release on their ability to afford money bail, thus tying their pretrial freedom to their wealth-status." (ECF No. 31, ¶ 47.)

Plaintiff alleges the Bail Law violates substantive due process because the system is not narrowly tailored to public safety or ensuring court appearances. (ECF No. 31, ¶ 74.) Plaintiff further alleges that non-wealth-based alternatives to the money bail system exist and could be implemented. (ECF No. 31, ¶ 75.) Moreover, Plaintiff alleges that Defendants' wealth-based detention system is excessive in relation to its purpose to ensure court appearances considering successful non-money-based systems that do not infringe on the fundamental right to pretrial liberty, such as phone and text message reminders of court dates, rides to court for those without transportation or a stable address, counseling, SCRAM bracelets (for alcohol testing), and electronic monitoring services. (ECF No. 31, ¶¶ 76–77, 80.) According to Plaintiff, subjecting the poor to unnecessary pretrial detention causes instability in employment, housing, and care dependent relatives. (ECF No. 31, ¶ 84.) Plaintiff further alleges that unnecessary pretrial detention also leads to worse outcomes at trial when compared with those released pretrial. (ECF No. 31, ¶ 84.) Plaintiff states that unnecessary pretrial detention causes difficulties in preparing a defense, gathering evidence and witnesses, and meeting with their lawyers. (ECF No. 31, ¶ 84.) Plaintiff also alleges that the Bail Law does not provide individualized assessments of risk level. (ECF No. 31, ¶ 78.) For these reasons, Plaintiff alleges Defendants' policy and practice of enforcing the money-based bail system is excessive in relation to the Bail Law's regulatory purpose. (ECF No. 31, ¶ 111.)

3

Plaintiff brings suit under 42 U.S.C. § 1983 ("§ 1983").  (ECF No. 31, ¶ 7.)  Plaintiff alleges the County violates Plaintiffs' Fourteenth Amendment rights by its policy and practice of implementing the Bail Law's wealth-based detention system.  (ECF No. 31, ¶ 112.)  Plaintiff alleges the Sheriff, in his official capacity, violates Plaintiffs' Fourteenth Amendment rights by implementing the Bail Schedule through his oversight of the county jail, by implementing the state's bail laws, and by enforcing provisions of California state law regarding the use of money bail.  (ECF No. 31, ¶ 113.)  Finally, Plaintiff alleges the AG, in her official capacity, violates Plaintiffs' Fourteenth Amendment rights by requiring the County and Sheriff to adopt and implement a bail schedule that results in detaining them solely because they cannot afford to pay money bail.  (ECF No. 31, ¶ 114.)

Plaintiff requests declaratory judgment that: (1) Defendants violated and continue to violate Plaintiff's and proposed class members' rights under the Fourteenth Amendment; (2) Defendants must follow the requirements of the Equal Protection and Due Process Clauses, regardless of contrary state law or contrary policies and practices; (3) California Penal Code section 1269b(b) and any other state statutory or constitutional provisions that require the use of secured money bail to detain any person without an inquiry into ability to pay are facially unconstitutional; and (4) as applied by Defendants against Plaintiff and class members, California Penal Code section 1269b(b) and any other state statutory or constitutional provisions that require the use of secured money bail to detain any person without an inquiry into ability to pay are unconstitutional.  (ECF No. 31 at 21–22.)  Plaintiff also seeks preliminary and permanent injunctive relief enjoining Defendants and all involved employees of the County from enforcing the bail policy and practices against all proposed class members and request money damages and attorneys' fees and costs.  (ECF No. 31 at 21–22.)

## II.  PROCEDURAL HISTORY

The Complaint was filed on January 29, 2016, with accompanying motions for a temporary restraining order, preliminary injunction, and class certification.  (ECF Nos. 1, 2, & 3.)  On February 4, 2016, this Court denied Plaintiff's ex parte motion for a temporary restraining order.  (ECF No. 12.)  On February 18, 2016, the AG filed a motion to dismiss the complaint.

