Phil Telfeyan (CA Bar No. 258270)
Equal Justice Under Law
400 7th Street NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
*Attorneys for Plaintiff Gary Welchen*

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| GARY WAYNE WELCHEN, *et al.*, | ) | 2:16-cv-185-TLN-DB |
| | ) | |
| | ) | **PLAINTIFF'S NOTICE OF MOTION,** |
| Plaintiffs, | ) | **MOTION, AND MEMORANDUM OF** |
| | ) | **LAW IN SUPPORT OF HIS MOTION** |
| v. | ) | **FOR PARTIAL SUMMARY** |
| | ) | **JUDGMENT AS TO LIABILITY** |
| | ) | |
| ROB BONTA, IN HIS OFFICIAL | ) | Date:        May 5, 2022 |
| CAPACITY AS THE ATTORNEY | ) | Time:        2:00 p.m. |
| GENERAL OF CALIFORNIA, *et al.*, | ) | Location:    Courtroom 2, 15th Floor |
| | ) | Judge:       Hon. Troy L. Nunley |
| Defendants. | ) | Trial Date:  n/a |
| | ) | Action Filed: January 29, 2016 |

## **Table of Contents**

Table of Authorities ............................................................................................................. iii

I.     INTRODUCTION ........................................................................................................ 1

II.    PROCEDURAL HISTORY........................................................................................... 3

III.   ARGUMENT ............................................................................................................... 4

     A.     The Bail Schedule Deprives Plaintiff of a Substantive Due Process Interest in Pretrial Liberty, There Triggering Strict Scrutiny ................................................... 4

          i.     Pretrial Liberty Is a Fundamental Right Under the Fourteenth Amendment Subject to Strict Scrutiny ....................................................... 5

          ii.    Defendants' Use of the Bail Schedule Unambiguously Deprives Plaintiffs of that Liberty Interest and Imposes Other Harms ..................... 6

     B.     Defendants' Deprivation of Plaintiff's Liberty Does Not Serve Compelling Government Interests, and Therefore Fails Strict Scrutiny ................................... 9

          i.     The Bail Schedule Does Not Serve the Government's Interest in Protecting Public Safety........................................................................ 10

          ii.    The Bail Schedule Does Not Serve Defendants' Interest in Ensuring Arrestees Appear for Court Proceedings ................................................ 11

          iii.   The Bail Schedule Does Not Serve Defendants' Interest in Protecting Individual Constitutional Rights............................................................... 12

          iv.    Plausible and Less Restrictive Alternatives Would Better Serve the Governments' Interests ................................................................................ 13

     C.     The Bail Schedule Is Also Unconstitutional Because It Is Excessive Due to Its Lack of Any Individualized Assessment .......................................................... 15

IV.    CONCLUSION.......................................................................................................... 17

# Table of Authorities

## Cases

*American Life League, Inc. v. Reno*, 47 F.3d 642 (4th Cir. 1995)................................................. 13

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ..................................................................................... 13

*Barker v. Wingo*, 407 U.S. 513 (1972) ......................................................................................... 8

*Barker v. Wingo*, 407 U.S. 514 (1972) ......................................................................................... 2

*Bell v. Wolfish*, 441 U.S. 520 (1979) ..................................................................................... 6, 15

*Buffin v. California*, 2022 WL 121142 (9th Cir. Jan. 13, 2022)..................................................... 1

*Buffin v. City & Cty. of San Francisco*, 2019 WL 1017537 (N.D. Cal. Mar. 4, 2019) ........ passim

*Buffin v. San Francisco*, No. 4:15-cv-4959, Doc. 372 (N.D. Cal. Sept. 3, 2019)........................ 14

*Caliste v. Cantrell*, No. 17-6197, 2018 WL 3727768 (E.D. La. Aug. 6, 2018), *aff'd*, 937 F.3d 525
    (5th Cir. 2019).......................................................................................................................... 5, 8

*Charles S. v. Superior Court*, 32 Cal.3d 741 (1982)..................................................................... 7

*Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318 (2012) ................... 8

*Gerstein v. Pugh*, 420 U.S. 103 (1975)..................................................................................... 2, 9

*Hernandez v. Sessions*, 872 F.3d 976 (9th  Cir. 2017)......................................................... 5, 6, 8

*In re Antazo*, 3 Cal.3d 100 (1970)................................................................................................. 7

*In re Humphrey*, 11 Cal. 5th 135 (2021)......................................................................... 1, 2, 14

*Lee v. City of L.A.*, 250 F.3d 668 (9th Cir. 2001) .......................................................................... 4

*Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir. 2014) ................................................. passim

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)..................................................................... 13

*ODonnell v. Harris Cnty.*, 251 F. Supp. 3d 1052 (S.D. Texas 2017), *aff'd as modified*, 882 F.3d
    528 (5th Cir. 2018), *and aff'd as modified sub nom.*, 892 F.3d 147 (5th Cir. 2018)...... 5, 8

