1  ROB BONTA, State Bar No. 202668
   Attorney General of California
2  MARK BECKINGTON, State Bar No. 126009
   Supervising Deputy Attorney General
3  JOSE A. ZELIDON-ZEPEDA, State Bar No. 227108
   Deputy Attorney General
4    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
5    Telephone:  (415) 510-3879
     Fax:  (415) 703-1234
6    E-mail:  Jose.ZelidonZepeda@doj.ca.gov
   *Attorneys for Defendant Rob Bonta, in his official*
7  *capacity as Attorney General of California*

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10                    SACRAMENTO DIVISION

11

12
   | | |
   |---|---|
   **GARY WAYNE WELCHEN,**

13                                          2:16-cv-00185-TLN-DB

14                          Plaintiff,

15           v.                            **DEFENDANT ROB BONTA'S**
                                           **OPPOSITION TO PLAINTIFF'S**
16                                         **MOTION FOR PARTIAL SUMMARY**
   **ROB BONTA, Attorney General, et al,**   **JUDGMENT**

17                          Defendants.    Date:        June 16, 2022
                                           Time:        2:00 p.m.
18                                         Dept:        Courtroom 2, 15th Floor
                                           Judge:       The Honorable Troy L. Nunley
19                                         Trial Date:  Not set
20                                         Action Filed: January 29, 2016

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Factual Background .............................................................................................. 2

    I.      Plaintiff's Allegations and Procedural History. ................................... 2

          A.    In 2016, this Court Dismissed Plaintiff's Complaint and Denied Class Certification. ..................................................................... 2

          B.    In 2018, the Court Dismissed Plaintiff's Operative Amended Complaint in Part, With Plaintiff's Substantive Due Process Claim Remaining. ........................................................................... 3

    II.     Plaintiff's Motion for Partial Summary Judgment. ............................... 4

    III.    Relevant Statutory Background for The Challenged Bail Procedures. ................. 5

Legal Standard ...................................................................................................... 6

Argument .............................................................................................................. 6

    I.      Plaintiff's Due Process Claim Is Moot Because He Was Released From Detention and Thus He Is No Longer Subject to the Challenged Bail Procedures. ........................................................................................... 6

    II.     The Attorney General Has No Role Under State Law in Implementing the Challenged Bail Procedures. .............................................................. 9

    III.    *In re Humphrey* Is Strongly Persuasive Authority that the Bail Schedule Presents Significant Constitutional Concerns. ..................................... 12

Conclusion........................................................................................................... 15

i

1

**TABLE OF AUTHORITIES**

2
**Page**

3

4  CASES

5  *Allen v. Wright*
6      468 U.S. 737 (1984)............................................................................7

7  *Association des Eleveurs de Canards et D'Oies du Quebec v. Harris*
       729 F.3d 937 (9th Cir. 2013) ...........................................................10
8
9  *Bd. of Trs. of the Univ. of Ala. v. Garrett*
       531 U.S. 356 (2001)..........................................................................10

10  *Bolbol v. Brown*
        No. 14-cv-03679-RMW, 2015 WL 4880916 (N.D. Cal. Aug. 14, 2015)............................12
11

12  *Buffin v. California*
        23 F.4th 951 (9th Cir. 2022)..................................................5, 10, 11, 15
13
14  *Buffin v. City & Cty. of San Francisco*
        2019 WL 1017537 (N.D. Cal. 2019) ..................................4, 11, 12, 15

15  *Cady v. Anthem Blue Cross Life & Health Ins. Co.*
        583 F. Supp. 2d 1102 (N.D. Cal. 2008) ...............................................9
16

17  *Celotex Corp. v. Catrett*
        477 U.S. 317 (1986)............................................................................6
18
19  *City of Erie v. Pap's A.M.*
        529 U.S. 277 (2000)............................................................................7

20  *City of L.A. v. Lyons*
        461 U.S. 95 (1983).............................................................................8
21

22  *Coal. to Defend Affirmative Action v. Brown*
        674 F.3d 1128 (9th Cir. 2012) ....................................................10, 12
23
24  *Collins v. Daniels*
        916 F.3d 1302 (10th Cir. 2019) .........................................................8

25  *Forest Guardians v. Johanns*
        450 F.3d 455 (9th Cir. 2006)..............................................................8
26

27  *Galen v. Cty. of Los Angeles*
        477 F.3d 652 (9th Cir. 2007)......................................................5, 14
28
ii

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*Hollingsworth v. Perry*
    570 U.S. 693 (2013)...........................................................................................7

4

5

*In re Humphrey*
    11 Cal.5th 135 (Cal. 2021) ...................................................................... *passim*

6

*In re Underwood*
    9 Cal.3d 345 (Cal. 1973) ................................................................................. 14

7

8

*L.A. Cty. Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992) ..................................................................... 10, 12

9

10

*Lee v. Oregon*
    107 F.3d 1382 (9th Cir. 1997) ..........................................................................9

11

*Lee v. State of Or.*
    891 F. Supp. 1421 (D. Or. 1995) .................................................................... 12

12

13

*Lopez-Valenzuela v. Arpaio*
    770 F.3d 772 (9th Cir. 2014 ) (en banc).......................................................... 14

14

15

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992)........................................................................................ 7, 8

16

*McQuillion v. Schwarzenegger*
    369 F.3d 1091 (9th Cir. 2004) ..........................................................................8

17

18

*Meland v. Weber*
    2 F.4th 838 (9th Cir. 2021).................................................................................7

19

*ODonnell v. Harris Cty.*
    892 F.3d 147 (5th Cir. 2018) ........................................................................... 14

