1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    GARY WAYNE WELCHEN,                        No. 2:16-cv-00185-TLN-DB

12                 Plaintiff,

13         v.                                     **ORDER**

14    ROB BONTA, in his official capacity as
      the Attorney General of California, et al.
15
                   Defendants.
16

17         This matter is before the Court on Plaintiff Gary Wayne Welchen's ("Plaintiff") Motion

18    for Partial Summary Judgment.  (ECF No. 80.)  Defendants Rob Bonta, in his official capacity as

19    Attorney General of the State of California[1] (the "AG"), and Scott Jones, in his official capacity

20    as the Sacramento County Sheriff (the "Sheriff"), (collectively, "Defendants") have filed

21    oppositions.  (ECF Nos. 83, 84.)  Plaintiff filed replies.  (ECF Nos. 86, 87.)  For the reasons set

22    forth below, Plaintiff's motion is GRANTED.

23    ///

24    ///

25    _____

26    [1]      Pursuant to Federal Rule of Civil Procedure ("Rule") 25(d), "[t]he officer's successor is
      automatically substituted as a party" when a public officer "ceases to hold office while the action
27    is pending."  Fed. R. Civ. P. 25(d).  Accordingly, Rob Bonta is automatically substituted as a
      party for Kamala Harris, the former Attorney General of the State of California.  The Clerk of the
28    Court is directed to update the docket as necessary.

                                              1

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.   Overview of the Instant Case

The instant action arises from Plaintiff's arrest by Sacramento police.  Plaintiff was arrested on January 29, 2016, and charged with second-degree burglary.  (Pl.'s Statement of Undisputed Facts ("PSUF"), ECF No. 80-1 ¶ 1.)  Upon being taken to jail and booked, Plaintiff was assigned bail of $10,000 pursuant to the Sacramento bail schedule.[3]  (*Id.* at ¶ 2.)  Plaintiff was indigent and could not pay the $10,000, and therefore he remained in the custody of the Sheriff for six days.[4]  (*Id.* at ¶ 4.)

Pursuant to California's statutory bail scheme, those who are (a) arrested not pursuant to an arrest warrant and (b) without an immediate opportunity for a bail hearing before a judge, have their bail set for them by Defendants "at the amount dictated in a 'uniform countywide schedule of bail.'"[5]  (*Id.* at ¶ 7 (quoting *Buffin v. California* (*Buffin II*), 23 F.4th 951, 954–55 (9th Cir.

---

[2]     The following facts are undisputed unless otherwise noted.

[3]     The Sheriff objects to this fact as unsupported and argues the evidence cited (Plaintiff's declaration) fails to support the facts as stated.  (Sheriff's Response to Pl.'s Statement of Undisputed Facts ("SR"), ECF No. 83-1 ¶ 2.)  However, the Sheriff does not actually dispute any of these facts as presented.  The Court will therefore consider them undisputed for the purpose of this motion.

[4]     The Sheriff objects to this fact, arguing the Plaintiff's declaration (the evidence to which Plaintiff cites for this fact) does not lay the necessary foundation that Plaintiff could not afford to pay.  (SR ¶ 4.)  The Sheriff does not dispute that Plaintiff was in custody for six days before being released.  (*Id.*)  Plaintiff avers in his declaration: "When I got to jail, I was given a booking form which stated that I would be released if I paid $10,000 . . . I cannot afford to buy my release from jail.  If I had the money, I would immediately pay for my release."  (*See* ECF No. 1-1 ¶¶ 3–5.)  These issues are also appropriately based on Plaintiff's personal knowledge.  Based on these statements, the Court OVERRULES the Sheriff's objection that Plaintiff has not laid the necessary foundation that he could not afford to pay.

[5]     The Sheriff objects to this fact as compound, relative to San Francisco, and fails to account for the fact that conditions of release, including the amount of bail, are set by the California Superior Court.  (SR ¶ 7.)  First, a compound objection is inapplicable here as no questions were asked in a deposition, nor do the Local Rules or Federal Rules prohibit the statement of undisputed facts from listing multiple facts in each paragraph.  Second, the Court finds this is not relative to San Francisco, as the Ninth Circuit cites to a statute that applies statewide.  *See Buffin II*, 23 F.4th at 954–55 (citing Cal. Penal Code § 1269b(b)).  Third, the Ninth Circuit clearly states that "if the defendant has not had his first hearing and was not arrested

2

1    2022); Cal. Penal Code § 1269b(b)).)  The bail schedule sets specific dollar amounts by reference

2    solely to criminal charges, without allowing Defendants to modify an amount by making an

3    individualized determination as to the arrestee's ability to pay, risk of nonappearance, or threat of

4    public safety before trial.[6]  (*Id.* at ¶ 8 (citing *Buffin II*, 23 F.4th at 955–56; Cal. Penal Code §§

5    1269b(a)–(c)).)

6         Plaintiff filed the instant action on January 29, 2016.  (ECF No. 1.)  Plaintiff filed the

7    instant motion for partial summary judgment on January 14, 2022.  (ECF No. 80.)

8              B.       Overview of California Penal Code § 1269b

9         The statute outlining the bail schedule states the duties of the Sheriff:

10            (a)      The officer in charge of a jail in which an arrested person is
              held in custody . . . may approve and accept bail in the amount fixed
11            by the warrant of arrest, *schedule of bail*, or order admitting to bail
              in cash or surety bond executed by a certified, admitted surety insurer
12            . . ., to issue and sign an order for the release of the arrested person,
              and to set a time and place for the appearance of the arrested person
13            before the appropriate court and give notice thereof.

14   Cal. Pen. Code § 1269b(a) (emphasis added).  With respect to the "schedule of bail," the rest of

15   the statute requires:

16            (b) If a defendant has appeared before a judge of the court . . ., the
              bail shall be in the amount fixed by the judge at the time of the
17            appearance. If that appearance has not been made . . . [and], if no
              warrant of arrest has been issued, the amount of bail shall be pursuant
18            to the uniform countywide schedule of bail for the county in which
              the defendant is required to appear, previously fixed and approved as
19            provided in subdivisions (c) and (d).

20   ///

21   _____

22   pursuant to an arrest warrant, bail is set by the sheriff at the amount dictated in a 'uniform
     countywide schedule of bail,'" which is set by Superior Court judges in each county.  *Id.* at 955
     (citing Cal. Penal Code §§ 1269b(b)–(c)).