4

(ECF No. 14.) The County joined in the AG's motion to dismiss, but also in the alternative moved the Court for a more definite statement of the law pursuant to Federal Rule of Civil Procedure 12(e). (*See* Joinder in Mot. to Dismiss and Not. of Mot. in the Alt. for More Def. Statement, ECF No. 17.) The Court granted Defendants' motion to dismiss as to Plaintiff's Equal Protection claim without leave to amend and granted the motion for a more definite statement as to Plaintiff's Due Process claim. (ECF No. 30.) The Court denied the pending motion for class certification as moot. (ECF No. 30 at 19–20.) Plaintiff filed the FAC on November 9, 2016. (ECF No. 31.) The AG filed a motion to dismiss the FAC on December 13, 2016. (ECF No. 36). That same day, the Sheriff and the County (collectively "County Defendants") also jointly filed a separate motion to dismiss. (Mot. Dismiss, ECF No. 35; Mem. Points Auth. for Mot. Dismiss, ECF No. 35-1.) The Court will rule on both motions to dismiss in this order.

### III. STATUTORY BACKGROUND

Under the challenged Bail Law, Cal. Penal Code section 1269b, a person arrested for a crime may be released on bail while awaiting trial or some alternative resolution of the charges. Cal. Penal Code § 1269b(a). The bail amount is determined by a judge if the arrestee appears before a judge; if not, then the bail amount is determined by "the uniform countywide schedule of bail" (i.e. the Bail Schedule). Cal. Penal Code § 1269b(b). This Bail Schedule is "prepare[d], adopt[ed], and annually revise[d]" by the county's superior court judges who consider the "seriousness of the offense charged." Cal. Penal Code § 1269b(c) & (e). The Bail Law also allows detained individuals to petition for release on their own recognizance or for a lower bail. Cal. Penal Code § 1269c. While individuals charged with serious felonies may seek lower bail than the Bail Schedule, those charged with misdemeanors are presumptively entitled to release unless the court foresees a public safety or court appearance issue. Cal. Penal Code §§ 1270 – 1270.1(a).[1]

///

///

---

[1] The Court notes that California Governor Jerry Brown signed Senate Bill No. 10 ("SB 10") on August 28, 2018. SB 10 will take effect on October 1, 2019, and it will eliminate the money-based bail system in California.

5

## IV. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**V.    ANALYSIS**

Defendants request the Court dismiss Plaintiff's FAC in its entirety. (ECF No. 35-1; ECF No. 36.) The County Defendants bring four principal arguments: (1) Plaintiff's claims against the Sheriff are barred by the Eleventh Amendment to the extent Plaintiff seeks money damages because the Sheriff acts on behalf of the state when enforcing the Bail Law; (2) the County is not liable for the Sheriff's conduct because the Sheriff acts on behalf of the state; (3) the County is not liable under § 1983 because its involvement with the Bail Law amounted to ministerial compliance with state law rather than a deliberate choice as required by *Monell v. Dep't of Soc.*

7

*Servs. of City of New York*, 436 U.S. 658 (1978); and (4) Plaintiff fails to state a Due Process claim. (ECF No. 35-1 at 2–3.) The AG separately argues that the Bail Law does not violate Due Process. (ECF No. 36 at 7.)

The Court will first address the County Defendants' Eleventh Amendment argument as it is dispositive. As such, the Court declines to address the County Defendants' *Monell* argument. The Court will then address the Due Process claim as it applies to the Sheriff and AG.

A.  The Eleventh Amendment

As a threshold matter, the County Defendants argue that Eleventh Amendment sovereign immunity shields the Sheriff from money damages because he acts on behalf of the state when enforcing the Bail Law. (ECF No. 35-1 at 5.) The County Defendants further argue that the County is not liable for the Sheriff's conduct as a state actor implementing the Bail Law and thus claims against the County should be dismissed. (ECF No. 35-1 at 9.) The Court will first address whether the Sheriff is a state or county actor in implementing the Bail Law. The Court will then address the County's liability.