*Phelps-Roper v. Nixon*, 545 U.S. 685 (8th Cir. 2008), *overruled on other grounds by Phelps-
    Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) ............................................ 13

*Reno v. ACLU*, 521 U.S. 844 (1997)............................................................................................ 13

*Reno v. Flores*, 507 U.S. 292 (1993) ............................................................................................. 6

*Schultz v. Alabama*, No. 5:17-cv-270, 2018 WL 4219541 (N.D. Ala. Sept. 4, 2018)............... 5, 7

*Stack v. Boyle*, 342 U.S. 1 (1951) .................................................................................................. 6

*Tate v. Short*, 401 U.S. 395 (1971) ............................................................................................... 7

*United States v. Salerno*, 481 U.S. 739 (1987) ................................................................ 5, 6, 14

*Van Atta v. Scott*, 27 Cal.3d 424 (1980) ....................................................................................... 2

*Washington v. Glucksberg*, 521 U.S. 702 (1997) .......................................................................... 5

*Williams v. Illinois*, 399 U.S. 235 (1970) ..................................................................................... 7

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ...................................................................................... 5

## Statutes

18 U.S.C. § 3141................................................................................................................................. 19

18 U.S.C. § 3142................................................................................................................................. 19

Cal. Penal Code § 646.93................................................................................................................. 20

Cal. Penal Code § 1269b............................................................................................................. passim

Cal. Penal Code § 1305.................................................................................................................... 15

Cal. Penal Code §1306...................................................................................................................... 16

N.J. Stat. § 2A:162-17...................................................................................................................... 20

## <u>Other Authorities</u>

Andrew D. Liepold, *How the Pretrial Process Contributes to Wrongful Convictions*, 42 Am. Crim. L. Rev. 1123 (2005) ................................................................................. 12

Megan Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes*, 34 J. L. Econ. & Org. 511 (2018) ..................................................................... 13

Michael Jones, *Unsecured Bonds: The Most Effective and Efficient Pretrial Release Option*, Pretrial Justice Institute (2013) ................................................................... 18, 20

teven D. Bell, *The Long Shadow: Decreasing Barriers to Employment, Housing, and Civic Participation for People with Criminal Records Will Improve Public Safety and Strengthen the Economy*, 42 W. St. L. Rev. 1 (2014) ........................................................ 3

Will Dobbie *et al.*, *The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, Nat'l Bur. Of Econ. Research, Working Paper No. 22511 (2017) .................................................................... 13

**Notice of Motion and Motion**

TO DEFENDANTS BONTA AND JONES AND THEIR COUNSEL OF RECORD:

TAKE NOTICE THAT on May 5, 2022, at 2:00 p.m., or as soon as this motion may be heard, in courtroom 2, 15th floor, in the United States District Court for the Eastern District of California, Sacramento Division, 501 I Street, Sacramento, California, Plaintiff Gary Welchen will move for partial summary judgment as to Defendants' liability. This motion is based on the following memorandum of points and authorities.

**Memorandum of Points and Authorities**

## I.      INTRODUCTION

The Sheriff of Sacramento County, Defendant Jones, and the Attorney General of California, Defendant Bonta, oversee a bail system that puts a price tag on freedom. Pursuant to California's statutory bail scheme, those arrested without bail set in a warrant or by a judge have their bail set by Defendants "at the amount dictated in a 'uniform countywide schedule of bail.'" *Buffin v. California*, 2022 WL 121142, at *2 (9th Cir. Jan. 13, 2022) (citing Cal. Penal Code § 1269b(b)).  The bail schedule sets dollar amounts by reference solely to criminal charges, without allowing Defendants to modify the amount by making an individualized determination as to the arrestee's ability to pay, risk of nonappearance, or threat to public safety before trial.  *Buffin v. City & Cty. of San Francisco*, 2019 WL 1017537, at *4 (N.D. Cal. Mar. 4, 2019) (hereinafter "*Buffin*"); *see also id.* § 1269b(a)–(c).  The California Supreme Court recently ruled that "[a]n arrestee may not be held in custody pending trial unless the court has made an *individualized* determination" as to either willful nonpayment of an amount reasonably necessary to protect compelling government interests, or else the pretrial detention's clear and convincing necessity.  *In re Humphrey*, 11 Cal. 5th 135, 156 (2021) (emphasis added).  While not specifically about *pre-arraignment* bail, *In re Humphrey*'s holding regarding bail practices in California reinforces the

unconstitutionality of the bail schedule as applied by Defendants in Sacramento County.

Plaintiff Gary Welchen was arrested by Sacramento police on January 29, 2016, for suspicion of second-degree burglary of an uninhabited dwelling.  Doc. 1-3 at ¶ 2.  Upon being taken to jail and booked, Plaintiff was assigned bail of $10,000 pursuant to the Sacramento bail schedule.  *Id.* at ¶ 3.  If Plaintiff Welchen could have afforded to pay the $10,000 bail set for him, he would have been released immediately.  *Id.* at ¶¶ 3, 5.  Because he was indigent and could not pay, Plaintiff Welchen remained in the custody of the Sheriff for six days.  *Id*. at ¶¶ 4–5; 58 at ¶ 33.