20

21

*Planned Parenthood of Idaho v. Wasden*
    376 F.3d 908 (9th Cir. 2004) ........................................................................... 11

22

23

*Porter v. Jones*
    319 F.3d 483 (9th Cir. 2003) ........................................................................... 10

24

*S.B. by and through Kristina B. v. Cal. Dep't of Educ.*
    327 F. Supp. 3d 1218 (E.D. Cal. 2018)............................................................ 11

25

26

*Sanford v. MemberWorks, Inc.*
    625 F.3d 550 (9th Cir. 2010)..............................................................................7

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Shalaby v. State of Cal.*
No. C-03-01922-CRB, 2003 WL 21556930 (N.D. Cal. July 3, 2003) .................................. 10

*U.S. v. Gardner*
523 F. Supp. 2d 1025 (N.D. Cal. 2007) ...................................................................... 14

*Walker v. City of Calhoun*
901 F.3d 1245 (11th Cir. 2018) ............................................................................... 14

*Warth v. Seldin*
422 U.S. 490 (1975) ................................................................................................... 7

*West v. Sec'y of Dep't of Transp.*
206 F.3d 920 (9th Cir. 2020) ..................................................................................... 7

*Ex parte Young*
209 U.S. 123 (1908) ......................................................................................... *passim*

**STATUTES**

Bail Law ............................................................................................................ *passim*

California Government Code
§ 12550 ................................................................................................................ 2, 11

California Penal Code
§ 1269b ........................................................................................................... 2, 5, 10
§ 1269b(a) .................................................................................................................. 5
§ 1269b(c) & (e) ....................................................................................................... 5
§ 1269c .................................................................................................................. 5, 6
§ 1270 ....................................................................................................................... 5
§ 1275 .................................................................................................................. 5, 13

California Workplace Violence Safety Act.............................................................. 12

Death With Dignity Act ......................................................................................... 12

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Eleventh Amendment ...................................................................................... *passim*

iv

### TABLE OF AUTHORITIES
**(continued)**

Page

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................................ 4
    Rule 56(a) ........................................................................................................... 6
    Rule 56(c)(1) ...................................................................................................... 6

v

**INTRODUCTION**

Filed in 2016, this case challenges California procedures requiring monetary bail for arrestees to be released before arraignment, and the bail procedures implemented by the County of Sacramento.  In prior rulings, this Court previously dismissed Plaintiff Gary Welchen's equal protection claim, but denied the Attorney General's motion to dismiss on Eleventh Amendment immunity grounds, and allowed Plaintiff to proceed on his substantive due process claim.  The Court also denied Plaintiff's motion for class action certification.  Plaintiff now moves for partial summary judgment, seeking determination of liability on his substantive due process claim. Plaintiff argues that strict scrutiny review applies here because the Sacramento County Bail Schedule allegedly deprives him of the fundamental right to "pretrial liberty," and that this deprivation is not justified by compelling government interests.

Plaintiff's motion should be denied because Plaintiff lacks Article III standing to pursue declaratory and injunctive relief against California bail laws more than six years after he was released from jail without bail.  There is no redressable injury for the Court to remedy, and Plaintiff offers no evidence showing that he is likely to suffer similar harm in the future. Moreover, the motion should be denied under the Eleventh Amendment, because there is no showing that the Attorney General is responsible for implementing Sacramento County's bail schedule.

Nonetheless, as discussed below, the Attorney General acknowledges serious concerns with pre-arraignment bail procedures to the extent that they fail to take into account an arrestee's inability to afford bail.  As the Attorney General previously noted, if a county's schedule sets bail amounts that are prohibitively expensive or excessive relative to valid purposes, then those procedures could infringe on the constitutional rights of arrested individuals.  These concerns were vividly and emphatically highlighted by the California Supreme Court's decision in *In re Humphrey*, 11 Cal.5th 135 (Cal. 2021), which addressed due process and equal protection principles in the context of bail set by judges for an arrestee to obtain release at arraignment. While that decision did not involve the pre-arraignment context at issue here, the Court's conclusion that the "common practice of conditioning freedom solely on whether an arrestee can

1

1  afford bail is unconstitutional" was based on fundamental principles of due process and fairness

2  that light the way here, and lean heavily against the continuation of pretrial detention based on an

3  arrestee's inability to afford bail.

**FACTUAL BACKGROUND**

4

5  **I.    PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY.**

6          **A.    In 2016, this Court Dismissed Plaintiff's Complaint and Denied Class
                 Certification.**

7

8          Plaintiff was arrested on January 29, 2016, by Sacramento police officers and accused of

9  burglary.  (ECF No. 1 at 4 ¶ 15.)  At the time of the Complaint, he was a homeless and indigent

10 resident of Sacramento, California.[1]  (*Id.* at 4 ¶¶ 14, 17.)  After his arrest, he was taken to the

11 Sacramento County Jail and informed by jail employees that he would not be released unless he

12 paid $10,000 in bail.  (*Id.* at 4 ¶ 16.)  The same day, Plaintiff initiated this purported class action

13 against the Attorney General and the County of Sacramento, alleging that enforcement of

14 California Penal Code section 1269b (the Bail Law) and the County's bail schedule, adopted

15 pursuant to that law (Bail Schedule) discriminate on the basis of wealth, and thus violate his due

16 process and equal protection rights.  (*Id.* at 4 ¶ 13.)  With the complaint, Plaintiff also filed a

17 motion for class certification.  (ECF No. 3.)