23

24        The AG also disputes that it has any role in setting bail.  (AG's Response to Pl.'s
     Statement of Undisputed Facts ("AGR"), ECF No. 85 ¶ 7.)  The Court agrees, and notes that
25   California Penal Code § 1269b(c) "imposes a duty on the Superior Court of each county to
     'prepare, adopt, and annually revise a uniform countywide schedule of bail' for all bail-eligible
26   felony offenses and all misdemeanors and infraction offenses except Vehicle Code infractions."
     *Buffin II*, 23 F.4th at 955 (citing Cal. Pen. Code § 1269b(c)).

27

     [6]      The Sheriff objects to this fact on the same basis as the previous sentence.  (SR ¶ 8.)
28   Accordingly, the Court's ruling on this objection is the same as its ruling in footnote 5.

1

> (c) It is the duty of the superior court judges in each county to prepare, adopt, and annually revise a uniform countywide schedule of bail for all bailable felony offenses and for all misdemeanor and infraction offenses except Vehicle Code infractions . . . .

> (d) A court may, by local rule, prescribe the procedure by which the uniform countywide schedule of bail is prepared, adopted, and annually revised by the judges. If a court does not adopt a local rule, the uniform countywide schedule shall be prepared, adopted, and annually revised by a majority of the judges.

*Id.* §§ 1269(b)–(d).  The remainder of the statute provides: that judges are to "consider the seriousness of the offense charged" when creating the bail schedule; the schedule must have "a list of the offenses and the amount of bail applicable for each as the judges determine to be appropriate" and a "general" catchall clause for any offense not listed in the bail schedule; and the arrestee "shall be discharged from custody as to the offense on which the bail is posted."  *See Buffin v. City & Cnty. of San Francisco* (*Buffin I*), No. 15-cv-04959-YGR, 2019 WL 1017537, at *6 (N.D. Cal. Mar. 4, 2019) (quoting Cal. Pen. Code §§ 1269b(e)–(g)).

## II.   STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at 324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

///

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* (*Matsushita*), 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."

1    *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of

2    fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587.

3        **III.    ANALYSIS**

4        Plaintiff moves for partial summary judgment as to Defendants' liability on his claim for

5    violation of his substantive due process pretrial liberty rights.  (*See* ECF No. 80 at 7–8.)  As an

6    initial matter, regarding the applicable standard of review, the Court previously found Plaintiff

7    has established that there is a fundamental right to pretrial liberty under the Fourteenth

8    Amendment Due Process Clause and therefore pretrial detention is subject to heightened scrutiny.

9    (ECF No. 30 at 17 (citing *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 777 (9th Cir. 2014)).)

10   Plaintiff asserts that strict scrutiny applies to the bail schedule, which means the bail schedule

11   satisfies substantive due process only if it is "narrowly tailored to serve a compelling state

12   interest."  (ECF No. 80 at 10 (quoting *Arpaio*, 770 F.3d at 781).)  Neither the Sheriff nor the AG

13   dispute whether this standard applies.  (*See* ECF Nos. 83, 84.)  Accordingly, the Court will first

14   evaluate whether the bail schedule passes constitutional muster by applying strict scrutiny.  The

15   Court will then turn to Defendants' remaining arguments.

16        A.    Whether Plaintiff Establishes the Bail Schedule Deprives Him of His

17              Fundamental Right to Liberty

18       The first question in the strict scrutiny analysis "is whether a significant deprivation has

19   occurred."  *Buffin I*, 2019 WL 1017537, at *16.  Whether a deprivation has been significant is

20   measured by the amount of time spent in detention, as well as "the real-world consequences of

21   such a deprivation," such as losing a job, housing, public benefits, child custody, and being

22   "burdened with significant long-term debt due to a short period of detention."  *Id.* at *18.

23       In this case, it is undisputed that Plaintiff remained in the custody of the Sheriff for six

24   days because he could not afford the amount of bail assigned.  (PSUF ¶¶ 4–5; SR ¶ 4–5; AGR ¶¶

25   4–5.)  Plaintiff contends that other state and federal courts have "repeatedly categorized detention

26   on the basis of inability to pay as a deprivation of the fundamental liberty interest at issue here"

27   and have struck down "bail regimes that detained individuals because they could not afford bail

28   or bond as a condition of release."  (ECF No. 80 at 11–12 (citing cases).)  The Court agrees with

1    Plaintiff's assertion.  *See, e.g.*, *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 312 (E.D. La. 2018) ("To

2    satisfy the Due Process principles articulated by Supreme Court precedent, [a judge] must

3    conduct an inquiry into criminal defendants' ability to pay prior to pretrial detention."); *ODonnell*

4    *v. Harris Cnty.*, 892 F.3d 147, 159 (5th Cir. 2018), *overruled on other grounds by Daves v.*

5    *Dallas Cnty., Texas*, 22 F.4th 522 (5th Cir. 2022) (finding that the county's bail-setting

6    procedures, pursuant to which bail orders were imposed almost automatically on indigent

7    arrestees and indigent arrestees were detained solely due to their inability to pay bail, inadequate

8    to comply with the Due Process Clause); *Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir.

9    2017) (finding consideration of immigration detainees' "financial circumstances, as well as of

10   possible alternative release conditions, necessary to ensure that the conditions of their release will

11   be reasonably related to the governmental interest in ensuring their appearance at future

12   hearings").  Accordingly, the Court finds Plaintiff's six-day detention significantly deprived him

13   of his fundamental right to pretrial liberty solely due to his indigence.

14          B.     Whether the Bail Schedule is Narrowly Tailored to Serve a Compelling

15                 Government Interest

16          As stated above, the bail schedule satisfies substantive due process only if it is "narrowly

17   tailored to serve a compelling state interest."  *Arpaio*, 770 F.3d at 781.  The Court will first

18   briefly address the compelling state interests at issue, and then turn to an evaluation of whether

19   the bail schedule is narrowly tailored.

20                 i.     *Compelling State Interest*

21          Plaintiff argues that the bail schedule fails strict scrutiny because the bail schedule does

22   not serve the government's interests in: (1) protecting public safety because it makes no

23   individualized assessment of risk, so people who pose a greater risk to the community are allowed

24   to buy their freedom while people who pose less risk are confined for lack of money; (2) ensuring

25   future appearance because the amounts on the bail schedule have no causal or rational

26   relationship to future appearance; and (3) protecting individual constitutional rights because it

27   unnecessarily deprives pretrial liberty.  (ECF No. 80 at 13–14.)  Neither the Sheriff nor the AG

28   address these arguments in opposition.  (*See* ECF No. 83, 84.)  Accordingly, the Court will

1    assume for the purposes of this Order only that these are the compelling state interests served by

2    the bail schedule.