The Eleventh Amendment has been interpreted as a grant of sovereign immunity to the states against suit in federal court. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) ("[E]ach State is a sovereign entity in our federal system; and ... it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.") (internal quotes omitted). This means that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (internal quotes omitted) (emphasis added). State agencies or departments are protected by Eleventh Amendment sovereign immunity when named as a defendant. *Id.*

Sovereign immunity extends to state officials sued in their official capacity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (finding that state officials acting in their official capacity do not qualify as "persons" within the meaning of § 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office.") Although sovereign immunity generally does not extend to local

governmental bodies, *Monell*, 436 U.S. at 690, local officials qualify for sovereign immunity when they act on behalf of the state, rather than local government. *See McMillian v. Monroe County, Alabama*, 520 U.S. 781, 785–86 (1997). In determining if a local official qualifies as a state actor, courts analyze (1) whether the governmental official is a "final policymaker[] for the local government in a particular area, or on a particular issue," and (2) state law evaluating "the definition of the official's functions." *Id.*; *Weiner v. San Diego Cty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) ("[T]he official's 'actual function . . . in a particular area,' as defined by state law, must be evaluated to determine whether he acts for the state or the county.") (quoting *McMillian*, 520 U.S. at 786).

While "[t]he Eleventh Amendment erects a general bar against federal lawsuits brought against a state," *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), "it does not [ ] bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133–34 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)). This is known as the *Ex parte Young* exception, and it requires that the individual state official sued "must have some connection with the enforcement of the act." *Id.* at 1134 (quoting *Ex parte Young*, 209 U.S. at 157). Moreover, that connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.* (internal citations omitted). Otherwise, suing a state official would be just an indirect way of suing the State. *Ex parte Young*, 209 U.S. at 157. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotes omitted).

     *i.*  *The Sheriff's Eleventh Amendment Immunity*

The Sheriff contends that he is entitled to sovereign immunity under the Eleventh Amendment because he acts on behalf of the state of California in enforcing the Bail Law. (ECF

9

No. 35-1 at 5.)  Plaintiff argues that the Sheriff acts as a county official when implementing the Bail Law and is not entitled to sovereign immunity based on (1) analysis under *McMillian v. Monroe County, Ala.*, (2) binding Ninth Circuit precedent, and (3) the state's lack of control over the Sheriff's discretion in implementing the Bail Law.  (ECF No. 37 at 2–6.)  The Court will address Plaintiff's three arguments in turn.

### a. *McMillian* Analysis

Plaintiff first argues that the Sheriff is a county official based on the analysis set forth in *McMillan*.  (ECF No. 37 at 2.)  In *McMillian*, the Supreme Court analyzed in detail Alabama's constitutional and statutory provisions, governmental structure, and allocation of power among its institutions as applied to sheriffs.  520 U.S. at 786–92.  The *McMillan* Court determined that despite the sheriff's connection to the county, "the weight of the evidence is strongly on the side of the conclusion reached by the Court of Appeals: Alabama sheriffs, when executing their law enforcement duties, represent the State of Alabama, not their counties." *Id.* at 793.  Similarly, California law has found that sheriffs act on behalf of the state when executing law enforcement activities.  *See Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 839 (2004) ("California sheriffs act as state officers while performing state law enforcement duties"); *Streit v. Cty. of Los Angeles*, 236 F.3d 552, 564 (9th Cir. 2001) ("Acting upon a warrant is a law enforcement function with which the [Sheriff's Department] is tasked under California state law.").  As such, the Court rejects Plaintiff's argument that *McMillian* categorically precludes the Court from finding the Sheriff to be a state actor.

### b. Ninth Circuit Precedent

Plaintiff next argues that binding circuit precedent makes clear that a sheriff is a county official when dealing with matters relating to oversight and management of local jails.  (ECF No. 37 at 5–6.)  To support this contention, Plaintiff cites two Ninth Circuit cases: *Streit*, 236 F.3d at 563 and *Cortez v. Cnty. of Los Angeles*, 294 F.3d 1186, 1187 (9th Cir. 2002).  (ECF No. 37 at 6.)