While stuck in jail for hours or days, individuals may lose their jobs and housing, struggle to assist in their criminal defense, suffer involuntary separation from family and friends, and suffer mental and physical anguish — all of which undermine public safety.[1]  *See Humphrey*, 11 Cal. 5th 135, 147, 482 P.3d 1008, 1015 (2021) (outlining numerous harms of pretrial detention) (citing *Van Atta v. Scott*, 27 Cal.3d 424, 435-436 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 123 (1975); *Barker v. Wingo*, 407 U.S. 514, 532-533 (1972)).  Not only does the bail schedule, as applied by Defendants, fail to serve the government's interests in ensuring appearance and protecting public safety, it also causes these various, irreparable forms of harm.

No existing dispute of material fact precludes partial summary judgment as to liability on the merits in this case.  Defendants cannot reasonably dispute that, pursuant to California's bail statute, county sheriffs set bail for arrestees prior to their arraignment by reference to a uniform bail schedule, without making any individualized determinations as to an arrestee's ability to pay,

---

[1] Unemployment and homelessness are "significant causes of recidivism; people who are employed and have stable housing are significantly less likely to be re-arrested."  Steven D. Bell, *The Long Shadow: Decreasing Barriers to Employment, Housing, and Civic Participation for People with Criminal Records Will Improve Public Safety and Strengthen the Economy*, 42 W. St. L. Rev. 1, 12–13 (2014).

risk of nonappearance, or threat to public safety. *Buffin* at \*4; *see also* Cal. Penal Code § 1269b (a)–(c). Those who can pay bail as set by Defendants are released, while those who cannot pay must remain in jail until at least the time of their arraignment. In this way, Defendants' implementation of pre-arraignment bail violates the Fourteenth Amendment.

At this late stage of the litigation, the Court should grant summary adjudication to Plaintiff Welchen as to Defendants' liability on his constitutional claims. After that, Plaintiff stands ready to work with the other parties and the Court to fashion appropriate relief. This approach is especially vital because the role of this Court — like the role of the Northern District of California, *see Buffin* at \*24 — stands to ensure that individual liberties are protected.

## II.    PROCEDURAL HISTORY

Plaintiff Gary Welchen filed this putative class action complaint on January 29, 2016. Doc. 1. Plaintiff Welchen filed an amended complaint that remains operative on November 9, 2016. Doc. 31. After initial motions practice, this Court ruled on Defendants' separate motions to dismiss on October 26, 2018. Doc. 42. That order determined that the Sheriff was a state actor for purposes of implementing the bail law and dismissed Plaintiff's money damages claim, Doc. 42 at 13; allowed Plaintiff's claim for declaratory and injunctive relief against the Sheriff to proceed, *id.*; dismissed claims against the County of Sacramento for the same reasons, *id.* at 14; and allowed Plaintiff's claim against the Attorney General to proceed, *id.* at 17. After that, the Court substantially extended deadlines pending the outcome of *Buffin v. City & Cty. of San Francisco*, *see, e.g.*, Docs. 45, 48, & 50. Upon the Northern District granting summary judgment to Plaintiffs in *Buffin* on March 4, 2019, proceedings re-started. Defendants filed separate answers on May 15, 2019, and August 7, 2019, Docs. 54 and 58, and discovery commenced.

During the series of extensions, the Northern District of California, as noted, decided a substantially similar case at summary judgment. That case, which the parties here described as

providing "additional information that may inform their upcoming filings," *e.g.* Doc. 49 (Third Joint Motion to Extend Deadlines), granted summary judgment to the plaintiff class on the same constitutional claims pending in this case.  The Court in *Buffin* granted the plaintiff's motion for summary judgment on the following grounds: it re-affirmed a prior order that it would assess Cal. Penal Code § 1269b under strict scrutiny because individual liberty stands as a fundamental right, *see Buffin* at *7, held that people being detained because they could not pay the amount provided by the bail schedule amounted to a "significant deprivation" of that right, *id.* at *16–18, and held that Plaintiffs had identified plausible alternatives to the bail schedule that were less restrictive and at least as effective at serving the government's compelling interests in public safety and future court appearance, *id.* at *21–23.

## III.   ARGUMENT

This Court should grant partial summary judgment as to liability for three reasons: (A) the bail schedule deprives Plaintiff of the fundamental right of pretrial freedom, so heightened scrutiny applies, (B) the bail schedule fails strict scrutiny because it is not tailored to any of the governmental interests, and (C) the bail schedule's deprivation of liberty is excessive due to its lack of any individualized assessment.