18         On October 11, 2016, this Court granted in part Defendants' motion to dismiss, dismissing

19 Plaintiff's equal protection claim.  (ECF No. 30 at 18-19.)  The Court denied the Attorney

20 General's motion to dismiss pursuant to Eleventh Amendment immunity and the *Younger*

21 abstention doctrine.  (*Id.* at 11-18.)  In short, the Court concluded that the Attorney General's

22 authority to "take full charge of any investigation or prosecution" of state criminal laws under

23 California Government Code section 12550 sufficed to bring Plaintiff's claim within the *Ex parte*

24 *Young* exception to immunity.  (*Id.* at 9-10.)  Although Plaintiff did not allege that the Attorney

25 General had ever taken charge in investigating or prosecuting any purported violations of the bail

26 _____

27         [1] The motion for summary judgment does not provide any updated information on
   Plaintiff's housing status, or the outcome of any criminal proceedings from his arrest.  (See ECF
   No. 80.)  No declaration from Plaintiff is included in the motion, which relies on the declaration

28 submitted more than six years ago with the application for a temporary restraining order.

2

1    laws at issue, the Court noted that the Attorney General could do so, and that "the threat of future

2    enforcement of an unconstitutional law is still grounds for suit under *Ex parte Young* and can be

3    remedied by injunctive relief." (*Id.* at 8.)  Plaintiff was directed to file an amended complaint

4    regarding his due process claim. (*Id.* at 18.)  The Court also denied Plaintiff's motion for class

5    certification as moot, in light of the dismissal of the complaint. (*Id.* at 19-20.)

6            **B.**    **In 2018, the Court Dismissed Plaintiff's Operative Amended Complaint in**

7                        **Part, With Plaintiff's Substantive Due Process Claim Remaining.**

8           Plaintiff filed the operative Amended Complaint on November 9, 2016. (ECF No. 31.)

9    Like the original complaint, the amended complaint alleges that Plaintiff was arrested on January

10   29, 2016, by Sacramento police officers and accused of burglary, that he is indigent, and that after

11   his arrest, he was taken to the Sacramento County Jail and informed by jail employees that he

12   would not be released unless he paid $10,000 in bail. (*Id.* ¶¶ 28-30.)

13          The amended complaint alleges that the bail set is mandated by the Bail Schedule based on

14   each arrestee's booking charges. (ECF No. 31 ¶ 37.)  Plaintiff alleges that Sacramento County

15   has a "policy and practice" of "wealth-based detention." (*Id.* at 9 ¶ 48.)  Plaintiff further alleges

16   that the Attorney General is liable for "requiring imposition of money bail irrespective of an

17   arrestee's ability to pay." (*Id.* at 10 ¶ 60.)  Notably, Plaintiff cites no support for the allegation

18   that the Attorney General plays any role in the bail process or in his particular arrest, charge or

19   bail setting. (*Id.*)  Plaintiff seeks injunctive and declaratory relief, specifically, "[a]n order and

20   judgment preliminarily and permanently enjoining Defendants from enforcing their

21   unconstitutional wealth-based detention policies and practices against the named Plaintiff and the

22   Class of similarly situated people that he represents." (*Id.* at 21-22.)

23          On October 26, 2018, the Court partially granted the Defendants' motions to dismiss. (ECF

24   No. 42.)  The Court concluded that under the operative statutory scheme, "the Bail Law is a state

25   law, and the Bail Schedule is set by the Sacramento County Superior Court." (*Id.* at 11.)

26   Resultingly, "the Eleventh Amendment shields the [Sacramento County] Sheriff from suit for

27   money damages." (*Id.* at 13.)  But "based on the *Ex parte Young* exception to sovereign

28   immunity, Plaintiff may seek declaratory or injunctive relief against the Sheriff for allegedly

1  unconstitutional conduct related to the Bail Law." (*Id.*)  Further, because the Court concluded

2  that the Sheriff "acts on behalf of the state" for purposes of the Bail Law, "the County [of

3  Sacramento] is not liable for the Sheriff's implementation of the Bail Law." (*Id.*)  Thus, the sole

4  remaining claim was for prospective relief under substantive due process, against the Sheriff and

5  the Attorney General.

6        The Attorney General answered the operative complaint on May 15, 2019, *inter alia*

7  denying Plaintiff's allegation that he has a role in requiring implementation of the Bail Schedule

8  or the Bail Law.  (ECF No. 54 at 6 ¶ 60.)  The answer also re-asserts the Attorney General's

9  immunity from Plaintiff's claims, and contends that Plaintiff's amended complaint "fails to meet

10  the requirements for class certification under Federal Rule of Civil Procedure 23." (*Id.* at 12.)

11        Defendant Sheriff Jones filed his answer on August 7, 2019.  (ECF No. 58.)

12  **II.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT.**

13        Plaintiff argues that he is entitled to partial summary judgment as to liability because there

14  is no dispute of material fact that county sheriffs are required by state law to set bail for arrestees

15  pre-arraignment solely by reference to a bail schedule, without an assessment of the arrestee's

16  ability to pay, risk of nonappearance, or threat to public safety.  (ECF No. 80 at 6-7.)  Plaintiff

17  contends that this violates substantive due process.  (*Id.* at 7.)  Initially, Plaintiff contends that

18  strict scrutiny applies here because application of the Bail Schedule infringes on his fundamental

19  right to pretrial liberty, and that use of the Bail Schedule "deprives Plaintiffs [*sic*] of that liberty

20  interest and imposes other harms." (*Id.* at 9-10.)  "Defendants cannot dispute that some arrestees

21  remain confined until at least the time of their arraignment as a consequence of their inability to

22  pay the bail set for them according to a schedule." (*Id.* at 10-11.)  The motion contends that this

23  amounts to a "deprivation of pretrial liberty" and that "even brief periods of incarceration exert

24  lasting effects on individuals' lives." (*Id.* at 11, citing *Buffin v. City & Cty. of San Francisco*,

25  2019 WL 1017537 (N.D. Cal. 2019) ("*Buffin*"); *id.* at 12-13.)