3                    ii.        *Narrowly Tailored*

4         Plaintiff argues the bail schedule is not narrowly tailored because: (1) it is both

5    overinclusive and underinclusive; (2) plausible and less restrictive alternatives would better serve

6    the government's interests; and (3) it is excessive in relation to its purpose.  (ECF No. 80 at 14–

7    21.)  The Court will consider each argument in turn.

8                            a)   <u>Whether the Bail Schedule is Overinclusive and Underinclusive</u>

9         Plaintiff argues the bail schedule presents the problems of under-inclusion and over-

10   inclusion with respect to the public safety and ensuring arrestees appear for court proceedings.

11   (ECF No. 80 at 14–16.)  Plaintiff also argues that "a bail regime that forsakes individualized

12   evaluations of arrestees in favor of an overbroad, irrebuttable presumption of pretrial detention

13   'results in a deprivation of liberty even where not necessary to ensure appearance at trial.'"  (*Id.* at

14   14 (citing *Arpaio*, 770 F.3d at 791).)  Neither the Sheriff nor the AG respond to these arguments.

15   (*See* ECF Nos. 83, 84.)

16       "[A] statute is not narrowly tailored if it is either underinclusive or overinclusive in

17   scope."  *Imdb.com Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020) (finding a law that

18   prohibits specific websites from publishing the ages and dates of birth of professionals in the

19   entertainment industry to be "underinclusive because it fails to reach several potential sources of

20   age information and protects only industry professionals who both subscribe to such service and

21   who opt-in" and therefore not narrowly tailored).

22       The Court finds Plaintiff's arguments persuasive.  With respect to public safety, Plaintiff

23   contends that the bail schedule is overinclusive because it "confines many people who may not

24   pose any risk simply because they cannot afford to post the amount assigned by the schedule" and

25   is also underinclusive because it "allows others who might pose a greater risk to go free simply

26   because they can afford to pay a high bail amount."  (ECF No. 80 at 14.)  With respect to

27   ensuring appearance in court, Plaintiff asserts that the bail schedule is overinclusive because it

28   "sets bail amounts based on charged offenses, without any individualized determination as to an

arrestee's nonappearance risk" and is also underinclusive because it "allows others who might pose a substantially greater flight risk to go free simply because they can afford to pay a high bail amount." (*Id.* at 15–16.)  Plaintiff provides an example of the issue of under-inclusion: "A person with means charged with armed robbery can go free while an indigent person charged with drug possession remains caged." (*Id.* at 14.)  The Court also finds persuasive Plaintiff's argument that "Defendants cannot and do not dispute that the amounts of bail set on the bail schedule for particular offenses do[] *not* bear *any* relationship to the rates of reappearance of people arrested for those offenses and then released on bail." (*Id.* at 16.)  Based on the foregoing, therefore, the Court finds the bail schedule is both overinclusive and underinclusive.

b)  <u>Whether Plausible and Less Restrictive Alternatives Exist</u>

Plaintiff notes that the court in *Buffin I* found that less restrictive alternatives exist — namely, a computerized risk assessment and a less restrictive alternative that had been adopted by the state legislature.  (ECF No. 80 at 17–18.)  Plaintiff also states that other less restrictive alternatives have been adopted in other jurisdictions.  (*Id.* at 18.)  Neither the Sheriff nor the AG respond to these arguments.  (*See* ECF Nos. 83, 84.)

The burden is on Plaintiff to identify "a plausible alternative that is less restrictive and at least as effective at serving the government's compelling interests" as detailed above.  *Buffin I*, 2019 WL 1017537, at *19; *see also Carmichael v. Ige*, 470 F. Supp. 3d 1133, 1147 (D. Haw. 2020) (in considering plaintiffs' claim for a violation of their substantive due process right to travel that defendant's 14-day travel quarantine is "narrowly tailored" and "it is unclear that there are less restrictive means to achieve [d]efendant's stated interests").  Plaintiff's burden is not high, as it does not need to reach a level of scientific precision.  *Id.*  "[I]n the context of strict scrutiny, when a court asks whether a proposed alternative is 'less restrictive,' it is making an inquiry into whether the challenged law is *necessary* as a means to accomplishing the end."  *Id.* (emphasis in original) (citing Constitutional Law Principles and Policies at 567 ("[T]he law must be shown to be 'necessary' as a means to accomplishing the end.  This requires proof that the law is the least restrictive or least discriminatory alternative.")).

///

9

With respect to the computerized risk assessment, the court in *Buffin I* stated that plaintiffs' proposed alternative was to rely on a computerized risk assessment process with the California Money Bail Reform Act ("S.B. 10") "having 'essentially implemented' this alternative, serving as a 'more detailed version' of the same." 2019 WL 1017537, at *19. However, the *Buffin I* court does not provide detail as to what this computerized risk assessment process is, nor does Plaintiff provide much detail in his briefing. (*See* ECF Nos. 80, 86, 87.) This Court, therefore, cannot adequately evaluate whether this would be a less restrictive alternative.

With respect to the alternative adopted by the state legislature — S.B. 10[7] — the court in *Buffin I* noted that "the government *itself* concurs that an alternative is plausible; that is, the state has now enacted what it believes to be a less restrictive alternative yet at least as effective alternative, with the express goal of reasonably assuring public safety and individuals' return to court." 2019 WL 1017537, at *19 (emphasis in original). The court stated that, unlike the bail schedule at issue, S.B. 10 "requires all jurisdictions to generate *prior to arraignment* for each arrestee '[t]he results of a risk assessment using a validated risk assessment instrument, including the risk score or level.'" *Id.* at 20 (emphasis in original) (citing S.B. 10 § 1320.9(a)(1)). S.B. 10 further provides:

> [I]ndividuals who are assessed as low- or medium-risk to public safety and of failure to appear in court shall be released on their own recognizance, prior to arraignment and *without review by the court*, "with the least restrictive nonmonetary condition or combination of conditions that will reasonably assure public safety and the person's return to court." *Id.* §§ 1320.10(b), (c). This will allow for release when court is not in session. Further, individuals arrested for misdemeanors, with some exceptions, will be released within 12 hours (*id.* § 1320.8), i.e., roughly the average length of those posting bail for release under the current system.