In *Streit*, the court analyzed a sheriff's department policy requiring a records check on a prisoner's release date.  236 F.3d at 555.  The court determined that the sheriff's department acted on behalf of the county when implementing the release policy because it was an administrative

function of the sheriff. *Id.* at 564. The court carefully distinguished that while a sheriff may in fact act on behalf of a county when performing administrative functions, a sheriff acts on behalf of the state when enforcing state laws, such as detaining someone pursuant to a facially-valid warrant, because the sheriff is tasked to do so by state law. *See id.*

In *Cortez*, the Ninth Circuit held that a sheriff acted as a county official "in implementing policies and procedures for the safekeeping of inmates in the county jail." 294 F.3d at 1187. At issue in *Cortez* was a sheriff-established policy to put inmates with certain gang affiliations in segregated units. *Id.* at 1187–88. Applying *Streit*, the *Cortez* court determined that the sheriff acted as a county official in implementing his segregation policy because he acted in his administrative capacity. *Id.* at 1189–90.

Neither *Streit* nor *Cortez* apply to the facts at hand. The Bail Law is a state law, and the Bail Schedule is set by the Sacramento County Superior Court. (ECF No. 31, ¶¶ 16, 37.) As such, the Bail Law is not a sheriff-established policy that might be considered an administrative action like the policies at issue in *Streit* or *Cortez*. *See Streit*, 236 F.3d at 564; *Cortez*, 294 F.3d at 1189–90.

Moreover, district courts within this circuit have determined that California Sheriffs act as representatives of the state, and not a county, when enforcing state laws, including the Bail Law. In *Buffin v. City & Cty. of San Francisco*, No. 15-CV-04959-YGR, 2016 WL 6025486, at *7 (N.D. Cal. Oct. 14, 2016), the court, analyzing a constitutional challenge to the enforcement of the Bail Law, stated that district courts draw a line "when the sheriff detains someone pursuant to state law rather than under an administrative policy set by the sheriff herself." *Id.* at *7. The Northern District granted a sheriff's motion to dismiss based on sovereign immunity, finding that the sheriff acted on behalf of the state in enforcing the Bail Law. *Id.* at *8–9 ("Sheriff Hennessey acts on behalf of the State when she detains a person based on his or her inability to pay the bail amount prescribed in the bail schedule as set by the Superior Court. As a state actor, the Sheriff is entitled to immunity from suit for money damages under the Eleventh Amendment and plaintiffs' request for such relief is barred thereby."); *see also McNeely v. Cty. of Sacramento*, No. 205-CV-1401-MCE-DAD, 2008 WL 489893, at *3–5 (E.D. Cal. Feb. 20, 2008), *aff'd*, 344 F. App'x 317

(9th Cir. 2009) (holding that a sheriff "was acting on behalf of the State of California in detaining Plaintiff pursuant to pending criminal proceedings, and a facially valid bench warrant issued by the [county's superior court]."); *Smith v. Cty. of San Mateo*, No. C 99–00519 CRB, 1999 WL 672318, at *5–8 (N.D. Cal. Aug. 20, 1999) (applying *McMillian* in finding that the sheriff acted on behalf of the state, not the county, when incarcerating an arrestee at county jail pursuant to bench warrant); *Munoz v. Kolender*, 208 F. Supp. 2d 1125, 1152–53 (S.D. Cal. 2002) (determining that a California sheriff acts on behalf of the state when detaining a plaintiff in a county jail pursuant to a court order).