### A.    The Bail Schedule Deprives Plaintiff of a Substantive Due Process Interest in Pretrial Liberty, There Triggering Strict Scrutiny

Defendants' implementation of the bail schedule deprives Plaintiff of a substantive due process interest.  Plaintiff, like any arrestee, has a liberty interest in pretrial freedom.  *See, e.g.*, *Lee v. City of L.A.*, 250 F.3d 668, 683 (9th Cir. 2001) ("The Supreme Court has recognized that an individual has a liberty interest in being free from incarceration absent a criminal conviction."). Strict scrutiny is the appropriate framework in this case because (i) the right to pretrial liberty is fundamental under the Fourteenth Amendment, and (ii) Defendants' use of the bail schedule

deprives Plaintiff of that liberty interest by conditioning pre-arraignment freedom on the payment of a bail amount he cannot afford.

> ### i. Pretrial Liberty Is a Fundamental Right Under the Fourteenth Amendment Subject to Strict Scrutiny

Liberty is a fundamental right under the Fourteenth Amendment. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that the Due Process Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Plaintiff, assigned a bail amount after having been arrested on charges of which he was presumptively innocent, had an "especially strong" liberty interest at that stage. *United States v. Salerno*, 481 U.S. 739, 750 (1987). Detaining individuals pretrial imposes a deprivation of liberty that violates the Fourteenth Amendment if the detention results from an individual's inability to pay a bail or bond. *See Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017) (referring to the same interest of non-punished civil detainees); *see also Schultz v. Alabama*, No. 5:17-cv-270, 2018 WL 4219541, at *9 (N.D. Ala. Sept. 4, 2018); *Caliste v. Cantrell*, No. 17-6197, 2018 WL 3727768, at *8 and *10 (E.D. La. Aug. 6, 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019); *ODonnell v. Harris Cnty.*, 251 F. Supp. 3d 1052, 1088 (S.D. Texas 2017), *aff'd as modified*, 882 F.3d 528 (5th Cir. 2018), *and aff'd as modified sub nom.*, 892 F.3d 147 (5th Cir. 2018).

Plaintiff argues that the bail schedule is unconstitutional under both strict scrutiny analysis and the *Bell* excessiveness analysis. Courts have applied strict scrutiny to government deprivations of fundamental liberty interests. *See, e.g., Washington v. Glucksberg*, 521 U.S. 702, 719–20 (1997) (due process clause "provides heightened protection against government interference with certain fundamental rights and liberty interests" such as freedom from detention). Importantly, this Court has previously held that heightened scrutiny applies to the law that the Attorney General enforces and that requires the Sheriff to use the bail schedule. Doc. 42 at 14; Doc. 30 at 17.

Holding that heightened scrutiny applied, this Court weighed the Defendants' motion to dismiss according to the two-part framework set out in *Bell v. Wolfish*, 441 U.S. 520 (1979).  Doc. 30 at 17 (citing *Bell*, 441 U.S. at 538-39).  In *Lopez-Valenzuela v. Arpaio*, the Ninth Circuit considered a substantive due process challenge to state laws infringing on pretrial liberty, striking down the challenged laws as unconstitutional by applying a framework closely following traditional strict scrutiny analysis, 770 F.3d 772, 781–89 (9th Cir. 2014), and holding that these laws would "satisfy substantive due process only if they [we]re 'narrowly tailored to serve a compelling state interest.'" *Id.* at 781 (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)); *See also Buffin* at *7 (striking down the San Francisco County sheriff's pre-arraignment use of a uniform bail schedule by applying strict scrutiny review to plaintiffs' Due Process and Equal Protection claims).  The *Lopez-Valenzuela* court also held that the challenged laws were "excessive in relation to the state's legitimate interest in assuring arrestees' presence for trial," and thus unconstitutional, following *Bell*. *Id.* at 791–92.  The Supreme Court has applied heightened scrutiny in pretrial detention cases involving excessive bail, *see Stack v. Boyle*, 342 U.S. 1, 4–5 (1951); punitive conditions of confinement, *see Bell*, 441 U.S. at 535–37; and restrictions on adult arrestees, *see Salerno*, 481 U.S. at 748.  Further, the Ninth Circuit has affirmed the appropriateness of strict scrutiny when liberty interests are at stake in the context of release from civil detention conditioned on affording a bond.  *Hernandez*, 872 F.3d at 790.

This unbroken line of precedent confirms that pretrial liberty is a fundamental right under the Fourteenth Amendment, and strict scrutiny applies to any deprivation of liberty prior to trial.

### ii.   Defendants' Use of the Bail Schedule Unambiguously Deprives Plaintiffs of that Liberty Interest and Imposes Other Harms

Defendants' implementation of the bail schedule, and the bail schedule's inherent design, unambiguously deprives Plaintiff, who could not post his bail amount, of pretrial liberty.