26        Plaintiff claims that enforcement of the Bail Schedule is not narrowly tailored to serve

27  compelling government interests.  Specifically, the Bail Schedule system lacks an individualized

28  assessment of risk, and thus does not serve the important interest in protecting public safety.

(ECF No. 80 at 14-15.)  Because the amounts prescribed by the Bail Schedule have no causal relationship to future appearance, the Schedule does not ensure future appearance of an arrestee. (*Id.* at 15-16.)  Moreover, the Bail Schedule fails to serve the interest in "protecting individual constitutional rights" to the extent that it results in pretrial detention for some arrestees "simply because they cannot afford to post bail."  (*Id.* at 17.)  Plaintiff requests entry of judgment in his favor on liability, a declaration that the Bail Schedule is unconstitutional, and an order directing the parties "to meet and confer to fashion appropriate injunctive relief."  (*Id.* at 21.)

### III.   RELEVANT STATUTORY BACKGROUND FOR THE CHALLENGED BAIL PROCEDURES.

In California, "bail determinations are regulated by a comprehensive statutory scheme." *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007).  Under this statutory scheme, "Any person who has been arrested for, or charged with an offense other than a capital offense may be released" on bail.  Cal. Pen. Code § 1270.  The primary considerations in setting bail are "the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial." *Id.* § 1275.

Under the Bail Law, a person arrested for a crime may be released on bail pending trial or other resolution of the charges.  Cal. Pen. Code § 1269b(a).  When the arrestee appears before a judge, the judge sets the bail amount; otherwise, bail is determined by the arrest warrant or by the uniform county bail schedule. *Id.* § 1269b(b); *Buffin v. California*, 23 F.4th 951, 954-55 (9th Cir. 2022).  The Bail Law requires the superior court in each county to prepare the uniform bail schedule, taking into consideration "the seriousness of the offense charged."  Cal. Pen. Code § 1269b(c) & (e).  In assessing the seriousness of the offense, judges in the superior courts must "assign an additional amount of required bail for each aggravating or enhancing factor chargeable in the complaint." *Id.* § 1269b(e).  Judicial officers have the "exclusive authority to enhance or reduce bail" from the amounts listed in the county's bail schedule. *Id.* § 1269c; *Galen*, 477 F.3d at 663.  In other words, the relevant actors under this scheme are the sheriffs and the judges in the respective counties. *Buffin*, 23 F.4th at 954-55.  These procedures do not assign the Attorney General a role in the bail process.  Cal. Pen. Code § 1269b; *id.* § 1269c.  Indeed, in its previous

Def. Bonta's Opp. to Pl.'s Mot. Partial Summ. J. (2:16-cv-00185-TLN-DB)

1   order, the Court stated that "the Sheriff is obligated to implement the state Bail Law, and the

2   Sheriff enforces bail schedules as set by the Sacramento County Superior Court."  (ECF No. 42 at

3   12, *citing* ECF No. 31 ¶¶ 18, 37.)

4        The Bail Law also allows for criminal defendants (other than those charged with serious

5   felonies) to seek release on their own recognizance under certain circumstances.  Cal. Pen. Code

6   § 1269c ("[T]he defendant, either personally or through his or her attorney, friend, or family

7   member, also may make application to the magistrate for release on bail lower than that provided

8   in the schedule of bail or on his or her own recognizance"); *id*. § 1270(a).  Individuals charged

9   with serious felonies and specified acts can also seek bail that is lower than the county bail

10  schedule.  *Id.* § 1270.1.  Individuals charged with a misdemeanor are presumptively entitled to

11  such release unless the court determines that this "will compromise public safety or will not

12  reasonably assure the appearance of the defendant as required."  *Id.* § 1270(a).

13                              **LEGAL STANDARD**

14       Summary judgment or partial summary judgment should be granted "if the movant shows

15  that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

16  matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of identifying those

17  portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

18  issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party asserting that

19  a fact cannot be disputed must support that assertion by citing to specific portions of the record,

20  or by "showing that the materials cited do not establish the absence or presence of a genuine

21  dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R.

22  Civ. P. 56(c)(1).

23                                 **ARGUMENT**

24  I.   **PLAINTIFF'S DUE PROCESS CLAIM IS MOOT BECAUSE HE WAS RELEASED FROM
         DETENTION AND THUS HE IS NO LONGER SUBJECT TO THE CHALLENGED BAIL**
25       **PROCEDURES.**

26       Initially, the Court should deny Plaintiff's motion because his claim is now moot.  There is

27  no dispute that Plaintiff is no longer detained under the Bail Schedule, and Plaintiff has submitted

28

1    no evidence that there is any likelihood of his future detention subject to the Bail Schedule.  Thus,

2    he cannot obtain review of its constitutionality.