*Id.* Noting that plaintiffs did not have a high burden, nor was "scientific precision required," the *Buffin I* court concluded:

---

[7]      The Court notes that S.B. 10 was signed into law by Governor Jerry Brown on August 28, 2018, and was set to go into effect on October 1, 2019. S.B. 10, 2018 Cal. Legis. Serv. Ch. 244 (Cal. 2018). However, a referendum on S.B. 10 on the November 2020 statewide ballot was rejected by the voters, which means that S.B. 10 was repealed. California Bill Analysis, S.B. 262 Sen. (Aug. 19, 2021).

1
2
3
4
5
6
7

> S.B. 10 was passed after a year of study by the California Chief Justice's Pretrial Detention Reform Workgroup, which included the then-presiding judge of the San Francisco superior court.  The Workgroup found that as many as 60 pretrial risk assessment instruments exist in the United States, which, after study, revealed various common factors as "good predictors of court appearance and/or danger to the community."  Such indicators include current charges, outstanding warrants, pending charges, and active community supervision at the time of arrest, and criminal history, history of violence, residential stability over time, employment stability, community ties, and history of substance abuse . . . Collectively, the evidence demonstrates that a plausible alternative to the current system exists.

8   *Id.* (internal citations omitted).

9          With respect to less restrictive alternatives adopted by other jurisdictions, Plaintiff

10   provides a number of examples which the Court finds persuasive.  First, Plaintiff notes that

11   federal courts implement the provision of the Bail Reform Act of 1984, which allow federal

12   courts "to detain an arrestee pending trial [only] if the Government demonstrates by clear and

13   convincing evidence after an adversary hearing that no release conditions 'will reasonably assure

14   . . . the safety of any other person in the community.'"  (ECF No. 80 at 18 (quoting *United States*

15   *v. Salerno*, 481 U.S. 739, 741 (1987)).)  Plaintiff further notes the Bail Reform Act "may not

16   impose a financial condition that results in pretrial detention of the person."  (*Id.* (citing 18 U.S.C.

17   §§ 3142(c), (e)–(g)).)  Second, Plaintiff states that other jurisdictions use alternative conditions of

18   release, such as electronic monitoring, supervision by pretrial agencies, community housing or

19   shelter, stay-away orders, and drug and alcohol testing and treatment.  (*Id.* (citing *In re*

20   *Humphrey*, 11 Cal. 5th 135, 154 (2021)).)  Third, Plaintiff cites to a study entitled "Unsecured

21   Bonds: The As Effective and Most Efficient Pretrial Release Option" published by the Pretrial

22   Justice Institute in October 2013 to establish that "unsecured personal recognizance bonds (no

23   bail) work at least as well, and often better, than secured money bail at promoting both court

24   appearance and public safety."  (*Id.* (citing ECF No. 80-6 at 10–11).)  Fourth, and finally,

25   Plaintiff maintains that the reforms in *Buffin v. San Francisco* (*Buffin IV*), No. 4:15-cv-04959

26   (N.D. Cal. Sept. 3, 2019)[8] are available in this case — namely, "ensuring that eligible arrestees be

27

28   _____
   [8]       Plaintiff does not provide the full citation for this case, but it appears to be different from *Buffin I*, *Buffin II*, and *Buffin III*, already cited herein.  The Court has reviewed the related *Buffin*

11

1  released within 18 hours or be subject to an individualized finding that they pose a risk of

2  nonappearance or a threat to public safety, which they can subsequently dispute." (*Id.* at 18–19.)

3      Based on the foregoing, the Court notes that S.B. 10 and the alternatives implemented in

4  other jurisdictions are less restrictive than the bail schedule in this case and serve the compelling

5  government interests of protecting the public safety, ensuring arrestees' future appearances, and

6  protecting constitutional rights.

7              c)  Whether the Bail Schedule is Excessive in Relation to Its

8                  Purpose

9      Plaintiff argues that the "bail schedule is excessive in relation to its purpose and therefore

10  violates the Due Process [C]lause for this reason as well." (ECF No. 80 at 19.) Plaintiff notes

11  this case presents a similar situation to *Arpaio*, "in which the bail schedule is excessive because of

12  its total lack of individual assessment . . . with respect to the government's interests." (*Id.* at 20

13  (citing *Arpaio*, 770 F.3d at 782).) Neither the Sheriff nor the AG respond to these arguments.

14  (*See* ECF Nos. 83, 84.)

15      As this Court has previously stated, the Supreme Court has long recognized constitutional

16  limits on pretrial detention, including barring punitive conditions of pretrial confinement. *See*

17  *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979). The Supreme Court in *Bell* articulated a two-part

18  test to determine when pretrial detention amounts to punishment and a violation of due process

19  rights:

20          [I]f a particular condition or restriction of pretrial detention is
            reasonably related to a legitimate governmental objective, it does not,
21          without more, amount to "punishment." Conversely, if a restriction
            or condition is not reasonably related to a legitimate goal — if it is
22          arbitrary or purposeless — a court permissibly may infer that the
            purpose of the governmental action is punishment that may not
23          constitutionally be inflicted upon detainees *qua* detainees.

24  *Id.* at 538–39 (alterations, footnotes, citations and internal quotation marks omitted); *see also*

25  *Arpaio*, 770 F.3d at 778 (same). The Ninth Circuit in *Arpaio* applied *Bell* and the substantive due

26

27  orders available on Westlaw and cannot find an order dated September 3, 2019. (ECF No. 80 at
    18.) Should Plaintiff cite to this case in the future, he is directed to provide full Westlaw citation
28  rather than just the docket number to ensure the Court can access it.

process framework established in *Salerno* and *Schall* to reach the conclusion that Proposition 100, an Arizona constitutional provision prohibiting state courts from setting bail for detainees, does not satisfy substantive due process. *Arpaio*, 770 F.3d at 780–91 (citing *Salerno*, 481 U.S. at 748–51; *Schall v. Martin*, 467 U.S. 253, 269–74 (1984)). Specifically, pursuant to *Bell*, *Salerno*, and *Schall*, the Ninth Circuit considered whether Proposition 100: (1) addressed a particularly acute problem; (2) was limited to a specific category of extremely serious offenses; and (3) required a full-blown adversary hearing at which the state was required to prove than an individual arrestee presents an unmanageable flight risk. *Id.* Because Proposition 100 did not satisfy this heightened substantive due process scrutiny test, the Ninth Circuit concluded that it "is not carefully limited" to serve the state's compelling interest "in assuring that arrestees, including undocumented immigrants, appear for trial." *Id.* at 788.