Despite Plaintiff's argument that Ninth Circuit precedent bars a finding that the Sheriff is a state actor, Plaintiff's Ninth Circuit cases are distinguishable from the instant case. Further, federal district courts determined sheriffs act on behalf of the state when they are detaining an individual based on court orders. *See*, *e.g*, *McNeely*, 2008 WL 489893 at *3. Similarly, the Sheriff implements the Bail Law according to the Sacramento County Superior Court's Bail Schedule because he is tasked to do so under state law. *See Buffin*, 2016 WL 6025486 at *8. Thus, the Court determines that Ninth Circuit precedent does not preclude a finding that the Sheriff is a state actor.

       c.  <u>Sheriff's Discretion</u>

Finally, Plaintiff argues the Sheriff's actions were not controlled by the state. (ECF No. 37 at 6.) But as noted, Plaintiff admits the Sheriff is obligated to implement the state Bail Law, and the Sheriff enforces bail schedules as set by the Sacramento County Superior Court. (ECF No. 31, ¶¶ 18, 37.) Despite its title, the Sacramento County Superior Court is an arm of the State. *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987) (finding that a superior court's "geographical location within any particular county cannot change the fact that the court derives its power from the State and is ultimately regulated by the State") (superseded by statute on other grounds). As such, the terms of the Bail Law are set and controlled by the state. *Buffin*, 2016 WL 6025486 at *7 (finding under the Bail Law, "the Sheriff lacks discretion to release the arrested person outside the bounds of the statute").

Plaintiff alternatively argues that, "this case involves (at most) a conditional order of

detention" by the state, whereas the Sheriff makes "innumerable decisions about conditional detention and release," including methods of payment, when arrestees are notified of bail amounts, and whether arrestees receive a list of bail bond agents. (ECF No. 37 at 7–8.) However, the Court finds Plaintiff's argument unpersuasive. Decisions such as methods of payments and lists of bail bond agents are ancillary to the alleged unconstitutional provisions of the Bail Law itself, and do not alter the Sheriff's actions as a state actor in implanting the Bail Law. *Buffin*, 2016 WL 6025486 at *8 ("Even if true, these decisions and procedures are not challenged by plaintiffs in this lawsuit and do not alter the Sheriff's lack of discretion in detaining a person who is unable to pay the bail amount set by the bail schedule."). Indeed, after carefully analyzing the Bail Law, in *Buffin*, the court determined that "the Sheriff lacks discretion to release the arrested person outside the bounds of the statute." *Buffin*, 2016 WL 6025486 at *7. As in *McNeely*, where the court found that Cal. Pen. Code § 4004 requires sheriffs to detain arrestees "until legally discharged," here, the Sheriff similarly does not have discretion when implementing the Bail Law. *McNeely*, 2008 WL 489893 at *5.

For these reasons, the Court finds that the Sheriff acts on behalf of the state in implementing the Bail Law. Accordingly, the Eleventh Amendment shields the Sheriff from suit for money damages. However, based on the *Ex Parte Young* exception to sovereign immunity, Plaintiff may seek declaratory or injunctive relief against the Sheriff for allegedly unconstitutional conduct related to the Bail Law. *Ex Parte Young*, 209 U.S. at 155–56 (holding that Eleventh Amendment immunity from suit does not bar claims for injunctive or declaratory relief against state actors enforcing challenged state law).

      *ii.*   *The County's Liability for the Sheriff's Actions*

The County Defendants next argue the County cannot be liable for the Sheriff's actions because the Sheriff acts on behalf of the state, not the county. (ECF No. 35-1 at 9.) Although Plaintiff alleges the County is equally liable for implementation of the Bail Law, the claim against the County fails. (ECF No. 31, ¶ 112.) Because the Court has determined that the Sheriff acts on behalf of the state on this issue, the County is not liable for the Sheriff's implementation of the Bail Law. *See McMillian*, 520 U.S. at 783 (explaining that the county is liable for the sheriff's

13

actions when the actions stem from a county policy) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Weiner v. San Diego Cty.*, 210 F.3d 1025, 1031 (9th Cir. 2000) ("In the present case, however, the San Diego County district attorney was acting as a state official . . . Weiner's § 1983 claim against the County, therefore, fails [because] [t]he County was not the actor; the state was."). Therefore, the claim against the County is dismissed.