Defendants cannot dispute that some arrestees remain confined until at least the time of their arraignment as a consequence of their inability to pay the bail set for them according to the schedule.  *Buffin* at *4; *see also* Cal. Penal Code § 1269b(a)–(c).  That detention amounts to a deprivation of pretrial liberty, as even brief periods of incarceration exert lasting effects on individuals' lives and rise to the level of constitutional harm.  *Buffin* at *18 (citing Att. A, Pretrial Detention Reform Workgroup, Pretrial Detention Reform: Recommendations to the Chief Justice [October 2017], 25 [hereinafter "Workgroup Report"]).

Detaining people solely because they cannot afford to pay a bail, bond, fee, or other monetary amount violates the constitution.  The Supreme Court, like the California Supreme Court and the Northern District of California, has repeatedly categorized detention on the basis of inability to pay as a deprivation of the fundamental liberty interest at issue here.  *See Bearden v. Georgia*, 461 U.S. 660, 673 (1983) (holding that detaining someone solely because of an inability to pay violates fundamental fairness); *Williams v. Illinois*, 399 U.S. 235, 240–41 (1970) (rejecting incarceration of someone who cannot pay a fine); *Tate v. Short*, 401 U.S. 395, 397–98 (1971) (barring substitution of jail term for unpaid fine); *In re Antazo*, 3 Cal.3d 100, 103–04 (1970) (same); *Charles S. v. Superior Court*, 32 Cal.3d 741, 749–51 (1982) (concluding that probation for juvenile defendants may not be denied based on inability to pay restitution); *Buffin* at *24 (holding unconstitutional the detention of pre-trial arrestees pursuant to bail schedule without an individualized assessment of ability to pay).  The Attorney General recognizes this case law.  Att. B, Request for Admission 2(d); Att. C, Brief of Defendant Bonta in *In re Humphrey*, 11 Cal. 5th 135, Oct. 9, 2018 (hereinafter "Humphrey Brief"), pg. 10–11.

Other courts have applied the same principles to strike down bail regimes that detained individuals because they could not afford bail or bond as a condition of release.  *Schultz*, 2018 SL

4219541, at *1 (enjoining bail schedule requiring posting property or surety bond as condition of pretrial release); *Caliste*, 2018 WL 3727768, at *1 and *6 (holding that setting bail without considering alternatives to release or ability to pay deprived arrestees who could not afford to pay bonds of their liberty); *ODonnell*, 892 F.3d at 163 (holding that indigent arrestees having longer pretrial detention periods than others who could post bail violates equal protection). *Hernandez* is illustrative as well; there, the Ninth Circuit held that the government violated plaintiffs' due process fundamental liberty interest by failing to provide individualized review before holding plaintiffs in detention while their immigration cases resolved, pursuant to bonds plaintiffs could not pay. *Hernandez*, 872 F.3d at 990. The Ninth Circuit found this pretrial detention scheme to not even satisfy rational basis, holding that a "bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interest." *Id*. at 991.

The bail schedule here causes the exact same deprivation of liberty as in the previously cited cases. As noted, Plaintiff Welchen was detained pretrial pursuant to the bail schedule for six days because he could not afford the amount assigned. Doc. 1-3 at ¶¶ 4–5; 58 at ¶ 33. If he had been able to afford the bail amount set by the schedule, Defendants simply would have let him go free. Instead, because he could not pay, they held him in pretrial detention.

Individuals detained pretrial suffer several significant harms because of that deprivation. Each jailing involves "crowded, unsanitary, and dangerous living conditions." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 333 (2012) (acknowledging standard jail conditions). Individuals detained pretrial are at a significant disadvantage in participating in their own defense. *See Barker v. Wingo*, 407 U.S. 513, 532–33 (1972) (describing burden of pretrial detention, including how an arrestee "is hindered in his ability to gather evidence, contact

witnesses, or otherwise prepare his defense"); *see also Gerstein*, 420 U.S. at 123 (noting the effect of pretrial detention on an arrestee's ability to prepare his own defense).  Arrestees detained before trial, as compared to those released before trial, are more likely to be convicted (including being wrongfully convicted), have longer sentences, and be assessed  higher court fees.  *See* Andrew D. Liepold, *How the Pretrial Process Contributes to Wrongful Convictions*, 42 Am. Crim. L. Rev. 1123, 1165 (2005); Megan Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes*, 34 J. L. Econ. & Org. 511, 512–13, 534–35 (2018).  Pretrial detention also creates strong incentives to plead quickly, regardless of actual guilt.  *See* Att. D, Will Dobbie *et al.*, *The Effects of Pre-Trial Detention on Conviction, Future Crime, and Employment: Evidence from Randomly Assigned Judges*, Nat'l Bur. Of Econ. Research, Working Paper No. 22511 (2017). Beyond the criminal process, pretrial detention causes massive disruption to the lives of pretrial detainees and their families.  Pretrial arrestees may lose housing, public benefits, custody of their children, or incur significant long-term debt due to even short periods of detention.  *Buffin* at \*18; *see also* Att. A, Workgroup Report at 13–14.

The bail schedule deprives the fundamental right of pretrial liberty, so it must be strictly scrutinized to pass constitutional muster.