3        Standing is the determination of whether "the litigant is entitled to have the court decide the

4    merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  To

5    establish standing to bring suit, the party invoking federal jurisdiction must allege "a case or

6    controversy within the meaning of Art. III of the Constitution."  *Meland v. Weber*, 2 F.4th 838,

7    843-44 (9th Cir. 2021) (citation omitted).  At an "irreducible constitutional minimum," Plaintiff

8    must have personally suffered an injury in fact, caused by the challenged conduct, and redressable

9    by a favorable judicial decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  As the

10   party invoking federal jurisdiction, Plaintiff bears the burden of establishing these elements.  *Id.*

11   at 561.  The standing requirement "embraces several judicially self-imposed limits on the exercise

12   of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal

13   rights . . . "  *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark*

14   *Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).  And, "[s]ince they are not

15   mere pleading requirements but rather an indispensable part of the plaintiff's case, each element

16   must be supported in the same way as any other matter on which the plaintiff bears the burden of

17   proof, i.e., with the manner and degree of evidence required at the successive stages of the

18   litigation."  *Lujan*, 504 U.S. at 561.

19       Moreover, it is not enough that a plaintiff merely establishes standing at the outset of the

20   case.  "Article III demands that an 'actual controversy' persist throughout all stages of litigation."

21   *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013).  Thus, a case becomes moot when the issues

22   presented are no longer "live" or the parties lack a cognizable interest in the outcome.  *City of*

23   *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).  As courts have stated, mootness is the doctrine of

24   standing set in a time frame, and thus standing must continue throughout the case.  *Sanford v.*

25   *MemberWorks, Inc.*, 625 F.3d 550, 556 (9th Cir. 2010).  To determine mootness, the question is

26   whether any meaningful relief can be granted to the plaintiff.  *West v. Sec'y of Dep't of Transp.*,

27   206 F.3d 920, 925 (9th Cir. 2020).  The party asserting mootness bears the burden to show that

28

1    there is no effective relief that the court can provide.  *Forest Guardians v. Johanns*, 450 F.3d 455,

2    461 (9th Cir. 2006).

3         Here, according to the Opposition to Plaintiff's Motion for Class Certification filed by

4    Sacramento County on March 24, 2016, Plaintiff was arraigned on February 2, 2016 (4 days after

5    his arrest), and he "was released on February 4, 2016 without having to pay bail."  (ECF No. 18 at

6    3.)  Plaintiff's current motion concedes that he "remained in the custody of the Sheriff for six

7    days."  (ECF No. 80 at 6; *See also* ECF No. 26 at 7.)  Indeed, Plaintiff's statement of facts also

8    asserts this undisputed fact.  (See ECF No. 80-1, Undisputed Statement of Facts, Fact 4.)  Plaintiff

9    offers no additional evidence establishing any later or ongoing custody by the Sacramento Sheriff

10   or any threat of future custody that would implicate the Bail Schedule.

11        On this record, the essential element of redressability cannot be established—i.e., that any

12   judgment of this court can or will redress an injury in fact to Plaintiff.  "[I]t must be 'likely,' as

13   opposed to merely 'speculative,' that the injury will be "redressed by a favorable decision."

14   *Lujan*, 504 U.S. at 561.  And a case becomes moot when the issues presented are no longer "'live'

15   or the parties lack a legally cognizable interest in the outcome."  *McQuillion v. Schwarzenegger*,

16   369 F.3d 1091, 1095 (9th Cir. 2004) (concluding that prisoner's release from prison rendered

17   moot his claim for injunctive and declaratory relief regarding prison conditions).  In a similar

18   factual context, the Tenth Circuit concluded that plaintiffs challenging bail procedures in New

19   Mexico lacked standing to pursue prospective injunctive relief.  *Collins v. Daniels*, 916 F.3d

20   1302, 1314-15 (10th Cir. 2019) ("Plaintiffs have never suggested that [the plaintiff] faces an

21   appreciable risk of future arrest and subsequent arraignment using the 2017 Rules and the Arnold

22   Tool."); *see also City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983).  Here, the most recent evidence

23   in the record of Plaintiff's standing is limited to his declaration submitted to this Court more than

24   six years ago, the only declaration cited in the Statement of Undisputed Facts.  (ECF No. 80-1,

25   Statement of Undisputed Facts, Facts 1-4.)

26        To be sure, Plaintiff's FAC is styled as a "class action complaint," and refers to claims by

27   Plaintiff "and all others similarly situated."  (*See, e.g.*, ECF No. 31 at 2 ¶ 5; *id.* at 16-20.)

28   However, this Court previously denied Plaintiff's motion for class certification as moot, and

8

1   Plaintiff has not renewed this motion, even though the discovery and dispositive motion deadlines

2   has passed.  (ECF No. 30 at 19-20; ECF No. 79 at 1 [setting dispositive motion deadline of

3   January 14, 2022].)  Moreover, the Ninth Circuit has held that, even in a putative class action, the

4   jurisdictional requirement of standing must be addressed before class certification.  *Cady v.*

5   *Anthem Blue Cross Life & Health Ins. Co.*, 583 F. Supp. 2d 1102, 1106 (N.D. Cal. 2008), *citing*

6   *Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997).  Further, if the named plaintiff fails to

7   establish standing, "he many not 'seek relief on behalf of himself or any other member of the

8   class.'"  *Lee*, 107 F.3d at 1390, citation omitted.