In the instant case, as previously stated, Plaintiff does not argue the bail schedule is intended as punishment, but rather that it is excessive in relation to its purpose. (ECF No. 80 at 22.) Plaintiff contends that, like *Arpaio*, "the bail schedule does not address a 'particularly acute problem' of nonappearance or threats to public safety posed by people released on bail, is not limited to 'a specific category of extremely serious offenses,' and most crucially, does not require any individualized consideration at all." (*Id.* (citing *Arpaio*, 770 F.3d at 783–85).) The Court notes that the record in this case does not contain any information about these elements of the test articulated in *Arpaio*. *See Arpaio*, 770 F.3d at 780–91. First, "there is no evidence that [the bail schedule was] adopted to address a particularly acute problem," and the record in this case "contains no findings, studies, statistics or other evidence" showing that indigent arrestees "as a group pose an unmanageable flight risk or a significantly greater flight risk" than non-indigent arrestees. *Id.* at 783. "The absence of such evidence both distinguishes this case from *Salerno* and supports the conclusion that [the bail schedule is] not carefully limited, as [it] must be, to survive heightened scrutiny under *Salerno*." *Id.* Second, the bail schedule is not limited to "a specific category of extremely serious offenses." *Id.* at 784. As Plaintiff notes, the bail schedule can encompass relatively minor offenses, such as a drug possession charge. (ECF No. 80 at 14.) Third, the bail schedule "is not narrowly focused on those arrestees who pose the greatest flight

1    risk," unlike *Salerno*, in which "the regulatory scheme was limited to arrestees who actually

2    posed a danger to the community." *Id.* at 784–85.  Accordingly, the Court finds the bail schedule

3    does not survive the heightened scrutiny test articulated in *Arpaio*.

4         In sum, the Court finds the bail schedule is not narrowly tailored because it is

5    simultaneously overinclusive and underinclusive, less restrictive alternatives are available, and it

6    does not comply with the substantive due process heightened scrutiny standard articulated in

7    *Arpaio*.

8              C.    Whether Defendants Have Shown Plaintiff's Proposed Alternatives Would

9                    Be Less Effective at Serving the Government's Compelling Interests or

10                   More Restrictive

11        "Once a plaintiff makes a prima facie showing under a strict scrutiny analysis, the burden

12   shifts to the government to show that the proposed alternative would be less effective or more

13   restrictive." *Buffin I*, 2019 WL 1017537, at *23.  Neither the Sheriff nor the AG provide any

14   arguments as to Plaintiff's proposed alternatives (*see* ECF Nos. 83, 84), and therefore they fail to

15   establish whether Plaintiff's proposed alternatives would be less effective or more restrictive.

16   (*See* ECF Nos. 83, 84.)

17        Based on the foregoing, the Court finds that the bail schedule violates Plaintiff's

18   substantive due process pretrial liberty rights.  Because the bail schedule is not "carefully limited"

19   as the heightened scrutiny test in *Arpaio* requires, it is "invalid in all of its applications."  *See*

20   *Arpaio*, 770 F.3d at 789 (finding that because Proposition 100 was not "carefully limited" under

21   the heightened scrutiny test, it was facially unconstitutional and therefore "invalid in all of its

22   applications").  Accordingly, Plaintiff's motion for summary judgment as to Defendants' liability

23   on his claim for violation of his substantive due process pretrial liberty rights is GRANTED.  The

24   Court will finally turn to the Sheriff and AG's remaining arguments, which do not change the

25   Court's conclusion.

26             D.    The Sheriff's Remaining Arguments

27        The Sheriff argues: (1) Plaintiff's motion is too vague as to what is being claimed to

28   violate the Fourteenth Amendment; (2) the Court should abstain from exercising jurisdiction

14

1    under the *Pullman* doctrine; (3) a recent change in law moots Plaintiff's challenge; and (4)

2    Plaintiff cannot establish the Sheriff violated his rights.  (ECF No. 83 at 3–6.)  The Court will

3    consider each argument in turn.

*i.      Whether Plaintiff's Motion is Vague*

5            The Sheriff argues it is unclear "what Plaintiff is seeking to have invalidated" as the FAC

6    "incorporate[s] by reference 108 paragraphs . . . and the claim for relief as a violation of the

7    Fourteenth Amendment do[es] not identify what specific California statute that Plaintiff

8    challenges."  (*Id.* at 3.)  The Sheriff contends that because Plaintiff "fails to identify any particular

9    subsection either in the [FAC] or the motion," it requires the Court to speculate and should be

10   denied on this basis.  (*Id.*)  In reply, Plaintiff contends that he "has clearly and consistently

11   challenged Defendants' implementation and enforcement of the uniform bail schedule against

12   individuals arrested in Sacramento County pursuant to California Penal Code § 1269b" in his

13   FAC and in the instant motion.  (ECF No. 87 at 9–10 (citing ECF No. 31 ¶¶ 6, 23, 58; ECF No.

14   80 at 2–3, 6–7, 11–12).)

15           The Court ultimately agrees with Plaintiff.  A review of the FAC reveals that Plaintiff

16   challenges the bail schedule as implemented pursuant to § 1269b, as Plaintiff explicitly alleges

17   that "[a]ny provisions of California law that require the use of secured money bail to detain

18   individuals due to their inability to pay are unconstitutional because they violate the principle that

19   no person should have to spend a single day in jail simply because she cannot make a monetary

20   payment."  (*See* ECF No. 31 ¶ 57.)  Plaintiff also points to how Defendants' use of money bail is

21   unconstitutional in the FAC and his request for relief requests an order and judgment

22   preliminarily and permanently enjoining the County of Sacramento and the AG from using

23   money bail to detain indigent detainees in Sacramento.  (*See id.* at ¶¶ 66–75, c, d.)  Additionally,

24   the instant motion repeatedly states that Sacramento County's bail schedule, adopted pursuant to

25   § 1269b, is at issue.  (*See* ECF No. 80.)  The Court therefore declines to deny Plaintiff's motion

26   on this basis.