B.     12(b)(6) Analysis of the Substantive Due Process Claim

The AG independently argues that Plaintiff has not sufficiently pleaded that the Bail Law is facially invalid under Due Process. (ECF No. 36 at 7.) Additionally, the AG and Sheriff both argue that Plaintiff has not sufficiently pleaded that the Bail Law has a punitive purpose or is excessive to its legitimate purposes of ensuring public safety and court appearances. (ECF No. 35-1 at 13–14; ECF No. 36 at 8.) The Court will address each argument in turn.

The Due Process Clause of the Fourteenth Amendment provides heightened protection against government interference with certain fundamental rights and liberty interests. *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014) (citing *Washington v. Glucksberg,* 521 U.S. 702, 719–20 (1997)); *Reno v. Flores*, 507 U.S. 292, 302 (1993)).[2] "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process . . . the proper inquiry is whether those conditions or restrictions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "The [Supreme] Court outlined a two-pronged test for determining when conditions and restrictions of pretrial detention amount to punishment, focusing first on whether the restrictions were imposed for a punitive purpose and, if not, on whether the restrictions are excessive in relation to a legitimate regulatory purpose." *Arpaio*, 770 F.3d at 778 (citing *Bell*, 441 U.S. at 538–39).

    *i.*     *Facially Invalid*

The AG argues that the Bail Law is not facially invalid because it "does not categorically deny bail to any group of individuals; to the contrary, it allows any individual (other than those

---

[2] The Court previously found Plaintiff met the threshold showing that pretrial detention is a fundamental right subject to heightened scrutiny. (ECF No. 30 at 17.)

charged with capital crimes or other serious offenses) to obtain bail." (ECF No. 36 at 7.) "[A] plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

In *Arpaio*, the Ninth Circuit reversed a district court's grant of partial summary judgment of a plaintiff's substantive due process claim. *Arpaio*, 770 F.3d at 792. In doing so, the court found as a matter of law that Proposition 100, an Arizona constitutional amendment that categorically denied bail to undocumented immigrants, was facially invalid. *Id.* at 791–92. The court explained,

> [Proposition 100] purport[ed] to deal with a societal ill—unmanageable flight risk posed by undocumented immigrants as a class—that has not been shown to exist. Even if we assume that a problem exists, Proposition 100 employs a profoundly overbroad irrebuttable presumption, rather than an individualized evaluation, to determine whether an arrestee is an unmanageable flight risk. As discussed, this mechanism necessarily results in the deprivation of liberty even where not necessary to ensure appearance at trial, because undocumented immigrants who do not pose a flight risk or who pose a manageable one are categorically denied bail based solely on their status. Given this *severe* lack of fit between the asserted nonpunitive purpose and the actual operation of the law, we conclude that Proposition 100's bail provisions are punitive rather than regulatory. Thus, the Proposition 100 laws facially violate substantive due process by imposing punishment before trial.

*Id.* at 791.

Plaintiff alleges that if an arrestee cannot afford to pay the bail amount, whether by her own means or with the aid of a bail bond agent, the Sheriff's Department keeps her in jail until either she can make other arrangements to obtain her release, she is discharged, or she is taken to court two to five days later for arraignment. (ECF No. 31, ¶¶ 38–41.) According to Plaintiff, "wealthy arrestees can purchase their immediate release, while poorer arrestees must remain in jail." (ECF No. 31, ¶ 105.) Plaintiff further alleges there is "no evidence that ability to pay correlates closely with unmanageable flight risk or public safety . . . a person's wealth is not determinative of her likelihood of appearing for trial or threatening public safety." (ECF No. 31, ¶ 69.)

The AG's argument that the Bail Law is not a categorical bar to pretrial release because it "allows any individual . . . to obtain bail," (ECF No. 36 at 7), ignores the thrust of Plaintiff's claim, which is that the Bail Law effectively imposes a categorical bar to pretrial release of poor arrestees, not because bail does not exist, but because the poor cannot afford it. (ECF No. 31, ¶ 111.) In the instant case, as in *Arpaio*, Plaintiff alleges the Bail Law "categorically eliminates the opportunity for people who are poor to achieve pretrial freedom, even if they are not a danger or flight risk," and it does so without any "individualized assessment of risk level" of the arrestee. (ECF No. 31, ¶¶ 76, 78; *see Arpaio*, 770 F.3d at 791.)