### B.    Defendants' Deprivation of Plaintiff's Liberty Does Not Serve Compelling Government Interests, and Therefore Fails Strict Scrutiny

Defendants' deprivation of pretrial liberty by their implementation of the bail schedule violates the constitution because it is not narrowly tailored to serve compelling government interests.  The bail schedule fails strict scrutiny for four reasons: (i) Defendants' bail scheme does not serve the government's interest in protecting public safety because it makes no individualized assessment of risk, so people who pose a greater risk to the community are allowed to buy their freedom while people who pose less risk are confined for lack of money, (ii) the bail schedule does

not serve the government's interest in ensuring future appearance because the amounts on the bail schedule have no causal or rational relationship to future appearance, (iii) the bail schedule does not serve the government's interest in protecting individual constitutional rights because it unnecessarily deprives pretrial liberty, and (iv) plausible and less restrictive alternatives would better serve all of the government's interests.

### i. The Bail Schedule Does Not Serve the Government's Interest in Protecting Public Safety

The bail schedule does not satisfy strict scrutiny because it is not narrowly tailored to serve a compelling government interest. With regard to public safety, it does not serve the government's interest in protecting the public *at all*. Bail laws, such as at issue in this case, that "employ[] a profoundly overbroad irrebuttable presumption, rather than an individualized evaluation" categorically deny bail to people who do not pose a risk of safety. *Lopez-Valenzuela*, 770 F.3d at 791. Here, the bail schedule does not serve public safety and presents simultaneous problems of over-inclusion and under-inclusion. On one side, the bail schedule confines many people who may not pose any risk simply because they cannot afford to post the amount assigned by the schedule without regard to their ability to pay. *Buffin* at *4; *see also* Cal. Penal Code § 1269b(a)–(c). By assigning an individual a bail amount set by the current bail schedule, Defendants signal that they would willingly let that person go free dependent only on whether the person pays the amount assigned, without regard to the governmental interests in ensuring public safety. As to the issue of under-inclusion, the bail schedule allows others who might pose a greater risk to go free simply because they can afford to pay a high bail amount. A person with means charged with armed robbery can go free while an indigent person charged with drug possession remains caged. *See* Att. B, Request for Admission 2(b); Att. C, Humphrey Brief at 10–11. As a result, the bail schedule irrationally offers individuals who might pose a high risk to buy their freedom and denies

individuals who might pose a very low risk the right to go free simply because they do not have the money to post bail.  Not only does the bail schedule irrationally condition release on ability to pay, but the bail schedule also irrationally fails to consider any risk to public safety posed by an individual arrestee.

Additionally, the bail schedule does not serve the government's interest in public safety because it does not actually deter subsequent arrestable offenses.  Those able to buy their freedom, do not automatically forfeit their bail if they are later arrested while still on pretrial release in their original matter.  *See id.* § 1269b(h) (referring to *id.* §§ 1305 and 1306 to govern forfeiture of bond); *id.* §§ 1305 & 1306 (providing for forfeiture only in the event of nonappearance).  Put another way, "current state statutory law makes monetary bail forfeitable . . . not based on the commission of a new offense of other breach of public safety."  Att. B, Request for Admission 2(g); Att. C, Humphrey Brief at 14 (internal citation omitted).  "Given that limitation, the *Attorney General agrees with the parties that the amount of any money bail currently bears no rational relationship to protecting public safety*."  *Id.* (emphasis added).

ii.     **The Bail Schedule Does Not Serve Defendants' Interest in Ensuring Arrestees Appear for Court Proceedings**

The bail schedule similarly does not serve the government's second legitimate interest, ensuring future appearance.  As with protecting public safety, a bail regime that forsakes individualized evaluations of arrestees in favor of an overbroad, irrebuttable presumption of pretrial detention "results in a deprivation of liberty even where not necessary to ensure appearance at trial."  *Lopez-Valenzuela*, 770 F.3d at 791.

First, the bail schedule involves the same over- and under-inclusion problem in the context of appearance as it does in the context of public safety.  Defendants' bail schedule is overinclusive because it sets bail amounts based on the charged offenses, without any individualized

determination as to an arrestee's nonappearance risk. *Buffin* at *4; *see also* Cal. Penal Code § 1269b(a)–(c). As a result, Defendants' enforcement of the bail schedule inevitably leads to the detention of some individuals who pose little to no nonappearance risk but who simply cannot afford the bail set for them. The bail schedule is also underinclusive in that it allows others who might pose a substantially greater flight risk to go free simply because they can afford to pay a high bail amount. *Id.* The bail schedule only considers the offense charged; it does not permit Defendants' consideration of the many factors that might impact nonappearance — factors such as family and community ties, housing stability, desire or ability to vindicate one's rights at trial, or many others. *See Buffin* at *19. Ironically, those with the means to afford bail may be *more* likely to not appear for court because they have the means to leave the jurisdiction, *e.g.*, by having multiple passports, access to private planes, etc.