9       Accordingly, Plaintiff's claim is moot, and thus cannot establish entitlement to partial

10  summary judgment.[2]

11  **II.    THE ATTORNEY GENERAL HAS NO ROLE UNDER STATE LAW IN IMPLEMENTING
        THE CHALLENGED BAIL PROCEDURES.**

12

13      Plaintiff also cannot establish entitlement to partial summary judgment against Defendant

14  Bonta because the Attorney General has no role in implementing the Bail Law or the Sacramento

15  County Bail Schedule at issue here.  This Court previously concluded that the Attorney General's

16  role as "chief law enforcement officer," and his duties to enforce "the Penal Code's bail provision

17  as supervisor of the state's sheriffs," as well as direct supervision of district attorneys "create a

18  sufficient connection to the challenged Bail Law" for the *Ex parte Young* doctrine to apply, and

19  denied the motion to dismiss on immunity grounds.  (ECF No. 30 at 10.)  Nevertheless, the record

20  at summary judgment casts Plaintiff's claims in a different light, and the evidence submitted fails

21  to support the claim that the Attorney General has any role in the challenged laws.  Further, if the

22  Court grants Plaintiff's motion for partial summary judgment and directs the parties to confer

23  regarding the appropriate remedy, the Attorney General's lack of a role in developing and

24  implementing the statutory bail schedule is highly relevant to the extent it could impact his ability

25  to negotiate regarding an appropriate remedy.

26  _____

27      [2] To the extent Plaintiff might have had a redressable claim for damages for the six days
    he was detained before being released, the Court dismissed it in its October 26, 2018 Order,
    concluding that "the Eleventh Amendment shields the [Sacramento County] Sheriff from suit for
28  money damages."  (ECF No. 42 at 13.)

1    The Eleventh Amendment provides, in relevant part, that "The judicial power of the United

2    States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

3    against one of the United States by Citizens of another State." The Supreme Court has interpreted

4    this Amendment to apply to suits by citizens against their own states. *Bd. of Trs. of the Univ. of*

5    *Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "The ultimate guarantee of the Eleventh Amendment

6    is that nonconsenting States may not be sued by private individuals in federal court." *Id.* Thus, it

7    "erects a general bar against federal lawsuits brought against a state." *Coal. to Defend*

8    *Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012) (quoting *Porter v. Jones*, 319

9    F.3d 483, 491 (9th Cir. 2003)).

10   Although the Eleventh Amendment does not bar actions for prospective declaratory or

11   injunctive relief against state officers in their official capacities, *Ex parte Young*, 209 U.S. 123

12   (1908), a party raising such a claim must show that the state official sued has "some connection

13   with the enforcement of the [challenged] act." *Coal. to Defend Affirmative Action*, 674 F.3d at

14   1134. This connection "must be fairly direct; a generalized duty to enforce state law or general

15   supervisory power over the persons responsible for enforcing the challenged provision will not

16   subject an official to suit." *Id.* (quoting *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir.

17   1992)). The *Ex parte Young* exception is not "an indiscriminate exception" to sovereign

18   immunity, and thus a "plaintiff may not challenge any statute's constitutionality simply by

19   naming some random state officer, rather than the state itself, as the defendant." *Shalaby v. State*

20   *of Cal.*, No. C-03-01922-CRB, 2003 WL 21556930, at *4 (N.D. Cal. July 3, 2003). For example,

21   the Ninth Circuit has held that the Governor of California is immune where his only connection to

22   the challenged law was his general duty to enforce California law. *Association des Eleveurs de*

23   *Canards et D'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013).

24   Plaintiff's allegations against the Attorney General fall into the same category as the claims

25   against the Governor in *Harris*, and therefore fail to bring the complaint within the *Ex parte*

26   *Young* exception to the Eleventh Amendment bar. The FAC does not allege that the Attorney

27   General has any role in enforcing the Bail Law, and none is apparent in the statutory scheme.

28   Cal. Pen. Code § 1269b; *Buffin*, 23 F.4th at 954-55. The only allegation in the FAC regarding the

10

1   Attorney General is that he "is charged with the enforcement of California's laws," and allegedly

2   "requires the County of Sacramento and the county Sheriff to impose bail pursuant to a bail

3   schedule." (ECF No. 31 at 5 ¶ 23; ECF No. 31 at 10-11 ¶ 60.) There is no allegation that the

4   Attorney General is involved in overseeing Sacramento's adoption of a bail schedule, its

5   enforcement, or any attempts to modify it. (*See generally* FAC, ECF No. 31.)

6       At the summary judgment stage, Plaintiff has submitted no evidence regarding the Attorney

7   General's role in enforcing the Bail Law or implementing the Bail Schedule prepared by the

8   superior court. (See generally, ECF No. 80.) To the contrary, as this Court noted in a prior order,

9   Plaintiff has previously argued in this case that "the Sheriff's actions [at issue in this case] were

10  not controlled by the state." (ECF No. 42 at 12; ECF No. 31 at 6 ["As Plaintiff in this case

11  illustrates, the Sheriff was not following any court order, but the county's bail schedule set by the

12  superior court judges."].) As noted above, this Court previously denied the motion to dismiss

13  pursuant to Eleventh Amendment immunity, concluding that the Attorney General's authority to

14  "take full charge" of any investigation or prosecution of state criminal laws under California

15  Government Code section 12550 sufficed to bring Plaintiff's claim within the *Ex parte Young*

16  exception to immunity. (ECF No. 30 at 9-10.) But Plaintiff's claim here is not a challenge to

17  state criminal laws that the Attorney General enforces. *Cf. Planned Parenthood of Idaho v.*

18  *Wasden*, 376 F.3d 908 (9th Cir. 2004) (in challenge to state statute requiring parental consent for

19  abortions, concluding that state attorney general was proper defendant given his ability to enforce

20  statute by prosecuting violations); *see also S.B. by and through Kristina B. v. Cal. Dep't of Educ.*,

21  327 F. Supp. 3d 1218, 1236 (E.D. Cal. 2018) (for claim to fall under the *Ex parte Young*

22  exception, "the official sued must have a connection with the law and direct responsibility for

23  enforcing it"). Instead, Plaintiff's claim is that provisions of the California Penal Code regarding

24  bail should *not* be enforced. In a similar context, the district court in *Buffin* agreed that the

25  Attorney General is immune, concluding that "the general notion that the Attorney General can

26  assist a district attorney in prosecuting crimes or enforcing the Penal Code is too remote to the

27  function challenged" in the complaint. *Buffin*, 2016 WL 6025486, at *12; *Buffin*, 23 F.4th at 957.