27   ///

28   ///

1  *ii.*      *Whether* Pullman *Abstention Applies*

2  The Sheriff argues that the Court should abstain from exercising jurisdiction because

3  Plaintiff essentially challenges the entire statutory California scheme (namely, California Penal

4  Code §§ 1268–1276.5), "a definitive ruling by the California courts on the state issue would

5  potentially obviate the need to constitutional adjudication by the federal court," and the FAC

6  "touches upon 'a sensitive area of social policy upon which the federal courts ought not to enter

7  unless no alternative to its adjudication is open.'" (ECF No. 83 at 4–5.)  The Sheriff notes in the

8  alternative that certification of state law questions to the California Supreme Court allows federal

9  courts to avoid erroneously deciding state law questions. (*Id.* at 5.)  In reply, Plaintiff argues

10  *Pullman* abstention is not warranted because there are no unclear questions of state law that must

11  be resolved before Plaintiff's claim. (ECF No. 87 at 10–11.)  Plaintiff asserts the Sheriff does not

12  provide any support for the assertion that Plaintiff's challenge of the bail schedule involves a

13  question of the entire California statutory scheme and the Northern District of California

14  addressed a nearly identical complaint without any need to question the other provisions the

15  Sheriff attempts to question. (*Id.* at 11.)  Plaintiff also notes that the Sheriff does not identify any

16  state law ambiguity and does not request certification of any question to the state courts. (*Id.* at

17  12.)

18  *Pullman* abstention "is an equitable doctrine that allows federal courts to refrain from

19  deciding sensitive federal constitutional questions when state law issues may moot or narrow the

20  constitutional questions." *San Remo Hotel v. City & Cnty. of San Francisco*, 145 F.3d 1095, (9th

21  Cir. 1998).  Abstention is proper when: "(1) the federal plaintiff's complaint requires resolution

22  of a sensitive question of federal constitutional law; (2) the constitutional question could be

23  mooted or narrowed by a definitive ruling on the state law issue; and (3) the possibly

24  determinative issue of state law is unclear." *Id.*  Once the federal court decides to abstain under

25  *Pullman*, the plaintiff must seek a determination in the state courts on the state law question prior

26  to returning to the federal court. *Id.*

27  With respect to the first prong, other federal courts have decided very similar or identical

28  questions of federal constitutional law. *See Buffin I*, 2019 WL 1017537, at *4–6, 24; *Caliste*, 329

F. Supp. 3d at 312; *ODonnell*, 892 F.3d at 159.  The Sheriff also does not point to any case law to establish that other courts have consistently held that questions regarding a bail schedule is "a sensitive question of federal constitutional law."  With respect to the second prong, the Sheriff fails to establish or explain how a ruling in this case on the constitutionality of California Penal Code § 1269b "could be mooted or narrowed by a definitive ruling."  The Sheriff does not cite to any pending cases before California state courts regarding ambiguity in the language of § 1269b.  Finally, with respect to the third prong, the Sheriff also fails to establish or explain whether there are uncertain issues of state law.  Accordingly, the Court finds *Pullman* abstention inappropriate and declines to deny Plaintiff's motion on this basis.  The Court also notes that Plaintiff is correct that the Sheriff does not point to any state law ambiguity or explain why certification to the state courts is necessary, and therefore it declines to defer ruling on Plaintiff's motion pending certification of a question of state law before a state court.

*iii.*        Whether In re Humphrey *Moots Plaintiff's Suit*

The Sheriff argues *In re Humphrey* and *In re Harris* moot the challenge Plaintiff brings, as the California Supreme Court has concluded that, with respect to pretrial detention, it is unconstitutional under the Fourteenth Amendment to incarcerate a defendant solely due to his indigency, courts "must consider an arrestee's ability to pay alongside the efficacy of less restrictive alternatives when setting bail," and an arrestee may not be held in pretrial detention unless a court makes an individualized determination considering whether "detention is necessary to protect victim[s] or public safety, or to ensure the defendant's appearance," and there are no less restrictive alternatives.  (ECF No. 83 at 5–6 (citing *In re Humphrey*, 11 Cal. 5th 135 (2021); *In re Harris*, 71 Cal. App. 5th 1085 (2021)).)  In reply, Plaintiff argues *In re Humphrey* did not specifically address the bail schedule or hold that its use violates the Constitution and the Sheriff's argument confuses pre-arraignment bail (at issue in this case) with post-arraignment bail (at issue in *In re Humphrey*).  (ECF No. 87 at 12.)  Plaintiff further argues that *In re Humphrey* does not moot this case because Defendants' enforcement of the bail schedule pursuant to California Penal Code § 1269b continues and the Sheriff does not dispute this or offer evidence to the contrary and the AG implicitly acknowledges this.  (*Id.* (citing ECF No. 84 at 5–6, 14–15;

17

1    ECF No. 85 at 2).)

2        The Court agrees with Plaintiff and the AG that *In re Humphrey* can be distinguished

3    based on the fact that it addresses post-arraignment bail while the instant case address pre-

4    arraignment bail.  (*See* ECF No. 84 at 18–21.)  The Court further agrees with the AG that "*In re*

5    *Humphrey* made broad pronouncements that significantly inform the legal issues here" —

6    namely, "[d]ue process principles, as discussed and applied to the bail context there, support the

7    argument that detention before trial based on an individual's inability to pay bail can raise

8    constitutional problems."  (*Id.* at 20.)  The AG is further correct that "if a county's particular bail

9    schedule sets bail amounts that are prohibitively expensive, this could potentially implicate the

10   constitutional rights of [arrestees]" and "if a bail schedule singled out a disfavored group for

11   negative treatment, this would raise constitutional concerns."  (*Id.*)  *In re Harris* simply applies

12   the holding of *In re Humphrey* to "all orders for pretrial detention under [California Penal Code §

13   12(b)]," and therefore does not change the Court's conclusion on this matter.  71 Cal. App. 5th at

14   1096.  Accordingly, the Court declines to deny Plaintiff's motion on this basis.

15                    *iv.        Whether the Sheriff Violated Plaintiff's Rights*

16       The Sheriff finally makes a somewhat confusing argument that Plaintiff cannot establish

17   the Sheriff violated his rights.  (ECF No. 83 at 6.)  The Sheriff states first that he does not set bail

18   and then states that Plaintiff's declaration is insufficient to establish he could not pay bail because

19   it lacks the necessary foundation to prove that he was indigent.  (*Id.*)  In reply, Plaintiff contends

20   that this argument on the merits "only further confuses the issues" as it confuses the difference

21   between pre- and post-arraignment bail and Plaintiff can bring claims for prospective relief as this

22   Court has already recognized that "the Sheriff directly enforces the bail schedule against pretrial

23   arrestees in Sacramento County."  (ECF No. 87 at 13 (citing ECF No. 42 at 13).)  Plaintiff finally

24   notes that it his testimony that he was indigent, homeless, and could not afford to pay the $10,000

25   bail and "[t]hese assertions rest entirely on personal knowledge and are reliable."  (*Id.*)

26       The Court finds the Sheriff's argument appears to dispute Plaintiff's claim on the merits

27   and Plaintiff is correct that the Sheriff does not adequately do so ("e.g., by disputing the proper

28   type of constitutional scrutiny or arguing that the bail schedule has a satisfactory relationship to

1  the asserted governmental interests").  (*Id.*)  This Court has indeed previously found that the

2  Sheriff acts on behalf of the state in implementing the Bail Law (ECF No. 42 at 13) and therefore

3  Plaintiff's prospective relief claims are appropriate.  Finally, the Court previously overruled the

4  Sheriff's objection that Plaintiff has not laid the necessary foundation that he could not afford to

5  pay and therefore declines to address this issue again.