To survive a 12(b)(6) motion, Plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Based on Plaintiff's allegations that the Bail Law categorically prevents poor individuals from pretrial release, the Court finds Plaintiff pleaded sufficient facts that the Bail Law is facially invalid to survive a Rule 12(b)(6) motion. Therefore, the AG's motions to dismiss on the basis that the Bail Law is not facially invalid is denied.

> ## ii. *Excessive in Relation to its Purpose*

The AG and Sheriff both argue that Plaintiff has not sufficiently pleaded that the Bail Law has a punitive purpose or is excessive to its legitimate purposes of ensuring public safety and court appearances. (ECF No. 35-1 at 13–14; ECF No. 36 at 8.) Plaintiff does not claim the Bail Law has an expressly punitive purpose. Rather, Plaintiff responds that the bail provisions are excessive in relation to any legitimate purpose. (ECF No. 38 at 2, 8.)

Plaintiff alleges that the Bail Law "has no connection to public safety" because "[t]hose wealthy enough to pay their bail amount have their full amount returned to them if they appear for all their court dates, regardless of whether they commit additional crimes." (ECF No. 31, ¶ 70.) Plaintiff further alleges that the Bail Law is excessive in relation to its sole remaining legitimate purpose, ensuring court appearances. (ECF No. 31, ¶¶ 76–77.)

In *Arpaio*, the court found that Proposition 100 "employ[ed] a profoundly overbroad irrebuttable presumption, rather than an individualized evaluation, to determine whether an arrestee is an unmanageable flight risk" based on the wealth-status of the arrestee. *Arpaio*, 770

F.3d at 79. In the instant case, Plaintiff alleges that the Bail Law, like Proposition 100 "restricts pretrial liberty in relation to any regulatory purpose," and fails "to provide for individualized assessments of risk levels. . . ." (ECF No. 31, ¶¶ 76, 78.) To bolster his accusation that the Bail Law is excessive, Plaintiff alleges that successful non-money-based alternatives exist to ensure court appearances, such as phone and text message reminders of court dates, rides to court for those without transportation or a stable address, and electronic monitoring services. (ECF No. 31, ¶¶ 76–77, 80.) Plaintiff also alleges that unnecessary pretrial detention causes arrestees to suffer instability in employment, housing, and care for dependent relatives. (ECF No. 31, ¶ 84.) Moreover, Plaintiff alleges that pretrial detention also leads to worse outcomes at trial and delays in preparing a defense. (ECF No. 31, ¶ 84.)

As in *Arpaio*, Plaintiff's allegations suggest that implementation of the Bail Law "necessarily results in the deprivation of liberty even where not necessary to ensure appearance at trial." (770 F.3d at 791; *see also* ECF No. 31, ¶ 111.) Given Plaintiff's allegations, the Court finds that Plaintiff sufficiently pleaded the Bail Law is excessive in relation to its purpose of ensuring court appearances. *Arpaio*, 770 F.3d at 791 (finding a law to be excessive based on its "*severe* lack of fit between the asserted nonpunitive purpose and the actual operation"). Thus, the Sheriff and AG's motions to dismiss the Due Process claim under Rule 12(b)(6) are denied.

### VI. CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. The County Defendants' Motion to Dismiss is GRANTED as to Plaintiff's claims for monetary damages against the Sheriff;

2. The County Defendants' Motion to Dismiss is GRANTED as to Plaintiff's claims against the County; and

3. Both the County Defendants' and AG's Motions to Dismiss are DENIED as to Plaintiff's Due Process claim.

///

///

///

17

IT IS SO ORDERED.

Dated: October 24, 2018

*[signature]*
Troy L. Nunley
United States District Judge