Second, Defendants cannot and do not dispute that the amounts of bail set on the bail schedule for particular offenses does *not* bear *any* relationship to the rates of reappearance of people arrested for those offenses and released on bail. Att. B, Request for Admission 5. Defendant Bonta does not even track such information. Att. B, Request for Admission 4. Without any reason to believe that the different amounts on the bail schedule reflect even a generalized attempt to manage rates of reappearance by offense, Defendants cannot suggest that the bail schedule bears even a rational relationship to the government's interest in ensuring reappearance.

### iii. The Bail Schedule Does Not Serve Defendants' Interest in Protecting Individual Constitutional Rights

The bail schedule undermines, rather than promotes, Defendants' interest in protecting individual constitutional rights because it violates individual constitutional rights by depriving many pretrial arrestees of their liberty without due process of law. Although the government may focus more on protecting safety and ensuring future appearance as the interests in play, *see* Att. C,

Humphrey Brief at 28, the government also has a compelling interest in protecting the individual constitutional rights of its citizens. *C.f. Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (finding the prevention of constitutional violations is "always in the public interest."); *Phelps-Roper v. Nixon*, 545 F.3d 685, 694 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678, 692 (8th Cir. 2012) ("[T]he public is served by the preservation of constitutional rights"); *American Life League, Inc. v. Reno*, 47 F.3d 642 (4th Cir. 1995) (recognizing government interest in not violating the First Amendment), *see also, e.g.*, Att. E, Michael Jones, *Unsecured Bonds: The Most Effective and Efficient Pretrial Release Option*, Pretrial Justice Institute (2013) (hereinafter "Jones Report").  To the extent that the bail schedule results in pretrial detention for many people simply because they cannot afford to post bail, the schedule expressly contravenes the government's interest in ensuring that "the availability of personal freedom should not turn solely on a defendants' ability to pay a particular amount."  Att. B, Request for Admission 2(f); Att. C, Humphrey Brief at 14.

### iv.   Plausible and Less Restrictive Alternatives Would Better Serve the Governments' Interests

Defendants' implementation of the bail schedule also fails because other available alternatives serve those same interests at least as well (if not better) without burdening constitutional rights as thoroughly.  Under strict scrutiny, the existence of available alternatives that pose fewer restrictions to a fundamental constitutional right dooms a law to fail.  *See Reno v. ACLU*, 521 U.S. 844, 874 (1997).  Plaintiffs who demonstrate plausible, less restrictive alternatives to a constitutionally infringing policy — here, the bail schedule — have carried their burden.  *See Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).

Perhaps most thoroughly, the Northern District of California, when examining the same law challenged here, held that less restrictive alternatives exist.  In *Buffin*, the court found that a

computerized risk assessment was a plausible less restrictive alternative. *Buffin* at \*32–39. The court also noted that a similarly less restrictive alternative had been adopted by the state legislature. *Id.* Importantly, the alternative need only be plausible (not actual), so the exact same reasoning from *Buffin* applies in full force here.

Plausible and less constitutionally restrictive alternatives to Defendants' bail regime have been adopted in other jurisdictions. Federal courts utilize the Bail Reform Act of 1984, which "allows a federal court to detain an arrestee pending trial [only] if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure . . . the safety of any other person and the community.'" *Salerno*, 481 U.S. at 741 (quoting The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*). That act specifies that the law "may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c), (e)–(g). Alternative conditions of release used by other jurisdictions include electronic monitoring, supervision by pretrial agencies, community housing or shelter, stay-away orders, and drug and alcohol testing and treatment. *See In re Humphrey*, 11 Cal. 5th at 154.[2] Scholarly research shows unsecured personal recognizance bonds (no bail) work at least as well, and often better, than secured money bail at promoting both court appearances and public safety. Att. E, Jones Report at 10–11. These alternatives also include the additional advantage of increasing individual pretrial liberty and freeing up jail beds. *Id.* at 14. Another suitable alternative available is the relief granted to the Plaintiffs in *Buffin v. San Francisco*, No. 4:15-cv-4959, Doc. 372 (N.D. Cal. Sept. 3, 2019). The reforms in *Buffin* included ensuring that eligible arrestees be released within 18 hours or be subject to an individualized finding that they pose a risk of

---

[2] For examples of statutory outlines of release conditions other than bail, *see, e.g.*, Cal. Penal Code § 646.93(c); N.J. Stat. § 2A:162-17. For further exploration of alternative conditions, *see* Att. A, Workgroup Report at 51-53.

nonappearance or a threat to public safety, which they can subsequently dispute.  *Id.* at 2–3.

Further bolstering the argument for alternatives, Defendants themselves engage in or argue for such alternatives in other contexts, because these alternatives have proven successful and because "the Attorney General agree[s], there is a strong presumption in favor of release, in all cases, on the least restrictive conditions reasonably available to the trial court . . ."  Att. B, Request for Admission 2(h); Att. C, Humphrey Brief at 28.