28

As other courts have held, lawsuits seeking a declaration that a particular state statute is unconstitutional or injunctive relief do not suffice to take the case out of sovereign immunity; a plaintiff must be able to allege that the state officer sued has a "fairly direct" role in enforcing that statute. *Coal. to Defend Affirmative Action*, 674 F.3d at 1134; *Eu*, 979 F.2d at 704 (denying immunity where the defendants "have a specific connection to the challenged statute"). In *Bolbol v. Brown*, No. 14-cv-03679-RMW, 2015 WL 4880916 (N.D. Cal. Aug. 14, 2015), the plaintiff sued the California Governor and Attorney General, seeking a declaration that certain provisions of the California Workplace Violence Safety Act were unconstitutional. The court concluded that these claims were barred by sovereign immunity because "Plaintiffs' requested declaration and injunctive relief are targeted at the application of [the state statute] in the State of California generally, not by the particular defendants in this case." *Id.* at * 5. Thus, these claims sought "relief that is directed against the State of California, and such claims are barred under the Eleventh Amendment." *Id*; *see also Lee v. State of Or.*, 891 F. Supp. 1421, 1429 (D. Or. 1995) (dismissing claim against state Attorney General challenging state Death With Dignity Act, as barred by Eleventh Amendment). Nor is the Attorney General's presence necessary in such a case to provide effective relief to Plaintiff. Ultimately, as the injunction entered in *Buffin* illustrates, any constitutional violation in enforcing and implementing the Bail Law and the Bail Schedule can be addressed, for example, by revamping the respective county's procedures for releasing individuals before arraignment.

Under Ninth Circuit caselaw, Plaintiff's generic allegation that the Attorney General has a general duty to enforce state law does not overcome Eleventh Amendment immunity.

III.   ***IN RE HUMPHREY* IS STRONGLY PERSUASIVE AUTHORITY THAT THE BAIL SCHEDULE PRESENTS SIGNIFICANT CONSTITUTIONAL CONCERNS.**

Although Plaintiff's motion fails because his claim is moot and the Attorney General is immune, the Attorney General agrees that the Bail Schedule can, in certain circumstances, infringe on the fundamental right to liberty before trial. Broad constitutional principles set out by the California Supreme Court in *In re Humphrey* bolster this conclusion.

12

1    A simple and straightforward principle is at the heart of this case: "No person should lose

2    the right to liberty simply because that person can't afford to post bail." *In re Humphrey*, 11

3    Cal.5th 135, 142 (Cal. 2021).  There, the California Supreme Court addressed the requirements

4    that courts must fulfill in setting bail or requiring detention, concluding that a trial court's

5    decision to impose a $350,000 bail condition without addressing the detainee's inability to afford

6    bail or whether nonfinancial conditions of release could mitigate public safety concerns or flight

7    risk violated federal and state constitutional principles of equal protection and due process. *Id.* at

8    148; *see also id.* at 152.  In addressing section 1270.2, the Court held that "[t]he common practice

9    of conditioning freedom solely on whether an arrestee can afford bail is unconstitutional." *Id.* at

10   143-44; *see also id.* at 152 (discussing California Penal Code section 1275).[3]

11   If there were any question before, *In re Humphrey* made explicit that pretrial detention "is

12   subject to state and federal constitutional constraints." *Id.* at 151.  In terms equally applicable to

13   the pre-arraignment context, the Court expressed concern about the "immense and profound"

14   disadvantages that pretrial detention imposes on arrestees, including an impaired ability to

15   prepare a defense, and heightened risks of losing a job, a home, and custody of a child." *Id.* at

16   147.  Those who are "incarcerated pending trial—who have not yet been convicted of a crime—

17   unquestionably suffer a "direct 'grievous loss'" of freedom in addition to other potential injuries."

18   *Id.* at 142, citation omitted.

19   More broadly, although the California Supreme Court noted that neither it "nor the United

20   States Supreme Court ha[d] yet held that a judge must consider what an arrestee can pay when

21   fixing the amount of money bail," past decisions from state and federal courts have presented "a

22   theme" that weighs against pretrial detention where an individual cannot afford bail. *Id.* at 149

23   (citing cases).  Against this background, the Court held that due process and equal protection

24   require that courts consider an arrestee's ability to pay before setting a monetary bail condition,

25   and consider alternative conditions, such as electronic monitoring, check-ins with a case manager,

26   community housing, etc. *Id.* at 143; *see also id.* at 155 ("A court's procedures for entering an

27

28
_____
[3] Plaintiff notes that *In re Humphrey* was "not specifically about *pre-arraignment* bail."
(ECF No. 80 at 5 [emphasis in original].)

1    order resulting in pretrial detention must also comport with other traditional notions of due

2    process to ensure that when necessary, the arrestee is detained 'in a fair manner.'").