6                    E.        The AG's Remaining Arguments

7        The AG argues: (1) Plaintiff's due process claim is moot because he was released from

8  detention and thus he is no longer subject to the challenged bail procedures; and (2) he has no role

9  under state law in implementing the challenged bail procedures.  (ECF No. 84 at 12–18.)  The AG

10  also contends *In re Humphrey* is strongly persuasive authority that the bail schedule presents

11  significant constitutional concerns, which the Court addressed in the prior section.  (*Id.* at 18–21.)

12  The Court will consider the AG's remaining two arguments in turn.

13                    i.        *Whether Plaintiff's Claim is Moot*

14        The AG argues that on the record that exists, redressability cannot be established because

15  besides his time in the custody of the Sheriff for six days, "Plaintiff offers no additional evidence

16  establishing that any later or ongoing custody by the Sacramento Sheriff or any threat of future

17  custody that would implicate the [b]ail [s]chedule."  (ECF No. 84 at 14.)  In reply, Plaintiff

18  contends his claim is not moot because it is capable of repetition yet evading review.  (ECF No.

19  86 at 8.)  Plaintiff notes "the six-day period that [he] was detained before trial is so short that his

20  constitutional claim for prospective relief evades review."  (*Id.*)  Plaintiff further notes the claim

21  is also capable of repetition because even though he is no longer detained, "it is certain that other

22  persons similarly situated will be detained under the allegedly unconstitutional procedures . . .

23  because there exists an ongoing policy of enforcing the bail schedule."  (*Id.* at 8 (internal

24  quotations and citation omitted).)

25         The constitutional minimum of standing is comprised of three elements: (1) "the plaintiff

26  must have suffered an 'injury in fact'"; (2) "a causal connection between the injury and the

27  conduct complained of"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the

28  injury will be 'redressed by a favorable decision.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560–61 (1992).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Id.*  Federal courts do not have jurisdiction to hear cases that are moot — where there is no actual or live controversy — and thus such cases must be dismissed.  *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003).  "In the class action context, a controversy may exist . . . between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot."  *Belgau v. Inslee*, 975 F.3d 940, 949 (9th Cir. 2020) (internal quotation marks and citations omitted).  The Ninth Circuit has extended this principle to pre-certification class actions if "the pace of litigation and the inherently transitory nature of the claims at issue conspire to make [mootness] requirement difficult to fulfill."  *Id.* (citation omitted).  A pre-certification class action claim falls within the "capable of repetition yet evading review" exception where: "(1) the duration of the challenged action is 'too short' to allow full litigation before it ceases . . . and (2) there is a reasonable expectation that the named plaintiffs could themselves suffer repeated harm or it is certain that other persons similarly situated will have the same complaint."  *Id.* (internal quotation marks and citations omitted).

With respect to the first prong, Plaintiff correctly notes that the Supreme Court has recognized that "an individual's pretrial detention is 'by nature temporary' and generally so short that the arrestee will not have the opportunity to seek review of the alleged constitutional violations before the detention ends."  (ECF No. 86 at 8 (citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)).)  Indeed, the Supreme Court noted that it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is released or convicted" and "[t]he individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures."  *Gerstein*, 420 U.S. at 110 n.11.  Accordingly, the pretrial detention at issue in the instant case is " 'too short' to allow full litigation before it ceases."  *Belgau*, 975 F.3d at 949.

With respect to the second prong, Plaintiff cites to Ninth Circuit cases in which the court invoked the "capable of repetition yet evading review" exception "where, as here, . . . [P]laintiff seeks to enjoin an ongoing and undisputed policy."  (ECF No. 86 at 9 (citing *Belgau*, 975 F.3d at 949 (challenging on ongoing policy of deducting union dues from payroll despite union members'

objections); *L.A. Unified Sch. Dist. v. Garcia*, 669 F.3d 956, 958 (9th Cir. 2012) (challenging ongoing non-provision of special education services to eligible pretrial detainees); *United States v. Howard*, 480 F.3d 1005, 1010 (9th Cir. 2007) (pretrial arrestees challenging on ongoing shackling policy)).)  Plaintiff is further correct that the AG does not dispute the ongoing enforcement of the bail schedule.  (*Id.* (citing ECF No. 85 at 2).)  Accordingly, "there is a reasonable expectation that the named plaintiffs could themselves suffer [pretrial detention due to solely their indigency]."  *Belgau*, 975 F.3d at 949.

Finally, even though the AG notes that the Court previously denied Plaintiff's motion for class certification as moot and the dispositive motion deadline has passed (ECF No. 84 at 15), Plaintiff may renew its motion for class certification after the summary judgment stage.  *See Postow v. OBA Fed. Sav. and Loan Ass'n*, 627 F.2d 1370, 1381–84 (9th Cir. 1980) (finding no abuse of discretion in trial court's refusal to vacate class certification even though final designation of the class and notice was sent to class members after summary judgment was granted); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D. Cal. 2008) (noting that a motion for class certification is not dispositive).

In sum, because Plaintiff adequately establishes the "capable of repetition yet evading review" exception to mootness, the Court declines to deny Plaintiff's motion due to a lack of standing.

ii.      *Whether the AG Has No Role in Implementing the Challenged Bail Procedures*

The AG argues that Plaintiff's allegations fail to bring the claim within the *Ex parte Young* exception to the Eleventh Amendment bar against lawsuits brought against a state because the FAC does not allege the AG has any role in enforcing the bail schedule nor has Plaintiff submitted evidence regarding the AG's role in enforcing the bail law or implementing the bail schedule prepared by a superior court.  (ECF No. 84 at 15–17.)  The AG further argues that Plaintiff's claim is not a challenge to state criminal laws the AG enforces but rather that the provisions of the California Penal Code should *not* be enforced, noting that the district court in *Buffin* "agreed that the [AG] is immune."  (*Id.* at 17 (*Buffin v. City & Cnty. of San Francisco*

21

1  (*Buffin III*), No. 15-cv-04959-YGR, 2016 WL 6025486, at *12 (N.D. Cal. Oct. 14, 2016); *Buffin*

2  *II*, 23 4.4th at 957).)  The AG contends his role is similar to the Governor's as described in *Ass'n*

3  *des Eleveurs de Canards et d'Oies du Quebec v. Harris* (*Quebec*), 729 F.3d 937 (9th Cir. 2013),

4  in which the Ninth Circuit held that the Governor "is immune where his only connection to the

5  challenged law was his general duty to enforce California law." (*Id.* at 16.)