### C.    The Bail Schedule Is Also Unconstitutional Because It Is Excessive Due to Its Lack of Any Individualized Assessment

In addition to failing strict scrutiny, the Defendants' bail schedule is excessive in relation to its purpose, and it therefore violates the Due Process clause for this reason as well.  As discussed *supra*, section III.A.i., this Court previously held that heightened scrutiny applies to the bail law that Defendants enforce.  Doc. 42 at 14; Doc. 30 at 17.  Following the court in *Lopez-Valenzuela,* 770 F.3d at 781–89, the bail law is therefore weighed according to the two-part framework set out in *Bell*.  Doc. 30 at 17 (citing *Bell*, 441 U.S. at 538–39).  *Bell* held that, under the Due Process clause, pretrial detainees may not be subjected to punishment, which a detainee may establish by showing that restrictions on liberty have been imposed for a punitive purpose and/or are excessive in relation to a legitimate regulatory purpose.  Doc. 30, at 17 (citing *Bell*, 441 U.S. at 538–39). Relevant to this context, the Ninth Circuit has followed *Bell* to strike down bail laws that serve legitimate government interests and that are not punitive, but that are excessive in relation to those legitimate purposes.  *See Lopez-Valenzuela*, 770 F.3d at 782.  Noting that the law at issue was not a "carefully limited exception to the general rule of substantive due process that the government may not detain a person prior to a judgment of guilt in a criminal trial," the *Lopez-Valenzuela* court held the lack of individualized consideration made categorical pretrial detention excessive in relation to the government's interest in ensuring reappearance for future proceedings.  *Id*. at 782.

This case presents a similar situation in which the bail schedule is excessive because of its total lack of individual assessment.  As noted earlier, the bail schedule results in pre-arraignment detention of arrestees without any individualized determinations with respect to the government's interests: ensuring an arrestee's appearance, protecting public safety, and protecting individual constitutional rights.  *See* sections III.B.i–iii, *supra*; *see also Buffin* at *4.  First, the bail schedule does not serve Defendants' interest in protecting public safety because it presents an over- and under-inclusiveness problem — those who are rich and dangerous go free while those who are poor and safe stay jailed — and because bail is not forfeited upon commission of a second crime while out on bail for a first charge.  *See* section B. i., *supra*.  Second, the bail schedule does not serve Defendants' interests in ensuring reappearance because of the same over- and under-inclusiveness problem — those who are rich and flight-risks go free while those who are poor and likely to appear stay jailed — and because Defendants have no reason to believe that reappearance rates correlate with bail amounts.  *See* section B. ii., *supra*.  Third, the bail schedule does not serve Defendants' interest in protecting individual constitutional rights because it results in the pretrial detention of many people who would go free if only they could afford bail.  *See* section III.B.iii., *supra*.  And as in *Lopez-Valenzuela*, the bail schedule does not address a "particularly acute problem" of nonappearance or threats to public safety posed by people released on bail, is not limited to "a specific category of extremely serious offenses," and most crucially, does not require any individualized consideration at all.  *Lopez-Valenzuela*, 770 F.3d at 783–85.  Assuming, arguendo, that nonappearance and threats to public safety do, in fact, pose a particularly acute problem, the lack of "an individualized evaluation[] to determine whether an arrestee is an unmanageable flight risk . . . necessarily results in the deprivation of liberty even where not necessary to ensure appearance at trial . . . ."  *Id*. at 791.  The bail schedule, lacking individualized

determinations, is therefore excessive in relation to its regulatory purpose, and thus violates the Due Process clause.

## IV.  CONCLUSION

For all of the foregoing reasons, the bail schedule deprives Plaintiff of a fundamental liberty interest without due process of law.   Accordingly, this Court should enter partial summary judgment for Plaintiff as to liability, declare the use of the bail schedule unconstitutional, and order the parties to meet and confer to fashion appropriate injunctive relief.

Respectfully submitted,

By: _/s/ Phil Telfeyan_____

Phil Telfeyan
Equal Justice Under Law
400 7th St. NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org
_Attorney for Plaintiff_

DATE: January 14, 2022

**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GARY WAYNE WELCHEN, *et al.*, | ) |
| | ) |
| Plaintiffs, | )   2:16-cv-185-TLN-DB |
| | ) |
| v. | ) |
| | ) |
| ROB BONTA, IN HIS OFFICIAL | ) |
| CAPACITY AS THE ATTORNEY | ) |
| GENERAL OF CALIFORNIA, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2022, a true and correct copy Plaintiff's Notice of Motion, Motion, and Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment was served on all counsel of record via the electronic court filing system.

*/s/ Phil Telfeyan*
Phil Telfeyan
Equal Justice Under Law
400 7th Street NW, Suite 602
Washington, D.C. 20004
(202) 505-2058
ptelfeyan@equaljusticeunderlaw.org

DATE:  January 14, 2022