3    Fundamentally, pretrial detention solely because of an arrestee's inability to pay "is

4    impermissible unless no less restrictive conditions of release can adequately vindicate the state's

5    compelling interests." *Id.* at 151-52.  Although *In re Humphrey* does not directly address the

6    question raised by Plaintiff—i.e., the use of monetary bail for pre-arraignment release of

7    detainees—it bolsters the conclusion that fundamental due process requires the consideration of

8    less restrictive alternatives before an arrestee is held for further criminal proceedings.

9        In other words, *In re Humphrey* made broad pronouncements that significantly inform the

10   legal issues here.  Due process principles, as discussed and applied to the bail context there,

11   support the argument that detention before trial based on an individual's inability to pay bail can

12   raise constitutional problems.  "In principle, then, pretrial detention should be reserved for those

13   who otherwise cannot be relied upon to make court appearances or who pose a risk to public or

14   victim safety." *Id.* at 142.  Indeed, as the Attorney General noted previously in this Court, (ECF

15   No. 36 at 10-11), if a county's particular bail schedule sets bail amounts that are prohibitively

16   expensive, this could potentially implicate the constitutional rights of the arrested individuals.

17   *U.S. v. Gardner*, 523 F. Supp. 2d 1025, 1028 (N.D. Cal. 2007); *In re Underwood*, 9 Cal.3d 345,

18   349 (Cal. 1973).  Similarly, if a bail schedule singled out a disfavored group for negative

19   treatment, this would raise constitutional concerns.  *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772

20   (9th Cir. 2014 ) (en banc).  Bail should not be set to achieve invalid interests or in an amount that

21   is excessive in relation to the interests sought to be protected.  *Galen*, 477 F.3d at 659-60.

22       In fact, money bail systems have been challenged in court proceedings, some of which have

23   been successful.  *See, e.g.*, *Walker v. City of Calhoun*, 901 F.3d 1245 (11th Cir. 2018) (due

24   process and equal protection challenge to local bail policy); *ODonnell v. Harris Cty.*, 892 F.3d

25   147 (5th Cir. 2018), *overruled on other grounds*, *Daves v. Dallas Cty., Texas*, 22 F.4th 522 (5th

26   Cir. 2022) (en banc).  "Other jurisdictions have similarly concluded that detaining arrestees solely

27   because of their indigency is fundamentally unfair and irreconcilable with constitutional

28   imperatives." *In re Humphrey*, 11 Cal.5th at 151 (citing cases).  Within California, the district

14

1    court in the *Buffin* litigation found that the Bail Law, as implemented by San Francisco County,

2    violates the Constitution, and the San Francisco County Sheriff and plaintiffs there subsequently

3    negotiated a remedial order to address the constitutional concerns. *Buffin*, 2019 WL 1017537, at

4    *24; *Buffin*, 23 F.4th at 957.  This demonstrates that counties can develop procedures that

5    comport with due process.

6         Likewise, in briefing before the California Supreme Court, the Attorney General stated that:

7    (1) a court must "consider a criminal defendant's ability to pay in setting or reviewing the amount

8    of monetary bail;" (2) the "availability of personal freedom should not turn solely on a

9    defendant's ability to pay a particular amount;" and (3) because current state law makes monetary

10   bail forfeitable only based on a failure to appear (as opposed to new criminality or other public

11   safety breach), the amount of any money bail "currently bears no rational relationship to

12   protecting public safety."  Although these statements were made in the context of bail set during

13   arraignment, the concerns they acknowledge, and that were recognized by the California Supreme

14   Court in *In re Humphrey*, remain relevant in the pre-arraignment context.

15                          **CONCLUSION**

16        Fundamental principles of fairness and due process dictate that "pretrial detention should be

17   reserved for those who otherwise cannot be relied upon to make court appearances or who pose a

18   risk to public or victim safety."  *In re Humphrey*, 11 Cal.5th at 142.  When an arrestee is unable

19   to afford bail, reasonable alternatives should be considered to ensure the arrestee's appearance at

20   trial and the community's safety.  In this case, if any such relief were to be ordered despite the

21   mootness of Plaintiff's claims, then that relief would not be appropriately directed toward the

22   Attorney General, who is not responsible for implementing Sacramento County's bail schedule.

23   Accordingly, summary judgment against the Attorney General should be denied.

24

25

26

27

28

1 | Dated:  May 5, 2022                                Respectfully submitted,

2 |                                                    ROB BONTA
     |                                                    Attorney General of California
3 |                                                    MARK BECKINGTON
     |                                                    Supervising Deputy Attorney General

4 |

5 |

6 |                                                    /s/ Jose A. Zelidon-Zepeda
     |                                                    JOSE A. ZELIDON-ZEPEDA
7 |                                                    Deputy Attorney General
     |                                                    Attorneys for Defendant Rob Bonta, in his
8 |                                                    official capacity as Attorney General of
     |                                                    California

9 |     SA2016100421
10 |    43209433.docx

11 |

28 |

Def. Bonta's Opp. to Pl.'s Mot. Partial Summ. J. (2:16-cv-00185-TLN-DB)

# CERTIFICATE OF SERVICE

Case Name: **Gary Wayne Welchen v.**          No.   **2:16-cv-00185-TLN-DB**
              **Kamala Harris, Atty. Gen. et al.**

I hereby certify that on May 5, 2022, I electronically filed the following documents with the
Clerk of the Court by using the CM/ECF system:

**DEFENDANT ROB BONTA'S OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be
accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States
of America the foregoing is true and correct and that this declaration was executed on May 5,
2022, at San Francisco, California.


R. Caoile                                                         */s/ R. Caoile*
Declarant                                                          Signature

SA2016100421
43209569.docx