6          In reply, Plaintiff maintains that the AG is not entitled to sovereign immunity because he

7  is subject to suit under the *Ex parte Young* exception. (ECF No. 86 at 10–11.) Plaintiff states the

8  AG "has direct supervision over district attorneys and has the power to assist them or take full

9  charge of any investigation or prosecution" and the AG "has enforced the Penal Code's bail

10  provisions as a supervisor of the state's sheriffs." (*Id.*)  Plaintiff also notes that this Court has

11  already held previously — and therefore it is the law of the case — that the AG does not have

12  sovereign immunity and there are no changed circumstances for this Court to depart from the law

13  of the case. (*Id.* at 12–13.) Plaintiff maintains the AG's role in this case is similar to his role as

14  described in *Harris*, in which the Ninth Circuit held that "based on the [AG's] direct supervision

15  over every district attorney and her power to prosecute as one, . . . she had 'sufficient enforcement

16  power' for *Ex parte Young* to apply." (*Id.* at 12 (citing *Quebec*, 729 F.3d at 943).)

17          The Eleventh Amendment has been interpreted as a grant of sovereign immunity to the

18  states against suit in federal court.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996).

19  While "[t]he Eleventh Amendment erects a general bar against federal lawsuits brought against a

20  state," *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003), "it does not [] bar actions for

21  prospective declaratory or injunctive relief against state officers in their official capacities for

22  their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d

23  1128, 1133–34 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. 123, 155–56).  This is known as

24  the *Ex parte Young* exception, and it requires that the individual state official sued "must have

25  some connection with the enforcement of the act." *Id.* at 1134 (quoting *Ex parte Young*, 209 U.S.

26  at 157).  Moreover, that connection "must be fairly direct; a generalized duty to enforce state law

27  or general supervisory power over the persons responsible for enforcing the challenged provision

28  will not subject an official to suit." *Id.* (internal citations omitted).  Otherwise, suing a state

1   official would be just an indirect way of suing the State.  *Ex parte Young*, 209 U.S. at 157.

2          In the AG's opposition brief, the AG essentially resurrects his prior argument that he does

3   not have a sufficient connection to the challenged bail law.  (*See* ECF No. 30 at 9.)  The Court

4   continues to find, as it did in its October 11, 2016 Order, that this assertion is disingenuous

5   considering the role of the AG:

> The Attorney General has direct supervision over the district
> attorneys of the several counties of the State. When [s]he deems it
> advisable or necessary in the public interest, or when directed to do
> so by the Governor, [s]he shall assist any district attorney in the
> discharge of his [or her] duties, and may, where [s]he deems it
> necessary, take full charge of any investigation or prosecution of
> violations of law of which the superior court has jurisdiction. In this
> respect [s]he has all the powers of a district attorney, including the
> power to issue or cause to be issued subpoenas or other process.

11  Cal. Gov't Code § 12550; *see also Pitts v. County of Kern*, 17 Cal. 4th 340, 357 (1998)

12  (California Constitution, art. V, § 13, "confers broad discretion upon the Attorney General to

13  determine when to step in and prosecute a criminal case") (internal quotation marks omitted).

14  The Court also declines to change its prior finding that the situation in the instant case is

15  analogous to *Quebec*.  To reiterate, plaintiffs in *Quebec* sued to enjoin the Governor and AG from

16  enforcing a statute banning foie gras, and the Ninth Circuit held that because the AG had the

17  authority to prosecute violations of the challenged provision and the duty to prosecute violations

18  of law as a district attorney under the California Constitution, there was "sufficient enforcement

19  power for *Ex parte Young*" to apply.  729 F.3d at 943–44.  Similarly here, the AG, in his official

20  capacity as the State's chief law enforcement officer, is charged with the enforcement of

21  California's laws, as well as enforcing the Penal Code's bail provisions as supervisor of the

22  State's sheriffs.  The Court once again finds these duties create a sufficient connection to the

23  challenged bail schedule for the *Ex parte Young* exception to apply.  (*See* ECF No. 30 at 10.)

24          The Court also agrees with Plaintiff that the AG's argument that changed circumstances

25  justify a ruling in his favor is unavailing, "because the enforcement of the bail schedule remains

26  substantially the same, as dictated by state law."  (ECF No. 86 at 13); *see also United States v.*

27  *Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (noting that a court may depart from the law of the

28  case where: (1) "the first decision was clearly erroneous"; (2) "an intervening change in the law

1   has occurred"; (3) "the evidence on remand is substantially different"; (4) "other changed

2   circumstances exist"; or (5) "a manifest injustice would otherwise result").  The AG does not

3   make any other specific argument as to why this Court should depart from the law of the case.

4        In sum, because the AG is subject to the *Ex parte Young* exception to sovereign immunity,

5   the Court declines to deny Plaintiff's motion on this basis.

6        **IV.**   **CONCLUSION**

7        For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment is

8   hereby GRANTED.  (ECF No. 80.)  The Court finds that the use of the bail schedule in

9   Sacramento County is unconstitutional.  The parties have not briefed the Court on injunctive

10  relief.  "In general, relief must be narrowly tailored to address the extent of the constitutional

11  violations found."  *Buffin I*, 2019 WL 1017537, at *24 (citing *Dayton Bd. of Ed. v. Brinkman*, 433

12  U.S. 406, 420 (1977); *Missouri v. Jenkins*, 515 U.S. 70, 88 (1995)).  The parties are ORDERED

13  to file supplemental briefing within fourteen (14) days of the electronic filing date of this Order as

14  to the nature of injunctive relief necessary in this case.  Supplemental briefs shall be limited to no

15  more than ten (10) pages.

16       IT IS SO ORDERED.

17  **DATED:  September 21, 2022**

18                                                      

19                                 Troy L. Nunley
                               United States District Judge

20

21

22

23

24

25

26

27

28